# EXHIBIT A

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NASSAU

_____

B&M LINEN CORP and 220 COSTER LLC,
                              Plaintiff(s),

          -against-                                    **COMPLAINT**

220 LAUNDRY LLC, ELIOT SPITZER,
MICHAEL STEINBERG and ADAM J. TELLER
                    Defendant(s).
_____
                                              Index No.

     Plaintiffs, B&M LINEN CORP (hereinafter, "B&M") and 220 COSTER LLC
(hereinafter, "COSTER"), by their attorneys LAW OFFICES OF JULIEAN GALAK, P.C.,
as and for their Complaint, upon knowledge with respect to itself and its own
acts, and upon information and belief as to all other matters, hereby alleges as
follows:


                              **THE PARTIES**

   1) At all times hereinafter mentioned, Plaintiff B&M was, and still is, a
corporation organized and existing under the laws of the State of New York,
having their principal office at 100 Leahy St., Jericho, NY 11753.

   2) At all times hereinafter mentioned, Plaintiff COSTER was, and still is, a
Limited Liability Company organized and existing under the laws of the State of
New York, having their principal office at 100 Leahy St., Jericho, NY 11753

   3) At all times hereinafter mentioned, Defendant 220 LAUNDRY LLC.,
(hereinafter, "220 LAUNDRY") was/is, a domestic Limited Liability Company with a
place of business located in Bronx, New York.

   4) At all times hereinafter mentioned, Defendant 220 LAUNDRY LLC., was/is, a
foreign Limited Liability Company duly authorized to conduct and conducting
business in the State of New York.

5) At all times hereinafter mentioned, Defendant 220 LAUNDRY LLC., was/is, a foreign Limited Liability Company doing business in the State of New York.

6) At all times hereinafter mentioned, Defendant 220 LAUNDRY LLC. was/is, a domestic partnership duly existing under and by virtue of the laws of the State of New York.

7) At all times hereinafter mentioned, ZAR Defendant 220 LAUNDRY LLC. was/is, a foreign partnership duly authorized to conduct and conducting business in the State of New York.

8) At all times hereinafter mentioned, Defendant 220 LAUNDRY LLC., was/is, a foreign partnership doing business in the State of New York.

9) At all times hereinafter mentioned, Defendant 220 LAUNDRY LLC. was/is, a domestic sole proprietorship duly existing under and by virtue of the laws of the State of New York.

10)    At all times hereinafter mentioned, Defendant 220 LAUNDRY LLC., was/is, a foreign sole proprietorship duly authorized to conduct and conducting business in the State of New York.

11)    At all times hereinafter mentioned, Defendant 220 LAUNDRY LLC., was/is, a foreign sole proprietorship doing business in the State of New York.

12)    At all times hereinafter mentioned, Defendant 220 LAUNDRY LLC. was/is, a domestic entity duly existing under and by virtue of the laws of the State of New York.

13)    At all times hereinafter mentioned, Defendant 220 LAUNDRY LLC., was/is, a foreign entity duly authorized to conduct and conducting business in the State of New York.

14)    At all times hereinafter mentioned, Defendant 220 LAUNDRY LLC., was/is, a foreign entity doing business in the State of New York.

15)     At all times hereinafter mentioned, Defendant 220 LAUNDRY LLC was/is, a domestic corporation duly existing under and by virtue of the laws of the State of New York.

16)     At all times hereinafter mentioned, Defendant 220 LAUNDRY LLC., was/is, a foreign corporation duly authorized to conduct and conducting business in the State of New York.

17)     At all times hereinafter mentioned, Defendant 220 LAUNDRY LLC., was/is, a foreign corporation doing business in the State of New York.

18)     At all times hereinafter mentioned, Defendant ELIOT SPITZER (hereinafter, "SPITZER"), was/is, an individual residing in the State of New York.

19)     At all times hereinafter mentioned, SPITZER was/is, an individual doing business in the State of New York.

20)     At all times hereinafter mentioned, Defendant ADAM J. TELLER (hereinafter, "TELLER"), was/is, an individual residing in the State of New York.

21)     At all times hereinafter mentioned, TELLER was/is, an individual doing business in the State of New York.

22)     At all times hereinafter mentioned, Defendant MICHAEL STEINBERG (hereinafter, "STEINBERG"), was/is, an individual residing in the State of New York.

23)     At all times hereinafter mentioned, STEINBERG was/is, an individual doing business in the State of New York.

**THE DOCUMENTS**

24)     On or about November 2010, B&M as Seller and SPITZER as Purchaser entered into an Asset Sale Agreement for the sale of a commercial laundry business (hereinafter, "Original Agreement").

25)    On or about May 19, 2011, B&M and SPITZER entered into the attached written modification of the Agreement (hereinafter "Modification" when referring to said writing, or "Modified Agreement" when referring to the Agreement as modified by the Modification).

26)    On or about May 19, 2011, SPITZER executed an assignment, assigning all of his rights under the Modified Agreement to 220 LAUNDRY.

27)    On or about May 19, 2011, and effective May 23, 2011, B&M and 220 LAUNDRY closed title on the assets transferred under the Modified Agreement.

28)    On or about May 19, 2011, and effective May 23, 2011, 220 LAUNDRY executed a note in the face amount of $8,600,000 (hereinafter, "First Note"), along with a security agreement, in favor of B&M as part of the agreed upon purchase price.

29)    On or about May 19, 2011, and effective May 23, 2011, 220 LAUNDRY executed a note in the face amount of $1,000,000 (hereinafter, "Second Note"), along with a security agreement, in favor of B&M as part of the agreed upon purchase price.

30)    On or about May 19, 2011, and effective May 23, 2011, SPITZER executed a Guaranty personally guaranteeing the First and Second Notes.

31)    On or about May 19, 2011, and effective May 23, 2011, TELLER executed a Guaranty personally guaranteeing the First and Second Notes.

32)    On or about May 19, 2011, and effective May 23, 2011, STEINBERG executed a Guaranty personally guaranteeing the First and Second Notes.

33)    On or about May 19, 2011, and effective May 23, 2011, COSTER as Landlord and 220 LAUNDRY as Tenants entered into a lease agreement (hereinafter, "Lease") for the premises known as 220 Coster St., Bronx, NY 10474 (hereinafter, "Premises").

34)     Pursuant to Section 50 of the Modified Agreement, all documents enumerated above were and are held in escrow by B&M's attorney.

## DEFENDANTS' DEFAULTS

35)     220 LAUNDRY have defaulted on the First Note in that they have failed to pay the sum of $41,666.67, due no later than September 23, 2011 by that date.

36)     220 LAUNDRY have defaulted on the Modified Agreement in that they have failed to timely and fully make payments on account of Accounts Receivable in accordance with Section 49 of the Modified Agreement.

37)     220 LAUNDRY have defaulted under Article III, Section 1 of the Lease in that they have failed to adequately maintain the Premises.

38)     220 LAUNDRY have defaulted under Article V of the Lease in that they have failed to comply with all applicable federal, state, and local regulations, including but not limited to workplace safety regulations.

39)     220 LAUNDRY have defaulted under the First and Second Note in that a default under the Lease constitutes a default under the Notes.

40)     220 LAUNDERY have defaulted under the Lease in that a default under the First or Second Note constitutes a default under the Lease.

## FIRST CAUSE OF ACTION AGAINST 220 LAUNDRY

41)     Plaintiffs repeat all allegations in paragraphs 1 through 38.

42)     220 LAUNDRY have failed to pay B&M the amounts owing pursuant to the First Note.

43)     Accordingly, 220 LAUNDRY are liable to B&M for, and B&M has been damaged in the aggregate amount of Forty One Thousand Six Hundred Sixty Six Dollars and Sixty Seven cents ($41,666.67), plus interest and other remedies as determined appropriate by the Court.

## SECOND CAUSE OF ACTION AGAINST 220 LAUNDRY

44)     Plaintiffs repeat all allegations in paragraphs 1 through 43.

45)     In accordance with the acceleration clauses therein, a default in payment under the First and Second Note makes the entire principal of the Notes due and payable immediately.

46)     Accordingly, 220 LAUNDRY are liable to B&M for, and B&M has been damaged in the aggregate amount of Eight Million Six Hundred Thousand Dollars ($8,600,000.00) under the First Note, and One Million Dollars ($1,000,000.00) under the Second Note, less any principal actually paid to date, plus interest and other remedies as determined appropriate by the Court.

## THIRD CAUSE OF ACTION AGAINST SPITZER AND TELLER

47)     Plaintiffs repeat all allegations in paragraphs 1 through 46.

48)     The Defendants, SPITZER and TELLER are obligated to B&M under the Guarantees in the event of the failure of 220 LAUNDERY to pay under the notes.

49)     Accordingly, SPITZER and TELLER are liable to B&M for, and B&M has been damaged in the aggregate amount Eight Million Six Hundred Thousand Dollars ($8,600,000.00) under the First Note, and One Million Dollars ($1,000,000.00) under the Second Note, less any principal actually paid to date, plus interest and other remedies as determined appropriate by the Court.

## FOURTH CAUSE OF ACTION AGAINST DEFENDANTS

50)     Plaintiffs repeat all allegations in paragraphs 1 through 49.

51)     In accordance with Section 50 of the Modified Agreement, 220 LAUNDRY's failure to make timely payment under the note permits B&M to reverse the transaction of sale, regain possession of all Assets, and terminate the Lease.

52)     On or about September 27, 2011, B&M notified 220 LAUNDRY in writing (hereinafter, "Notice of Default", attached) that 220 LAUNDRY is in default, and that B&M is enforcing the provisions in Section 50 of the Modified Agreement, and that no sale has occurred and all assets are transferred back to B&M.

53)     On or about September 27, 2011, COSTER notified 220 LAUNDRY in writing, by the aforementioned Notice of Default, that 220 LAUNDRY is in default, and that COSTER is enforcing the provisions in Section 50 of the Modified Agreement, and that the lease is deemed void effective September 27, 2011.

54)     Accordingly, the Defendants have no further interest in the Assets and/or Premises of any kind.

### FIFTH CAUSE OF ACTION AGAINST DEFENDANTS

55)     Plaintiffs repeat all allegations in paragraphs 1 through 54.

56)     During the period from May 23, 2011 through September 27, 2011, the Defendants made purchases of goods and services under B&M's name and/or accounts.

57)     Defendants have failed to make payment for said goods and services, and the vendors of such goods and services have made demands for payment against B&M.

58)     Said goods and services were purchased by the Defendants for use by 220 LAUNDRY.

59)     Accordingly, the Defendants are liable to B&M for, and B&M has been damaged in the aggregate amount of Two Hundred Forty Six Thousand Six Hundred Seventy Six Dollars and Sixty Four cents ($246,676.30), plus interest and other remedies as determined appropriate by the Court

### SIXTH CAUSE OF ACTION AGAINST DEFENDANTS

60)     Plaintiffs repeat all allegations in paragraphs 1 through 59.

61)     Under Section 49 of the Modified Agreement, 220 LAUNDRY is required to collect from customers and pay to B&M those accounts receivable due for work performed by B&M prior to May 23, 2011.

62)     220 LAUNDRY has failed to do so, and one or more of the Defendants have retained the monies so collected.

63)     Accordingly, the Defendants are liable to B&M for, and B&M has been damaged in the aggregate amount of Five Hundred Ninety Seven Thousand Eight Hundred Eighty Five Dollars and Seventy Four cents ($597,885.74), plus interest and other remedies as determined appropriate by the Court.

### SEVENTH CAUSE OF ACTION AGAINST DEFENDANTS

64)     Plaintiffs repeat all allegations in paragraphs 1 through 63.

65)     Through the actions, inactions, and negligence of the Defendants, the value of the Assets has decreased from the time that the Defendants took possession of the Assets on or about May 23, 2011 until B&M regained possession on or about September 27, 2011.

66)     Accordingly, the Defendants are liable to B&M for, and B&M has been damaged in the amount of said reduction of value as determined by the court but in no event less than Four Million Dollars ($4,000,000.00).

### EIGHTH CAUSE OF ACTION AGAINST DEFENDANTS

67)     Plaintiffs repeat all allegations in paragraphs 1 through 66.

68)     Through the actions, inactions, and negligence of the Defendants, the Premises suffered material damage.

69)     Accordingly, the Defendants are liable to COSTER for, and COSTER has been damaged in the amount of said damage as determined by the court but in no event less than One Million Dollars ($1,000,000.00).

### NINTH CAUSE OF ACTION AGAINST 220 LAUNDRY

70)     Plaintiffs repeat all allegations in paragraphs 1 through 69.

71)     In accordance with the Modified Agreement, B&M agreed to provide, and 220 LAUNDRY agreed to pay for, consulting services, to be performed by employees of B&M, to assist 220 LAUNDRY in operating the business.

72)     B&M performed said consulting services.

73)     220 LAUNDRY failed to fully pay for said services.

74)     Accordingly, the Defendants are liable to B&M for, and B&M has been damaged in the aggregate amount of Twenty Thousand Eight Hundred Thirty Three Dollars ($20,883.00), plus interest and other remedies as determined appropriate by the Court

### TENTH CAUSE OF ACTION AGAINST DEFENDANTS

75)     Plaintiffs repeat all allegations in paragraphs 1 through 74.

76)     On or about September 1, 2011, SPITZER requested that the employees of B&M provide additional assistance to 220 LAUNDRY, beyond that contemplated by the Modified Agreement.

77)     SPITZER and B&M agreed that employees of B&M would perform such services, and that B&M would be paid $100 per hour for such services, including travel time from the employee's residences in Nassau County.

78)     B&M performed said such services.

79)     220 LAUNDRY failed to fully pay for said services.

80)     Accordingly, the Defendants are liable to B&M for, and B&M has been damaged in the aggregate amount of Nine Thousand Dollars ($9,000.00), plus interest and other remedies as determined appropriate by the Court

WHEREFORE, Plaintiffs demand judgment against the Defendants as follows:

a) on their first cause of action against 220 LAUNDRY in the principal amount of Forty One Thousand Six Hundred Sixty Six Dollars and Sixty Seven cents ($41,666.67), plus interest;

b) on their second cause of action against 220 LAUNDRY in the principal amount of Nine Million Six Hundred Thousand Dollars ($9,600,000.00), less principal previously received, plus interest;

c) on their third cause of action against SPITZER and TELLER in the principal amount of Nine Million Six Hundred Thousand Dollars ($9,600,000.00), less principal previously received, plus interest;

d) on their fourth cause of action against the Defendants judgment declaring that the Defendants have no interest in the Assets or the Premises of any kind;

e) on their fifth cause of action against the Defendants in the principal amount of Two Hundred Forty Six Thousand Six Hundred Seventy Six Dollars and Sixty Four cents ($246,676.30), plus interest, and

f) on their sixth cause of action against the Defendants in the principal amount of Five Hundred Ninety Seven Thousand Eight Hundred Eighty Five Dollars and Seventy Four cents ($597,885.74), plus interest, and

g) on their seventh cause of action against the Defendants for such sums as may be determined by the court, but no less than Four Million Dollars ($4,000,000.00), and

h) on their eighth cause of action against the Defendants for such sums as may be determined by the court, but no less than One Million Dollars ($1,000,000.00), and

i)   on their ninth cause of action against the Defendants in the principal
     amount of Twenty Thousand Eight Hundred Thirty Three Dollars
     ($20,883.00), plus interest, and

j)   on their tenth cause of action against the Defendants in the principal
     amount of Thousand Dollars ($9,000.00), plus interest, and

k)   costs, disbursements, attorney's fees, and

l)   such other and further relief as the Court deems appropriate.


DATED:    Brooklyn, New York
          September 27, 2011


                                    _____
                                    Juliean Galak,
                                    LAW OFFICES OF JULIEAN GALAK, P.C.
                                    Attorney for the Plaintiff
                                    3105 BRIGHTON 3RD ST., SUITE 1-K
                                    BROOKLYN, NY 11235
                                    (718) 646-4715

# EXHIBIT B

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NASSAU
------------------------------------------------------------X
B&M LINEN CORP. and 220 COSTER LLC,          :
                                             :
                    Plaintiffs,              :
                                             :
        -against-                            :
                                             :   Index No. 11-013989
220 LAUNDRY LLC, ELIOT SPITZER,              :
MICHAEL STEINBERG and ADAM J. TELLER,        :
                                             :
                    Defendants,              :
                                             :
        -against-                            :
                                             :
MIRON MARKUS and BORIS MARKUS,               :
                                             :
                    Additional Counterclaim  :
                    Defendants               :   __ANSWER,__
------------------------------------------------------------X   __COUNTERCLAIMS AND__
                                             :   __THIRD-PARTY COMPLAINT__
220 LAUNDRY LLC and ELIOT SPITZER,           :
                                             :
                    Third-party Plaintiffs,  :
                                             :
        -against-                            :
                                             :
MIRON MARKUS and BORIS MARKUS,               :
                                             :
                    Third-party Defendants.  :
------------------------------------------------------------X

          Defendants 220 Laundry LLC ("220 Laundry" or "Purchaser"), Eliot Spitzer

("Spitzer"), Michael Steinberg and Adam J. Teller, for their Answer and Counterclaims

and 220 Laundry LLC and Eliot Spitzer, for their Third-party Complaint herein:

          1.     Admit the allegations of Paragraphs 1, 2, 3, 18, 19, 20, 21, 22, 23 and 32.

                                             1

2.     Deny the allegations of Paragraphs 4, 5, 6, 7, 8, 9, 10, 11, 13, 14, 15, 16, 17, 31, 35, 36, 37, 38, 39, 40, 42, 43, 46, 49, 54, 59, 62, 63, 65, 66, 68, 69, 73, 74, 76, 77, 79 and 80.

3.     Deny the allegations of Paragraph 12, except admit that 220 Laundry was and is a New York limited liability company.

4.     Deny the allegations of Paragraph 24 as to the title of the document, but admit execution of an Assets Purchase Agreement.

5.     Admit, upon information and belief, the allegations contained in Paragraphs 25, 26, 27, 28, 29, 30, and 33, but affirmatively allege that pursuant to the terms of the Modification of Assets Purchase Agreement, all executed copies, including originals and copies thereof, were held in escrow by counsel for Plaintiffs, and that no copies of the executed documents are in the possession of Defendants.

6.     Admit the allegations of Paragraph 34, except as to any Guaranty said to be executed by Defendant Teller.

7.     In response to the allegations of Paragraphs 41, 44, 47, 50, 55, 60, 64, 67, 70 and 75, incorporate by reference the responses contained herein as to all referenced paragraphs.

8.     In response to the allegations of Paragraph 45, deny that any default occurred, and otherwise refer to the contents of the referenced documents for the scope and effect thereof.

9.     Deny the allegations of Paragraph 48, except admit that Defendant Spitzer executed a guaranty of certain of the obligations of 220 Laundry.

2

10. Deny the allegations of Paragraphs 51, 61 and 71, except admit that a Modification of Assets Purchase Agreement was executed by Spitzer and assigned to 220 Laundry and refer to the contents of that document for the scope and effect thereof.

11. Deny the allegations of Paragraph 52, except admit receipt by 220 Laundry, on the afternoon of September 27, 2011, of the Notice of Default which is annexed to the Complaint.

12. Deny the allegations of Paragraph 53, except admit receipt by 220 Laundry on the afternoon of September 27, 2011, of the Notice of Default annexed to the Complaint.

13. In response to the allegations of Paragraphs 56, 57 and 58, admit that goods and services were purchased by 220 Laundry in the ordinary course of business prior to September 27, 2011; affirmatively allege that by reason of the abrupt and wrongful eviction of Defendants and their agents, made under threat of claim of trespass, 220 Laundry has been wrongfully deprived of access to payments by customers to which 220 Laundry provided services, and affirmatively allege that any use of B&M Linen Corp.'s accounts by the Purchaser following closing was at the request of, and with the knowledge and consent of B&M Linen Corp., which sought to maintain continuity with its former vendors and suppliers, post-closing.

14. In response to the allegations of Paragraph 72, admit that B&M Linen Corp. performed certain consulting services, but affirmatively allege that it breached the consulting provisions of the Modification of Assets Purchase Agreement by demanding more money for such services than was called for by the agreement, and by threatening to withhold such services unless its excessive demands were met.

3

15.     In response to the allegations of Paragraph 78, deny knowledge or information as to the specific services being referred to; admit that B&M Linen Corp. did perform certain consulting services; and incorporate the affirmative allegations of Paragraph 14 above.

### AS AND FOR A FIRST AFFIRMATIVE DEFENSE

16.     As of May 19, 2011, the date on which the transactional documents were executed, B&M Linen Corp. (hereafter "B&M or "Seller") was in material breach of its obligations under the Assets Purchase Agreement, was in material breach of the Modification of Assets Purchase Agreement upon its execution, and has continually remained in material breach of said agreements, as specified more fully in the Counterclaims below.

17.     By reason of the foregoing, B&M and 220 Coster are barred from all remedies sought by them in this action.

### AS AND FOR A SECOND AFFIRMATIVE DEFENSE

18.     The Complaint fails to state a cause of action against Defendant Michael Steinberg.

### AS AND FOR A THIRD AFFIRMATIVE DEFENSE

19.     Plaintiff's First Cause of Action is barred by reason of 220 Laundry's tender of payment prior to B&M's wrongful declaration of a default, and B&M's rejection of such payment.

4

### AS AND FOR A FOURTH AFFIRMATIVE DEFENSE

20.  Plaintiff's claim of default under the $8,600,000 note is barred by reason of 220 Laundry's tender of payment prior to B&M's wrongful declaration of a default, and B&M's rejection of such payment.

### AS AND FOR A FIFTH AFFIRMATIVE DEFENSE

21.  To the extent that sums are due and owing to vendors for that period of operations by 220 Laundry preceding Plaintiffs' abrupt and wrongful eviction of 220 Laundry and its agents from the business premises, Plaintiffs' claims are barred by reason of their own acts of depriving 220 Laundry from funds paid by customers for services provided by 220 Laundry, but wrongfully received and converted by B&M following B&M's wrongful seizure of the premises.

### AS AND FOR A SIXTH AFFIRMATIVE DEFENSE

22.  Plaintiff's Second Cause of Action is barred by reason of Plaintiff's demand for payment in accordance with its First Cause of Action.

### AS AND FOR A SEVENTH AFFIRMATIVE DEFENSE

23.  To the extent that Plaintiffs contend that there was a diminution in the value of the assets transferred and/or that there was damage to the business premises, claims denied by Defendants, such diminution and damage are directly attributable to B&M and its principals or agents, who, from May 23, 2011 to September 27, 2011 performed consulting services for good and valuable consideration, which services included arranging for or performing required repairs and maintenance to the business premises and to the assets transferred.

5

## AS AND FOR A EIGHTH AFFIRMATIVE DEFENSE

24.   The Tenth Cause of Action is barred by reason of the provisions of the Assets Purchase Agreement which bar oral modification of its terms, and the absence of any written modification supporting the claim.

## AS AND FOR A NINTH AFFIRMATIVE DEFENSE

25.   Plaintiff's claims are barred by reason of their failure to mitigate their alleged damages.

## COUNTERCLAIMS

### Allegations Common to all Counterclaims

26.   Defendants name as Additional Counterclaim Defendants Miron Markus and Boris Markus.  Miron Markus is in individual residing in Nassau County, New York, and is, upon information and belief, the President and sole shareholder of B&M Linen Corp.  Boris Markus is an individual residing in Nassau County, New York, and is, upon information and belief, the Vice-president of B&M and is the son of Miron Markus.

27.   The claims and counterclaims herein derive from the purchase by 220 Laundry from B&M of the business known as Miron & Sons Linen.   For many years preceding the events complained of in these counterclaims, B&M operated a commercial laundry facility at 220 Coster Street, Bronx, New York, doing business under the name Miron & Sons Linen.

6

28.     Among B&M's changing customer list over the years were numerous New York City hotels. A substantial part of B&M's business consisted of: the regular scheduled pick-up by trucks of dirty laundry from B&M's customers, including hotels; the transport of that laundry to the Coster Street facility; the laundering of the customers' linens; and the delivery of the clean linens to the customer.

29.     The 220 Coster Street facility, in the recent years, employed approximately 145 full-time workers; and operated seven days each week. The actual laundering process is highly automated, and incorporates the use of massive machinery and equipment which requires regular monitoring, servicing and maintenance.

30.     In or about 2010, B&M's President, Miron Markus, who had spent some 25 years in the laundry business, expressed an interest in selling the business. Prior to the formation of 220 Laundry, Spitzer, commencing in the Spring of 2010, engaged B&M in negotiations, which ultimately culminated in the formation by Spitzer of 220 Laundry, which acquired the business by assignment from Spitzer, a party to the Assets Purchase Agreement and Modification thereof, as detailed more fully below.

31.     More particularly, following a period of negotiation during which various documentation and information was provided by B&M, principally through Miron Markus and/or B&M's legal counsel, Juliean Galak, Esq., to Spitzer and/or his legal counsel, an Assets Purchase Agreement was executed on or about November 10, 2010. A copy of that agreement is annexed hereto as Exhibit A. The information provided in the period leading up to the execution of the Assets Purchase Agreement included, but not by way of limitation, information as to operating revenues and expenses, and it was on that

7

basis that Spitzer/220 Laundry agreed to the terms set forth in the Assets Purchase Agreement.

32.    The Assets Purchase Agreement, at Paragraph 27, provided for a period of due diligence between its execution and the eventual closing, and obligated B&M as Seller, to provide Purchaser with access to all financial and operating records of the business.

33.    Prior to the closing, drafts of certain proposed closing documents were circulated between or among representatives of B&M as Seller and 220 Laundry as Purchaser.  These documents included:

> a) Modification of Assets Purchase Agreement ("Modification").  The general form of that Modification (an Exhibit to the Complaint) was to confirm that the original Assets Purchase Agreement (Ex. A hereto) remained in force and effect, except as to superseding provisions contained in the text of the Modification;
>
> b) Promissory Note in the principal amount of $1,000,000;
>
> c) Promissory Note in the principal amount of $8,600,000, a copy of which is annexed hereto as Exhibit B;
>
> d) Guaranty, by Spitzer, of the $8,600,000 note;
>
> e) Security Agreement in favor of B&M, securing 220 Laundry's obligations under the $8,600,000 Note, covering all assets "as were transferred by Secured Party to the Debtor in accordance with an Assets Purchase Agreement and a bill of sale dated May 23, 2011";
>
> f) Security Agreement in favor of B&M, securing 220 Laundry's obligations under the $1,000,000 Note, covering all assets "as were transferred by Secured Party to the Debtor in accordance with an Assets Purchase Agreement and a bill of sale dated May 23, 2011"; and
>
> g) Lease for the business premises, running between 220 Coster, LLC, as Landlord, and 220 Laundry, as Tenant, the identity of the tenant being set forth in the Modification.

34. The Modification provided that all closing documents, including originals and copies, were to be held in escrow pending the satisfaction by 220 Laundry of its obligations under the $1,000,000 Promissory Note. As the balance of principal and interest under that Note is not due until June 30, 2012, Defendants are not presently in possession of executed copies of the closing documents.

35. Upon information and belief, Exhibit B hereto fairly reflects the substantive terms of the Note executed at closing, but held in escrow, and Plaintiffs' counsel, who maintains the originals, has so confirmed.

Consulting Agreement

36. Paragraph 21 of the Assets Purchase Agreement, provides "Seller shall provide transition consulting to the Purchaser, after closing, on the following terms." Those terms include: arranging for any one of Miron Markus, Boris Markus, or Michael Markus to be available in person or by telephone continuously between the hours of 6:00 am and 6:00 pm, seven days per week; providing such services at no cost to Purchaser for the first month following closing; providing such services thereafter, at Purchaser's sole discretion, for a fee of $125,000 for a six-month period, or $20,833.33 per month; and a right of cancellation by Purchaser at the end of any one month period within the six months referred to.

37. The complexity of the operations of the facility at 220 Coster Street was such that operation of it by the newly-acquiring Purchaser would be adversely affected if Purchaser did not, at least for an initial period, have access to the consulting services of principals or representatives of B&M who were very familiar with all aspects of the facility's operations.

9

### Post-Closing Performance by Purchaser

38.   Following the closing, 220 Laundry took possession of the facility, asserted control over its operations, and directly employed the former employees of B&M.

39.   As was 220 Laundry's business plan prior to the closing, representatives of 220 Laundry spent substantial time and effort increasing the existing customer base and adding to revenues which had been declining prior to closing.

40.   More particularly, as of the closing date, the business had been generating monthly revenues of approximately $500,000. As of September 27, 2011, when, as set forth more fully below, B&M wrongfully terminated the business relationship and barred Purchaser from access to the premises, monthly revenues had increased to approximately $800,000.

41.   220 Laundry's accurate belief that it could substantially grow the business was a key to its decision to undertake the substantial financial commitment represented by the subject transaction. In contrast, Miron Markus acknowledged that after engaging in the laundry business for some 25 years, and with revenues declining, he was looking to get out of the business by selling it.

42.   As respects 220 Laundry's transactional obligations, it complied entirely or substantially with all of its contractual obligations, including making timely monthly payments to Seller, and was never in material breach of any of its obligations. To date, Purchaser has paid Seller approximately $950,000 pursuant to the closing documents, and paid a broker an additional $100,000 in connection with the sale transaction. Until

10

September 27, 2011, Seller never provided written notice of any default to Purchaser as to any obligation arising under any of the closing documents.

<u>Seller's Post-Closing Performance</u>

43.     Since the closing, and notwithstanding the rights conferred to Purchaser under the closing documents, Seller has consistently and systematically interfered with Purchaser's operation of the business, and to a large extent conducted itself as though it had maintained all pre-closing operational authority.

44.     More particularly, but only by way of several examples, the following events took place following the closing and before Seller's delivery to Purchaser of a Notice of Default on the afternoon of September 27, 2011:

a)     On numerous occasions, Miron Markus demanded that Spitzer regularly arrive at work at 6:00 am, failing which Spitzer would be given "two weeks notice", a position wholly inconsistent with the transfer of the business effected by the closing documents, and made such comments in front of several of Purchaser's employees.

b)     Prior to the declaration of a default, the validity of which Purchaser disputes, Defendants Miron Markus and Boris Markus, as well as Michael Markus, demanded that certain employees of 220 Laundry perform certain functions in certain ways, including by giving priority to certain customers. Further, without the approval or input of 220 Laundry, Miron Markus and Boris Markus, in a hostile manner, informed several key employees of 220 Laundry, including supervisory staff and mechanics, that they had to leave the facility immediately and never return.

11

c)　　Rather than adhering to the on-call consultant arrangement plainly set forth in the Assets Purchase Agreement, one or more of Miron Markus, Boris Markus and Michael Markus regularly appeared at the facility without any request that they be present, and thereupon directed employee operations, as though no transfer of operational control had taken place.

d)　　Boris Markus, on or about September 19, 2011, having no authority to do so, countermanded instructions of 220 Laundry's General Manager Olsen as to the loading and dispatch of trucks. When Olsen rightfully asserted control of the facility's operations, he was physically threatened by Boris Markus, who charged Olsen with a wheeled laundry bin in the back of a truck, in a manner that led to an emergency 911 call being placed to the New York City Police Department.

e)　　Boris Markus, on several occasions, threatened various 220 Laundry employees with bodily harm, and on one occasion willfully and intentionally knocked a box out of an employee's hands, causing that employee to lose his balance and slip down several steps. Boris Markus thereupon: a) verbally abused that employee, and b) dropped his pants and "mooned" that employee, all in front of a number of male and female employees of 220 Laundry.

f)　　On or about September 19, 2011, Boris Markus came to the premises, there being no request that he do so, and initiated a verbal confrontation with Spitzer. During that confrontation Boris Markus, in a highly enraged state, violently threw a clipboard at Spitzer, striking him on the upper leg, proximately causing him

12

contusion, and pain.  Spitzer has retained photographic evidence of the injury suffered at the hand of Boris Markus.

g)      On multiple occasions, Defendants Miron Markus and Boris Markus, as well as Michael Markus, without authority to do so, communicated directly with existing customers of 220 Laundry regarding its business operations.

45.     The foregoing acts, and numerous other instances not specified here, led to virtually constant friction between the lawful post-closing operator of the facility, to wit, 220 Laundry and its authorized representatives, and the principals or agents of the Seller, notwithstanding Seller's transfer of operational authority and control pursuant to the closing documents.  Pursuant to those documents, the principals or agents of Seller were only to provide post-closing consulting services at the sole discretion of 220 Laundry on an on-call basis.

46.     The foregoing conduct, described above only by way of examples, had detrimental effects on the operations of the business, to which Purchaser remained, and remains, financially committed.  Among other things:

a) the conduct of  Sellers had a disruptive effect on the relationship between 220 Laundry and its employees;

b) the conduct of Sellers had an adverse effect on the relationship between 220 Laundry and certain of its customers;

c) the repeated and systematic acts of interference by Sellers had a disruptive and financially damaging effect on the business which Purchaser had lawfully acquired the right to operate.

13

## The September 27, 2011 Meeting

47.     Prior to any declaration by Seller of any default on the part of Purchaser, Purchaser's representatives and Seller's legal counsel mutually requested a meeting of principals and legal counsel for the Purchaser and Seller, and such a meeting took place at 220 Coster Street on September 27, 2011, commencing at Noon.

48.     At that meeting, Purchaser's representatives, in substance, informed Seller's representatives of the desire on the part of Purchaser to cease any further involvement by Seller in the operations of the business, including pursuant to the consulting provisions of the Assets Purchase Agreement, a position wholly consistent with Purchaser's rights under the closing documents.

49.     Seller's initial response to Purchaser's position statement was to propose two alternatives.  First, Seller's counsel introduced a "rollback" offer, by which his client would reacquire the business, but for terms which were not then provided by Seller's counsel.  Second, Seller's counsel stated that if Purchasers still desired to operate the business pursuant to the agreements which had been entered into, then they could do so without interference from Seller's representatives, who would cease all involvement with the business.

50.     Upon the presentation of these two alternatives, Purchaser not only embraced the second alternative, but informed Sellers that that is precisely what they wanted from the meeting:  a complete separation of Seller from the business, so that Purchaser could operate the business without interference and continue to meet all obligations under the closing documents.

14

51.    In response, Seller's counsel, for the first time, stated in substance that the second alternative would only be available if Purchaser was not already in default, and that it might be. Upon further conversation, Seller's attorney clarified that it was its position that Purchaser was already in default, that the default was not curable, and that Seller intended to take back the business.

52.    At no time prior to the September 27, 2011 meeting, and at no point during most of the meeting, did Seller assert that Purchaser had defaulted under any of the closing documents. Only after Purchaser not only accepted, but embraced, an alternative posed by Seller's counsel, that is, to operate the business in accordance with the closing documents without any interference from Seller, did Seller assert that Purchaser was in default.

53.    When asked to identify the default, Seller's counsel stated, for the first time, that Purchaser was in default of its obligations pursuant to the $8,600,000 Note, by failing to make a payment said to be due on September 23, 2011. No other alleged default was identified in that meeting. Later on the afternoon of September 27, 2011, Seller's counsel caused to be delivered to Spitzer, a Notice of Default, a copy of which is annexed to the Complaint.

54.    The only copy of that Note which has to date been provided to Purchaser by any representative of the Seller is annexed hereto as Exhibit B. A request for a copy of the executed Note was made at the September 27, 2011 meeting, and counsel for Seller stated that he would provide a copy, but has yet to do so.

55.    The relevant facts surrounding the Note, of which no original or copy was ever delivered by Seller to Purchaser, are as follows:

15

a)    Upon information and belief, in the first Paragraph of Exhibit B, the day of the month contained in the original executed note for the payment of monthly installments was the "23rd" of each month, as the closing took place on May 23, 2011.

b)    Upon information and belief, the Note provides in relevant part that:

In the event 220 Laundry LLC shall default in payment of any installment of principal or interest when the same shall become due and payable hereunder and such default shall not be cured within thirty (30) days, then the holders of this Note may, at their option, declare the entire principal of this Note due and payable, together with all accrued interest thereon.

c)    September 23, 2011 fell on a Friday. Eliot Spitzer, as well as other key employees of 220 Laundry, are observant followers of the Jewish faith who honor their Sabbath. Before any default was declared by Sellers, Purchaser caused a check to be prepared, on Sunday, September 25, and delivered to B&M that same day. The check was in the amount of $41,666.67, as required by the Note.

d)    The Delivery of the Notice of Default took place after the tender of the September check representing the installment payment under the Note.

e)    The Assets Purchase Agreement, pursuant to which the Note was executed and delivered, and to which it is appended as Exhibit A, provides in relevant part as follows:

26. Both parties hereto agree that in the event of a material breach of this agreement by the Purchaser which material breach is not cured by Purchaser within ten (10) business days after receipt by Purchaser of such notice of material default, the Seller shall suffer material financial harm, but that such harm may be difficult to accurately compute.

f)    The Assets Purchase Agreement provides that all notices must be in writing.

16

g)      The September, 2011 payment due under the Note was tendered to Seller prior to the issuance by Seller to Purchaser of any Notice of Default.

56.     The Notice of Default (a Complaint Exhibit) makes vague reference to other unspecified events of default.  No specific default was previously identified by Seller before the Notice of Default was delivered to Purchaser.

57.     The Notice of Default states that Purchaser has no further right to occupy the business premises, and that the presence of Purchaser's agents on the premises will be deemed a trespass.

58.     Purchaser, by written notice delivered to Seller the day after the Notice of Default was received, rejected the claim of default and reserved all rights.  A copy of that notice is annexed as Exhibit C.

<u>Seller's Performance of the Consulting Agreement</u>

59.     As set forth more fully in Paragraphs 36 and 37 above, Seller committed itself to certain consulting obligations, in accordance with provisions in the Assets Purchase Agreement.

60.     Notwithstanding its contractual commitment to provide consulting services without cost for the first month following the closing, and to provide consulting services for up to six months, at the discretion of Purchaser thereafter, Seller's principals or agents, including Miron Markus and Boris Markus, insisted, as a condition

17

to providing consulting services, on being paid for such services on an hourly basis, in addition to receiving the contractually provided for monthly consulting fee.

61.     This demand for consulting compensation beyond what was agreed to in the Assets Purchase Agreement came when Purchaser first acquired operational authority, and had little operational experience at the facility.  Purchaser was, therefore, constrained to pay the wrongfully demanded hourly compensation, in addition to the agreed compensation, for consulting services, or risk a significant loss of revenue from disrupted operations at the facility.

<u>Seller's Misrepresentations as to Utility Expenses</u>

62.     As set forth above, both in the period leading up to the entry into the Assets Purchase Agreement, and in the due diligence period prior to closing as provided for therein, both verbal and documentary assurances were given by Seller, in particular by Miron Markus, to representatives of Purchaser, in particular Spitzer, as to the operating expenses, including payments required to be made to utilities servicing the facility.

63.     The Assets Purchase Agreement, at Paragraph 27, provided for a period of due diligence between its execution and the eventual closing, and obligated B&M as Seller, to provide Purchaser with access to all financial and operating records of the business.

64.     The Assets Purchase Agreement, at Paragraph 6, provided that at closing, the Seller shall make and deliver to the Purchaser his affidavit in which he shall

18

state, under oath, the names and addresses of his creditors and the monies due each of them, or an affidavit of no creditors with respect to the business sold.

65.     Pursuant to Paragraphs 8 and 8.4 of the Assets Purchase Agreement, in order to induce the Purchaser to purchase the said properties and to pay the purchase price therefor, the Seller warranted and represented to the Purchaser that to the best of his knowledge the Seller had complied with all laws, ordinances, ruling and regulations of all constituted governmental authorities having jurisdiction.

66.     Pursuant to Paragraph 10 of the Assets Purchase Agreement the Seller was obligated to obtain and deliver at closing a final water meter reading and to pay all outstanding charges in accordance with said reading.

67.     Pursuant to Paragraph 13 of the Assets Purchase Agreement, each of the terms, conditions, covenants, provisions, agreements and representations contained therein survived the closing of sale.

68.     Pursuant to Paragraph 29(d) of the Rider to the Assets Purchase Agreement, the Seller represented and warranted that financial statements provided by the Seller to the Purchaser "shall fairly present the consolidated financial conditions of the Seller" and that the statements "reflect the consistent application of accounting principles."

69      At Paragraph 29(i) of the Rider to the Assets Purchase Agreement the Seller represented and warranted that the books of account and other records of the Seller which were made available to the Purchaser "are accurate and complete in all material respects and have been maintained in accordance with sound business practices."

19

70    Pursuant to Paragraph 33 of the Rider to the Assets Purchase Agreement, the Seller was obligated to inform the Purchaser promptly and prior to closing if the Seller became aware of any fact or condition that caused or constituted a breach of any of the Seller's representations or warranties.

71.    Among the financial information presented by Miron Markus to Spitzer prior to closing were records which indicated the costs which the Seller had paid during the operation of its business for utilities, including, but not limited to, providers of water and gas.

72.    Seller's representations as to operating expenses, including through the presentation of business records, were material to Purchaser's commitment to paying the purchase price set forth in the Assets Purchase Agreements and related documents.

73.    It was in justifiable reliance on that information, and on the several warranties and representations set forth above, that Spitzer agreed to the purchase price which ultimately came to be contained in a Modification of Assets Purchase Agreement, and agreed to execute all other closing documents, including:

a) Promissory Note in the principal amount of $1,000,000;

b) Promissory Note in the principal amount of $8,600,000, a copy of which is annexed hereto as Exhibit B;

c) Guaranty, by Spitzer, of the $8,600,000 note;

d) Security Agreement in favor of B&M, securing 220 Laundry's obligations under the $8,600,000 Note, covering all assets "as were transferred by Secured Party to the Debtor in accordance with an Assets Purchase Agreement and a bill of sale dated May 23, 2011";

20

e) Security Agreement in favor of B&M, securing 220 Laundry's obligations under the $1,000,000 Note, covering all assets "as were transferred by Secured Party to the Debtor in accordance with an Assets Purchase Agreement and a bill of sale dated May 23, 2011"; and

f) Lease for the business premises, running between 220 Coster, LLC, as Landlord, and 220 Laundry, as Tenant, the identity of the tenant being set forth in the Modification.

74.     At no point prior to, or at closing, did Miron Markus or any other representative of the Seller, inform the Purchaser of any inaccuracies in the financial information provided during the due diligence period or of any non-compliance by the Seller with any of its legal obligations.

75.     After the closing and the commencement of operational control by Purchaser, Miron Markus approached Spitzer and informed him that the information that had been provided as to certain utility costs was not only inaccurate, but grossly disparate from what had been stated verbally, and had been reflected in documentation provided to Purchaser during the due diligence period.

76.     In fact, it has been learned since closing that Miron Markus actively and willfully concealed his knowing misrepresentations to Spitzer as to the actual, lawful costs of water and gas service necessary to operate the facility.  Spitzer conservatively estimates that the actual lawful costs of water and gas necessary for the facility's operation was understated by the Seller and Miron Markus by some $850,000 per annum.

77.     Miron Markus had full knowledge of the actual lawful cost of utilities, but for the purpose of wrongfully inducing Spitzer to enter into the purchase transaction

21

activity concealed and misrepresented the utility costs and thereby defrauded 220 Laundry and Spitzer.

78.     Spitzer and 220 Laundry have been directly damaged by reason of the fraud perpetrated upon them by Miron Markus, such fraud being the proximate cause of money damages.

79.     By reason of the foregoing, B&M as Seller, was in default of its contractual obligations to the Purchaser prior to closing, and at closing, and remains in breach of its contractual obligations, and is barred by reason thereof from asserting any of the claims set forth in the Complaint.

80.     By reason of the foregoing, Miron Markus is liable to 220 Laundry and Spitzer for money damages, in an amount to be determined at trial, which amount should be trebled by reason of the active and willful nature of the fraud perpetrated by Miron Markus.

81.     By reason of the foregoing, 220 Laundry and Spitzer are, in addition to money damages, entitled to a reformation of the agreed purchase price, including, if a proper accounting should so reflect, an order directing payment by the Seller to the Purchaser.

<u>The Restrictive Covenant</u>

82.     Paragraph 23 of the Assets Purchase Agreement provides that Seller and its principals and representatives, including Miron Markus, Boris Markus and Michael Markus, shall not re-establish, reopen, be engaged in, nor in any manner whatsoever

22

become interested, directly or indirectly, in any off-site or third-party laundry facility for a period of five years after closing.

83.     By wrongfully declaring a default, and wrongfully seizing operations of the 220 Coster Street facility, Miron Markus and Boris Markus, have breached the referenced provision and are answerable to Purchaser for money damages.

84.     By reason of the foregoing, 220 Laundry is entitled to a money judgment against Miron Markus and Boris Markus, in an amount equal to the profits made by B&M following the wrongful declaration of default and the wrongful seizure of operations, and to an order directing that they comply with the covenant restricting their engagement in the laundry business.

<u>Tortious Interference with Business Contracts</u>

85.     By reason of the Assets Purchase transaction, Purchaser, to the exclusion of Seller and its agents, was lawfully entitled to maintain existing customer business contracts and to develop additional customer contracts, which in fact Purchaser did.

86.     Notwithstanding the foregoing, Miron Markus and Boris Markus, by multiple acts, directly interfered with the exclusive right of Purchaser to operate the business.  These acts of interference, included, but not by way of limitation:

a)  continuing to engage in direct communications with Purchaser's customers, without authorization to do so;

b)  directing that certain of Purchaser's employees leave the business premises and not return;

23

c) countermanding the rightful instructions of Purchaser's General Manager to Purchaser's employees as to operational details, including dispatch of trucks, priority of customers and other matters; and

d) demanding that principals and employees of Plaintiff, in particular Spitzer, report to work at stated hours or face termination, a position wholly inconsistent with the transfer of operational control from Seller to Purchaser.

87.     The foregoing acts of interference by Miron Markus and Boris Markus occurred prior to the wrongful declaration by B&M, on September 27, 2011, of a default on the part of Purchaser.

88.     Upon the baseless declaration by B&M and 220 Coster LLC of a default, they improperly and unlawfully seized operational control of the business, and thereupon Miron Markus and Boris Markus further tortiously interfered with:  a) 220 Laundry's rights under the Assets Purchase Agreement and Modification thereof; b) 220 Laundry's customer contracts as were in place as of September 27, 2011; and c) 220 Laundry's employment contracts.

89.     By its improper and unlawful seizure of operational control of the business, from Purchaser, B&M has tortiously interfered with all of Purchaser's customer contracts as were in place as of September 27, 2011.

90.     Purchaser has suffered economic harm by reason of B&M's unlawful and improper conduct.

24

## Conversion and Unjust Enrichment

91. From the time of closing, on May 19, 2011, effective May 23, 2011, until the issuance of the Notice of Default, Purchaser was entitled to operate, and receive the revenues and profits from, the business, it being Purchaser's position that that remains the case, and that the Notice of Default is not valid.

92. The active operation of the business by Purchaser generated invoices to customers, solely on account of laundry services performed during Purchaser's undisputedly lawful operation of the business.

93. Following Seller's wrongful eviction of Purchaser and its agents from the premises, Purchaser made a written demand upon Seller to turn over to Purchaser all checks sent to the address of the facility in payment for services provided by Purchaser during its undisputedly lawful operation of the business.

94. Seller has expressly refused to comply with such demand.

95. Upon information and belief, and to a near certainty, Seller, on and after September 27, 2011, received checks from customers in payment of laundry services provided during Purchaser's operation of the premises, and by retaining same Seller has converted property of Purchaser and has thereby been unjustly enriched.

## Failure to Deliver Email Account and Website

96.     Pursuant to the terms of the Assets Purchase Agreement, as modified, Seller was obligated to transfer to Purchaser control of Seller's email address and website account.

97.     Such a transfer was negotiated for by Purchaser, so that Purchaser could achieve a more complete transition into the newly acquired business, and better communicate directly with existing and new customers of the business in order to better service them.

98.     B&M, acting through Miron Markus and Boris Markus, failed and refused to comply with B&M's contractual obligation as concerns the transfer of the email address and website, and instead improperly retained control of the email address and website, by which means they engaged in unauthorized communications with Purchaser's customers and wrongfully deprived Purchaser of customer information to which it was entitled under the Assets Purchase Agreement, thereby causing economic injury to Purchaser.

## **AS AND FOR A FIRST COUNTERCLAIM**

99.     Defendants incorporate by reference each of the Paragraphs set forth above, with the same force and effect as if fully set forth herein.

100.    By reason of Seller's declaration of a default and issuance of a Notice of Default, and Purchaser's denial of any default and rejection of the Notice of Default, a

26

justiciable controversy exists between Seller and Purchaser as to their rights under the Assets Purchase Agreement and related documents.

101.    Purchaser is entitled to declaratory relief as follows:

a)  declaring the Notice of Default without force and effect;

b)  declaring that Purchaser and its agents are entitled to all access to the premises and to have the lawful right to operate the business in accordance with the closing documents; and

c)  declaring that Seller and its agents have no right to interfere in Purchaser's business operations at the facility.

## AS AND FOR A SECOND COUNTERCLAIM

102.    Defendants incorporate by reference each of the Paragraphs set forth above, with the same force and effect as if fully set forth herein.

103.    By reason of the foregoing, Seller is in breach of the Assets Purchase Agreement, the Modification of the Assets Purchase Agreement, and the Lease by:

a) failing to provide financial documentation to Purchaser which fairly represented to Purchaser utility expenses necessary for the operation of the facility;

b)  denying Purchaser operational access to the facility;

27

c) wrongfully demanding sums greater than those contractually required as a condition to performing agreed consulting services;

d) wrongfully, and without authority, engaging in the laundry business in breach of the covenants contained in the Assets Purchase Agreement; and

e) failing and refusing to transfer control of B&M's email address and its website to 220 Laundry, as required by the Assets Purchase Agreement.

104.   Purchaser has been economically damaged as a result of such wrongful conduct by Seller, and Purchaser is entitled to a money judgment for the amount of such damages as may be proven at trial.

## AS AND FOR A THIRD COUNTERCLAIM

105.   Defendants incorporate by reference each of the Paragraphs set forth above, with the same force and effect as if fully set forth herein.

106.   Seller's wrongful diversion of monies lawfully earned by Purchaser has unjustly enriched Seller and constitutes a conversion of monies to which Purchaser is lawfully entitled.  Purchaser is entitled to a money judgment and to an accounting and injunctive relief, as to all such sums received by Seller on or after September 27, 2011.

## AS AND FOR A FOURTH COUNTERCLAIM

107.   Defendants incorporate by reference each of the Paragraphs set forth above, with the same force and effect as if fully set forth herein.

28

108.   By reason of the foregoing, B&M, 220 Coster, Miron Markus and Boris Markus have tortiously interfered with all contracts running between Purchaser and its customers as of September 27, 2011.

109.   Purchaser has been damaged thereby, and continues to be damaged thereby, and is entitled to a money judgment B&M, 220 Coster, Miron Markus and Boris Markus.

## AS AND FOR A FIFTH COUNTERCLAIM

110.   Defendants incorporate by reference each of the Paragraphs set forth above, with the same force and effect as if fully set forth herein.

111.   B&M, acting through Miron Markus, fraudulently misrepresented to Purchaser the actual utility costs which the business operations of the facility lawfully generated, rendering the business far less profitable than Purchaser justifiably and reasonably expected.

112.   By reason of the foregoing, B&M and Miron Markus are liable to 220 Laundry and Spitzer for money damages, in an amount to be determined at trial.  220 Laundry should, in addition, receive an award of punitive damages by reason of the knowing, active and willful fraud perpetrated by Miron Markus.

113.   Further, in conjunction with the restoration of Purchaser to operational control of the facility, Purchaser is entitled to a full accounting of actual utility costs, and to a downward adjustment to its purchase and payment obligations in an amount based on the difference between the utility costs as represented and the actual lawful utility

29

costs in operating the facility. In the event the adjustment proves to be so large as to require payments from Seller to Purchaser, Purchaser reserves the right to seek such relief.

## AS AND FOR A SIXTH COUNTERCLAIM

114. Defendants incorporate by reference each of the Paragraphs set forth above, with the same force and effect as if fully set forth herein.

115. By reason of Plaintiffs' wrongful declaration of a default, the demand by Plaintiff 220 Coster LLC that 220 Laundry vacate the premises is an act of wrongful eviction entitling 220 Laundry to an order awarding it possession of the premises and money damages.

## AS AND FOR A SEVENTH COUNTERCLAIM

116. Defendants incorporate by reference each of the Paragraphs set forth above, with the same force and effect as if fully set forth herein.

117. On or about September 19, 2011, Boris Markus came to the premises, there being no request that he do so, and initiated a verbal confrontation with Spitzer. During that confrontation Boris Markus, in a highly enraged state, violently threw a clipboard at Spitzer, striking him on the upper leg, proximately causing him contusion, and pain. Spitzer has retained photographic evidence of the injury suffered at the hand of Boris Markus.

118. By reason of the conduct by Boris Markus referred to above and at Paragraph 44(f), Boris Markus is liable to Spitzer for money damages as a result of the

30

pain, suffering and mental anguish which was proximately caused by the wrongful conduct of Boris Markus, in an amount to be determined at the trial of this matter.

### AS AND FOR A EIGHTH COUNTERCLAIM

119.    Defendants incorporate by reference each of the Paragraphs set forth above, with the same force and effect as if fully set forth herein.

120.    Pursuant to the terms of the Assets Purchase Agreement, as modified, Seller was obligated to transfer to Purchaser control of Seller's email address and website account.

121.    Such a transfer was negotiated for by Purchaser, so that Purchaser could achieve a more complete transition into the newly acquired business, and better communicate directly with existing and new customers of the business in order to better service them.

122.    Miron Markus and Boris Markus were personally aware of Purchaser's contractual right to the required transfer, yet failed and refused to permit B&M to comply with its contractual obligation as concerns the transfer of the email address and website, and instead improperly caused it to retain control of the email address and website.

123.    By reason of the foregoing, Miron Markus and Boris Markus have tortuously interfered with 220 Laundry's contractual rights.

124.    In so doing, they and B&M engaged in unauthorized communications with Purchaser's customers and wrongfully deprived Purchaser of customer information to

31

which it was entitled under the Assets Purchase Agreement, thereby causing economic injury to Purchaser.

## AS AND FOR A NINTH COUNTERCLAIM

125.   Defendants incorporate by reference each of the Paragraphs set forth above, with the same force and effect as if fully set forth herein.

126.   By reason of the foregoing, 220 Laundry is entitled to a money judgment against Miron Markus and Boris Markus, for money damages resulting from their breach of the covenant not to engage in the laundry business for a period of five years from the closing of the purchase transaction.

### Prayer for Relief

127.   As to all of the foregoing defenses and counterclaims, Defendants hereby incorporate by reference the applicable provisions of the prayer for relief contained at the conclusion of the Third-party Complaint which follows.

### Third-party Complaint

Third-party Plaintiffs 220 Laundry LLC and Eliot Spitzer, for their Third-party Complaint herein allege as follows:

### Parties

1.   Third-party Plaintiff 220 Laundry LLC ("220 Laundry") is a New York limited liability company which transacts business in the State of New York.

32

2.      Third-party Plaintiff, Eliot Spitzer is an individual residing in the state of New York.

3.      Miron Markus is in individual residing in Nassau County, New York, and is, upon information and belief, the President and sole shareholder of B&M Linen Corp.

4.      Boris Markus is an individual residing in Nassau County, New York, and is, upon information and belief, the Vice-president of B&M and is the son of Miron Markus.

## Venue

5.      Nassau County is a proper venue for the resolution of the claims which are the subject of this Third-party Complaint, by reason of the venue of the principal action, and a written agreement running between B&M and Spitzer, which agreement was assigned by Spitzer to 220 Laundry.

## AS AND FOR A FIRST CAUSE OF ACTION
### Indemnification and Contribution

6.      In the primary action, 220 Coster, LLC alleges that Defendants have wrongfully diminished the value of the laundry facility located at 220 Coster Street, Bronx, New York and/or the equipment contained therein.

7.      For good and valuable consideration, including payment to them of sums greater than were required to be paid under the consulting provisions of the Assets Purchase Agreement, Miron Markus and Boris Markus, after the closing took place, directly undertook to arrange for, or to themselves perform, maintenance and servicing of the facility and certain of its equipment.  Such was their primary operational function under the consulting arrangement

33

8.      More particularly, Miron Markus and Boris Markus, based on their many years of experience running and maintaining operations at the facility, directly undertook, post-closing, to keep the facility and its equipment properly maintained and in good repair, and were compensated to do so.

9.      By reason of the foregoing, as respects the claims by 220 Coster asserted in the primary action, alleging any failure on the part of Defendants to maintain the facility or its equipment, Third-party Defendants Miron Markus and Boris Markus should be held liable for any and all such claims, to the exclusion of Defendants and Third-party Plaintiffs.

WHEREFORE, Defendants in the primary action, and Third-party Plaintiffs in the Third-party action, respectfully demand relief as follows:

1.      As to Plaintiffs' Claims in the Primary Action:

a)      an order and judgment dismissing with prejudice each of the Causes of Action of the Complaint as to all Defendants.

2.      As to the Counterclaims of Defendants in the primary action:

a)      a declaratory judgment  in favor of 220 Laundry on is First Counterclaim, as follows:

i) declaring the Notice of Default dated September 27, 2011 to be without force and effect;

34

ii) declaring that 220 Laundry, as Purchaser, and its agents are entitled to full access to the business premises at 220 Coster Street and that they have the lawful right to operate the business in accordance with the closing documents; and

iii) declaring that Seller and its agents have no right to interfere in Purchaser's business operations at the facility;

and granting preliminary injunctive relief consistent with the foregoing declarations;

b)      a money judgment in favor of 220 Laundry on its Second Counterclaim against B&M, for damages proven at the trial of this matter to have resulted from B&M's multiple breaches of the Assets Purchase Agreement, including:

i) failing to provide financial documentation to 220 Laundry, as Purchaser, which fairly represented to Purchaser utility expenses necessary for the operation of the facility;

ii) denying 220 Laundry operational access to the facility;

iii) wrongfully demanding sums greater than those contractually required as a condition to performing agreed consulting services;

iv) wrongfully, and without authority, engaging in the laundry business in breach of the covenants contained in the Assets Purchase Agreement; and

35

v)  failing and refusing to transfer control of B&M's email address and its

website to 220 Laundry, as required by the Assets Purchase Agreement;

the amount of said money judgment reasonably estimated be in excess of $10,000,000;

c)      a judgment in favor of 220 Laundry on its Third Counterclaim:

i)  granting 220 Laundry a money judgment in the amount of all monies

received from customers of 220 Laundry from and including September

27, 2011, on which date B&M commenced conversion of customer

payments to which 220 Laundry was lawfully entitled; and

ii)  directing a full and immediate accounting of all such sums received

from customers from and including September 27, 2011;

d)      a judgment in favor of 220 Laundry on its Fourth Counterclaim against

B&M, 220 Coster, Miron Markus and Boris Markus, for money damages proven at trial

to have been proximately caused by their tortious interference with 220 Laundry's

customer contracts, including:

i)  from the May 23, 2011 effective date of the Agreement to September

27, 2011, on which date B&M and 220 Coster wrongfully declared 220

Laundry to be in breach of its contractual obligations, and wrongfully

evicted 220 Laundry from the premises; and

ii)  from September 27, 2011 until 220 Laundry is restored to

possession of the premises as is its lawful right, without interference

by B&M, 220 Coster or their principals or agents;

36

the amount of which cannot be presently known as the nature and scope of such interference is concealed from 220 Laundry by reason of its wrongful exclusion from the premises;

e)   a judgment in favor of 220 Laundry, Eliot Spitzer and Michael Steinberg against B&M and Miron Markus, on the Fifth Counterclaim:

I)  directing a full accounting of the actual utility costs lawfully required to be paid in operating the facility;

ii)  determining the extent to which B&M understated those utility costs by representations made and documents provided during the period preceding, and constituting, the due diligence period provided for in the Assets Purchase Agreement;

iii)  awarding 220 Laundry, Eliot Spitzer and Michael Steinberg a money judgment in the amount of such difference; and awarding 220 Laundry punitive damages as against Miron Markus, by reason of his knowing, active and willful fraudulent conduct;

iv)  declaring that the purchase and payment obligations on the part of 220 Laundry and its guarantors as determined by the closing documents, be adjusted as to payments not yet due, in a manner consistent with the amount by which utility costs were understated, which sum is conservatively estimated to be $850,000 per annum.  In the event the accounting prayed for establishes that the adjustment to be made is such

37

that 220 Laundry's payment obligations are reduced below zero, 220

Laundry requests that the money judgment to be awarded on the Fifth

Counterclaim so reflect that fact;

f)      a money judgment in favor of 220 Laundry and against 220 Coster on the

Sixth Counterclaim, for all money damages proven at trial to have resulted from the

wrongful eviction of 220 Laundry from the premises, which damages are continuing and

ongoing and can only be determined after 220 Laundry is properly restored to

possession.

g)      a money judgment in favor of Eliot Spitzer against Boris Markus on the

Seventh Counterclaim, for pain, suffering and mental anguish resulting from the

personal injury inflicted upon Spitzer by Boris Markus as set forth above, all without

justification on the part of Boris Markus, and that Spitzer further be awarded punitive

damages based on the willful and violent nature of the attack;

h)      a money judgment in favor of 220 Laundry against Miron Markus and

Boris Markus, jointly and severally, on the Eighth Counterclaim, for all money damages

proven at trial to have resulted from their tortious interference with the contract right of

220 Laundry to have transferred to it by B&M access to and control of the email

address and website of B&M;

i) a money judgment in favor of 220 Laundry against Miron Markus and Boris

Markus on the Ninth Counterclaim for all damages proven at trial to have resulted from

their breach of  contractual covenant not to engage in the laundry business for a period

38

of five years from closing, said damages to be in an amount equal to all monies and other benefits received by B&M, Miron Markus and/or Boris Markus as a result of their wrongfully engaging in the laundry business after May 23, 2011, which damages are continuous and ongoing by reason of their continued wrongful acts;

3.      As to the Third-party Complaint:

a) in the event the Court finds that there was any diminution in the value or condition of the premises and/or the equipment contained therein during such time as 220 Laundry operated the facility, as is alleged by 220 Coster in the primary action, an order and judgment in the nature of indemnity and contribution as against Miron Markus and Boris Markus, by reason of their having undertaken, for consideration actually paid to and retained by them, the responsibility of maintaining the facility and equipment therein;

4.      As to the primary action and the Third-party action:

a)      an award of interest on all money awards, as allowed by law;

b)      an award of costs, disbursements and attorneys' fees, as allowed by law; and

c)      such other and further relief as to the Court may seem just and proper.

39

Dated:  October  26, 2011

COTI & SUGRUE

By _Stephen R. Sugrue_

Stephen R. Sugrue
59 Grove Street Suite 1F
New Canaan, CT 06840
203-966-5817

To:    Juliean Galak, Esq.
        31-05 Brighton 3rd Street Suite 1-K
        Brooklyn, NY 11235-7372

40

# EXHIBIT C

FAXED TO ATTY ON _____
CONFORMED ON ____ 2/8/12

At a Term *IAS Part 9)* of the Supreme Court
of the State of New York, held in and
for the County of Nassau, at the
Courthouse, 100 Supreme Court
Drive, Mineola, NY
on the 8th day of February, 2012

**PRESENT:**

HON. _Jaeger_
A.J.S.C.

**SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NASSAU**

MOTION SEQUENCE # 3
ORIGINAL RETURN DATE 2/22/12
RELIEF _OPI_

--------------------------------------------X

B&M LINEN CORP. and 220 COSTER LLC,

Plaintiffs,

-against-

220 LAUNDRY LLC, ELIOT SPITZER,
MICHAEL STEINBERG and ADAM J. TELLER,

Defendants,

-against-

MIRON MARKUS and BORIS MARKUS,

Additional Counterclaim
Defendants

--------------------------------------------X

220 LAUNDRY LLC and ELIOT SPITZER,

Third-party Plaintiffs,

-against-

MIRON MARKUS and BORIS MARKUS,

Third-party Defendants.

--------------------------------------------X

ASSIGNED TO:
HON. STEVEN M. JAEGER

**Index No. 11-013989**

**ORDER TO SHOW CAUSE
WITH TEMPORARY
RESTRAINING ORDER**

ENTERED IN COMPUTER JT

Upon reading and filing the annexed affirmation of Stephen R. Sugrue,

and the exhibits annexed thereto, and Defendants/Third-party Plaintiffs having

previously moved this Court by Order to Show Cause for an Order granting

Defendants/Third-party Plaintiffs a Preliminary Injunction entitling them to possession of

the commercial laundry facility located at 220 Coster Street, Bronx, N.Y, which motion is

now sub judice;

LET Plaintiffs B&M LINEN CORP. and 220 COSTER LLC and Additional

Counterclaim Defendants, MIRON MARKUS AND BORIS MARKUS, show cause

before the Hon. Steven M. Jaeger      at Part 41 of the Courthouse, at

Mineola, New York, on the 22 day of February, 2012 at 9³⁰ a.m., or as

soon thereafter as counsel may be heard, why they and their agents, employees and

representatives should not be temporarily restrained, pending the determination of the

motion for a preliminary injunction or further Order of the Court, from selling, assigning,

pledging, encumbering, or otherwise transferring any of the assets of B&M Linen Corp.

or 220 Coster LLC located at the 220 Coster Street, Bronx, NY facility, and be

restrained from selling, transferring, assigning or otherwise granting to any third-party

the right to operate the laundry facility; and sufficient cause appearing therefor,

IT IS FURTHER ORDERED that pending the ~~hearing~~ determination of this motion,

Plaintiffs B&M LINEN CORP. and 220 COSTER LLC and Additional Counterclaim

Defendants, MIRON MARKUS AND BORIS MARKUS and their agents, employees and

representatives are prohibited from selling, assigning, pledging, encumbering, or

otherwise transferring any of the assets of B&M Linen Corp. or 220 Coster LLC located

at the 220 Coster Street, Bronx, NY facility, and are prohibited from selling, transferring, *except for ordinary operating expenses in the regular course of business*

assigning or otherwise granting to any third-party the right to operate the laundry facility.

SUFFICIENT REASON APPEARING THEREFOR, let service pursuant to CPLR

2103(b) 1, 3 or 6 of a copy of this Order together with all papers submitted in support

thereof on Julien Galak, Esq., counsel for Plaintiffs and Additional Counterclaim

Defendants, and any other appearing parties, if any, on or before the _____10_____ day of

_____, 2012 be deemed good and sufficient service.

ENTER:

_____
A.J.S.C.

**SUPREME COURT OF THE STATE OF NEW YORK**
**COUNTY OF NASSAU**
————————————————————————X
B&M LINEN CORP. and 220 COSTER LLC,      :

                **Plaintiffs,**      :

     -against-      :

220 LAUNDRY LLC, ELIOT SPITZER,      :    Index No. 11-013989
MICHAEL STEINBERG and ADAM J. TELLER,    :

                **Defendants,**      :    Assigned to:
                       :      Hon. Steven M. Jaeger
     -against-      :

MIRON MARKUS and BORIS MARKUS,      :

          **Additional Counterclaim** :
          **Defendants**      :  <u>AFFIDAVIT IN SUPPORT</u>
————————————————————————X  <u>OF MOTION FOR</u>
220 LAUNDRY LLC and ELIOT SPITZER,      :  <u>TEMPORARY RESTRAINING</u>
                       :  <u>ORDER</u>
          **Third-party Plaintiffs,**      :

     -against-      :

MIRON MARKUS and BORIS MARKUS,      :

          **Third-party Defendants.** :
————————————————————————X

     Stephen R. Sugrue, an attorney duly admitted to practice before the Courts of New

York, hereby affirms under penalty of perjury as follows:

<u>Overview of this Motion</u>

    1.    I submit this Affirmation in support of the motion by

Defendants/Third-party Plaintiffs for a Temporary Restraining Order, pending the

determination of the motion for a preliminary injunction which was taken under

submission by the Court on January 6, 2012.

1

2.      As I stated to the Court on that date, events relating to the discovery
and assessment by Con Edison of the magnitude of a long-running, systematic theft
of natural gas service by B&M Linen ("B&M" or "Seller") are just now unfolding.
On January 5, 2012, just a day before that oral argument, I had received a response
by Con Ed to a first subpoena served upon it.  On January 26, 2011, I received Con
Ed's response to a second subpoena, and that response has prompted this
application for a TRO.  I will put this in appropriate context, both as to procedural
status and substantive significance, as succinctly as possible.

3.      As explained fully below, this application is based directly on the
recent determination reached by Con Edison, that the theft of services committed by
B&M was of such magnitude that there is presently due and owing to Con Ed, by
B&M some $5,219,730.  As I will also set forth more fully below, this calculation of
the magnitude of the theft of services by B&M does not include B&M's non-payment
of that portion of Con Edison bills for the actual supply of natural gas by an Energy
Service Company.  It is likely that the indebtedness to that entity will exceed the
sum demanded by Con Edison, and that the total owed to both will be in the range
of $10-13 million dollars.

4.      These developing circumstances warrant the relief requested on this
motion, and should be considered as well on the pending injunction motion.  B&M
and the Markus' have now been presented with Con Edison's demand for payment
of more than $5,000,000.  Even omitting for present purposes an inevitable demand
for perhaps as much as $8,000,000 more by the actual provider(s) of the natural gas,

2

B&M and its principals might well be inclined to conduct an immediate sale of the building itself or of the valuable equipment inside it, in an attempt to address their financial crisis.

5.      The very same facts now uncovered by Con Edison as to theft of service also establish, of course, that B&M cannot possibly prevail in this action. As recited fully on the pending injunction motion, B&M is now known to have been in perpetual default of its obligations regarding the honest disclosure of the cost of operations. That default in the Assets Purchase Agreement clearly preceded 220 Laundry's assuming possession of the premises and commencing operations.

6.      A Temporary Restraining Order is necessary and warranted to preserve the facility, plant and equipment, indeed all assets utilized by B&M in its continued wrongful operation of the business that 220 Laundry lawfully acquired. Simply stated, had the recently learned facts been known at the time of filing the Order to Show Cause for the preliminary injunction, that filing would have included a TRO request.

Background

7.      B&M sold its commercial laundry operation to 220 Laundry, LLC ("220 Laundry"). The closing of the transaction took place on May 19, 2011, effective May 23, 2011.

8.      Because 220 Laundry's principals had no knowledge of the technical operation of the complex plant and equipment, the closing documents included a provision by which the principals of B&M, the seller, would be on call to provide

3

consulting services, for an agreed payment of $20,883 per month.  For present purposes, this is significant only in that it explains that the principals of Seller had continued access to the premises after closing, with the focus of their activities being on the plant and equipment.

9.     During the pre-closing due diligence process, utility bills were presented by Seller to representatives of 220 Laundry (an LLC formed at the time of closing).  These included bills for natural gas, electricity and water, but not oil.  The three commercial boilers on the premises are known as "dual-feed" or "dual fuel", and can be fairly readily switched from operating on natural gas to operating on oil, obviously where such fuels are supplied to them.

10.    As the Court was informed at oral argument of the preliminary injunction motion, at one point after the sale, B&M's President and sole owner, Miron Markus ("Markus"), brought Eliot Spitzer into the room where the gas meter was located and had an odd and awkward conversation wherein Markus showed Mr. Spitzer that it was "possible" to disable the gas meter by removing a small component therefrom.  It was not then clear to Mr. Spitzer whether Markus had in fact been doing so.  Mr. Spitzer concluded that awkward conversation, then directed his General Manager, Christian Olsen, to attempt to determine whether the utility bills provided during due diligence were likely accurate.

11.    I was first retained shortly thereafter.  As my client sought to develop an understanding, at least a rough understanding, of the actual gas usage for the three boilers, I attempted to arrange a meeting among the parties' principals and

4

attorneys. The agenda on our side was simple: communicate the fact that the consulting arrangement would be terminated (as was 220 Laundry's absolute right under the purchase agreement) and communicate the fact that 220 Laundry, as buyer, now sought exclusive control and possession of the premises.

12.    That meeting took place on September 27, 2011. After I explained that it was 220 Laundry's intention to terminate the consulting services and operate the facility on its own, B&M's counsel, Juliean Galak, Esq. politely inquired if 220 Laundry would be interested in discussing what he termed a "rollback", which he suggested was some negotiated repurchase of the operation by B&M, the Seller. We stated that we were not interested. It was at that point, and not before, that Mr. Galak stated that 220 Laundry was in material default of its purchase note obligations, by reason of a $41,666 monthly note payment said to have been made two days late. To be clear, that payment had by then been made, and was made before any claim of default was made by 220 Laundry.

13    Mr. Galak and clients left the room, and returned some time later with a just-prepared Notice of Default. It demanded that 220 Laundry immediately leave the premises, under threat of claim of trespass. Because there had been violent confrontations between Markus' son, Boris Markus, who also attended the meeting, against both Spitzer and 220 Laundry's General Manager, Christian Olsen, and because of uncertainty as to the matter of theft of utility services, 220 Laundry left the premises. It has since then been operated by B&M.

5

14.    The claim of "material breach" was utterly bogus. 220 Laundry had paid almost $1,000,000 toward the purchase price to that point, some four months after closing. Even at the statutory rate of interest, a two-day delay in a $42,000 payment corresponds to some $20 in interest. At current bank rates on deposits it is less than $5.00.

15.    The clear evidence just acquired of B&M's long-running theft of natural gas service is explained in detail below. How was Markus planning to get away with it? His apparent plan was to bring Eliot Spitzer into his confidence and persuade him to perpetuate the long-running theft of utility services. The conversation between Markus and Spitzer referred to at Paragraph 6 above was Markus' initial introduction of the subject to Spitzer.

16.    But for such a plan to persuade Spitzer to continue the theft of services from Con Edison, Markus could not possibly have kept his theft from Con Edison and his fraud upon 220 Laundry from coming to light. Consider: on Markus' last day in the premises (which we informed him on September 27, 2011 would be that day) Markus would either leave with the meter intact, or leave with it disabled. If the former, 220 Laundry would almost immediately receive gas bills some 10 times higher than had been shown during due diligence (a calculation explained below). If the latter, 220 Laundry would have received no gas charges. Both would have pointed to massive fraud. Thus Markus simply reclaimed the premises, though baselessly as a matter of fact and law.

6

## The Pending Motions

17.   By Order to Show Cause filed in November, 220 Laundry sought, primarily, to be restored to exclusive possession of the premises, pending further order of the Court .   In opposition to that motion, Markus swore:

> I never misrepresented the utility costs or anything else to them.  In the event that any of initial estimates were inaccurate, the same were corrected during the due diligence period.  Prior to closing, my books were completely open to the defendants/third party plaintiffs.

18.   Of course the question is not whether the Con Edison bills actually received by B&M were shown to 220 Laundry during due diligence, it is whether B&M fraudulently concealed the actual costs of utilities necessary to operate the business lawfully, by presenting the bills which he in fact presented.

19.   On the day before the January 6, 2012 oral argument of the injunction motion, Con Edison responded to a first subpoena served on it.  The documents produced were made available to opposing counsel on that day, but none was included in the record on the motion, simply because of the timing of receipt.

20.   Also on January 6, 2012, I served a motion for default on Plaintiffs' counsel, returnable January 17, 2012.  This was based on the simple fact that Plaintiff had never served any Reply to Defendants' Counterclaims, and had not served any timely Answer the Third-party Complaint.   The default motion was made returnable January 17, 2012.  Plaintiffs' counsel unilaterally obtained an adjournment, to February 21, of the default motion.

21.   Thus, the injunction motion is now sub judice; and the default motion is scheduled for February 21, 2012.

7

<u>The Documents Produced in Response to the Subpoenas</u>

22.     The documents received in response to both subpoenas establish the magnitude of B&M's theft of services, and fully warrant the granting of a temporary restraining order preventing Plaintiff's from selling, assigning, leasing, encumbering or otherwise transferring any interest in B&M Linen, or any of the plant and equipment located there to anyone, pending further Order of the Court.

23.     Exhibit 1 is a copy of the first investigative report prepared by Con Edison upon being alerted to the possible theft of services. On the front page, Con Edison's investigator checked the box indicating a "suspect[ed] theft" of services. The narrative beginning on the second page states:

> When we initially approached MGR for access to gas [meter], he stated that employee w/key to room will return in 1 HR.  Just out of curiosity we walked over to MRM [meter room] and observed owner of business Mr. Markus hastily exiting.  Our subsequent inspection revealed the following.

> The 4 screws bolting register head to [meter] can be removed by hand.  These screws 100% of the time are tightened to torque and can be removed with socket/ratchet only.  After we took register head off we verified (and photographed) extensive scratching on register gears.

> It was then that Mr. Markus informed us that he switched dual fuel boilers over to oil when price is advantageous.  J.G. [believed to be Jack Gaffney] asked for oil company's name.  Mr. Markus thinks its "Embassy" but is not sure.  He states further he used oil 1 mo. ago but cannot provide any receipts for oil deliveries.  Oil storage tank empty at time of call [inserted text: oil pipe emerging from oil storage room is dead-ended and capped (took photo)].  We re-installed register head onto [meter] and took a test dial rotation. . . . We then installed 4 silver security caps over the 4 screws/bolts.  We will be returning Tuesday JAN 3 2012 to verify [meter] [reading] and continue our investigation.

8

24.     A second Field Inspection Report by Con Edison is annexed as Exhibit

2. On the first page, the "Result of Inspection" field is marked "THEFT OF

SERVICE", in contrast to "SUSPECT THEFT" as was shown on the report of the

first inspection.  Page two of the SECOND report includes the following:

> We returned to site to continue investigation.  We verified left rear
> silver security cap intact, yet loosened.  There are visible scratch
> marks around perimeter of cap.  Someone attempted to once again
> remove register head.  We then performed a 30-day projection.
> Projection comes out to 63,450 cu ft of gas per MO! s/ Bob Eckstein.
> Phoned T. Vespers to begin billing process.

25.     Con Edison's response to a second subpoena was received on

Thursday, January 26, 2012.  It consists of only four pages, but in substance reflects

Con Edison's calculation of the sums due to Con Edison and confirms the theft of

services.  That response is annexed as Exhibit 3. The only redaction is on the last

page, as it made a reference to a settlement offer apparently made to Con Edison.

26.     The first page of Exhibit 3 contains the following text, in a

communication between two Con Edison employees referenced in some of the

reports quoted above:

> The reading today at 1300 hrs was 033187.  This pretty much confirms
> the billing and the theft of service determination.  The last reading
> was on Jan 3rd and that was 31312.
>
> The difference is 1275 x 10 = 12750/6 days = 2125 ADU x 30 = 63,750
> CCF a month.  That is exactly what we estimated.

27.     The next two pages of Exhibit 3 are the resulting bill prepared by Con

Edison.  I am informed by Con Edison that the bill is limited to a period of six years,

and that Con Edison did so by reason of the six-year statute of limitations for

9

contract actions in New York. The resulting sum claimed due from B&M to Con Edison is $5,219,730.71. Contrasting the figures in the column headed "Original Consumption" and those in the column headed "Revised Consumption" reveals that it was not uncommon for the actual consumption to be ten times higher than the doctored meter, and resulting bills, indicated.

28.     This is wholly consistent with the Con Edison printout produced in response to the first subpoena, a printout referred to at oral argument of the injunction motion. A copy is annexed as Exhibit 4. Exhibit 4 is an hourly recordation by Con Edison of *apparent* metered gas utilization by B&M from 9:00 am on November 21, 2011 until 8:00 am on January 3, 2012. It is useful to bear in mind that the first inspection referred to above (prompting Markus' hasty departure) was between those dates, on the morning of December 30, 2011.

29.     Exhibit 4 shows that the meter reported zero gas utilization every hour from 9:00 am on November 21, 2011 through 6:00 pm on December 4, 2011, and from 8:00 pm on December 4, 2011 through 3:00 am on December 5, 2011. One reading for one hour on December 4 shows consumption of 2,000 cubic feet of gas. There then begins a period, on December 5 and December 6, during which hourly consumption is typically reported at 12,000-15,000 cubic feet. Following that, for all but a very few hours, the printout shows no gas consumption until the morning of Con Edison's first appearance at the facility to explore the theft of services, on December 30, 2011.

10

30.    B&M, through Markus, and perhaps others, simply left the meter disconnected for the most part, except for a few days a month. I was informed by a Con Edison representative that Con Edison would read that meter some time during the first week of the month, typically the third, fourth or fifth day of the month.

31.    The available proof is overwhelming: B&M was regularly disabling the meter for almost 27 days a month, then reconnecting it in anticipation of the monthly reading. This is wholly consistent with the ten-fold discrepancy referred to in Paragraph 23 above.

The ESCO Portion of the Gas Bills

32.    As the Court is likely aware, gas utility bills typically have two basic components: supply charges and delivery charges. The supply charges are for procuring and storing the natural gas itself, whereas the delivery charges are charges for maintaining in place the infrastructure necessary to deliver the natural gas to a user. This distinction is set forth on the website for Con Edison, with reference to a sample bill.

33.    Customers can select from among many Energy Supply Companies, or Energy Service Companies ("ESCOs") to provide the supply services. B&M did so. Although monthly gas bills cover both the Con Edison portion and the ESCO portion, I have confirmed with Con Edison's counsel that it is Con Edison's policy in a theft of services situation to submit a bill only for the Con Edison, that is delivery, portion.

11

34.     As I will explain, this means that the total demand likely to be made upon B&M for the theft of services discovered by Con Edison is not the $5,219,730 presently demanded, but likely to be closer to $13 million.

35.     Following Con Edison's response to the second subpoena, 220 Laundry's General Manager, Christian Olsen, provided me with an analysis of the 22 months of Con Edison bills which were produced by B&M during due diligence, specifically the bills for January, 2009 through October, 2010.  The ratio of gas charges as between the ESCO and Con Edison over that period was 60.7% to 39.3%, respectively.  Applying that ratio to Con Edison's calculations as to its own portion, yields a possible claim by the ESCO as to gas theft over six years of $3,866,377.41. Further, if the ESCO applies the same calculation method as Con Edison as to late charges, the ESCO late charges will total $4,195,649.41. The total potential, if not likely, charges by the ESCO for that same six-year period already billed by Con Edison would be $8,062,026.  The total for Con Edison and the ESCO would therefore be $13,281,756.

A Temporary Restraining Order is Necessary to Preserve Rights and Assets

36.     The foregoing presents a solid picture of the dire financial situation in which B&M and its principals suddenly find themselves.  It is not based on unsupported innuendo by one of two litigating entities, but on a reliable analysis undertaken by utility professionals experienced in the investigation of thefts of utility services.

12

37.     Markus' hasty explanation to the Con Edison investigators on the occasion of their first investigative visit to the facility—to the effect that B&M used oil from time to time—was not only undermined by Marcus' inability to present any oil receipts and the fact that that oil tank was both empty and not connected to any boiler, but it is not disputed that no oil bills were presented to 220 Laundry during due diligence.

38.     220 Laundry has a lawful right to operate the facility, and that is the fundamental aim of the preliminary injunction motion submitted to the Court on January 6, 2012.  B&M and its principals have a very sudden and very significant need for money.  They will surely consider an immediate sale of the valuable plant and equipment where the laundry operates.  Such a transfer should be halted by the Court, pending a determination of the parties' rights and further order of the Court.

39.     There has been no prior application for the relief herein requested.


Dated:  February 6, 2012                         _Stephen R. Sugrue_
                                                  Stephen R. Sugrue

13

**EXHIBIT 1**

**conEdison**

# PROPERTY PROTECTION
# FIELD INSPECTION REPORT

CASE NUMBER

**220 Coster St**

ADDRESS | PART SUPPLIED | ACCOUNT NUMBER | MUNI
FACT-|B93021037oo28| | M-

**B&M Linen Corp-**

CUSTOMER NAME | E/G SC | METER PREFIX | METER NUMBER | CONSTANT | SIZE-TYPE
G | | 359499/ | 10 | Konector 60.00

**1/L-**

METER LOCATION | ACCESS INSTRUCTIONS | | TOWN 85833/
Re-field 1/3/12- | 12/20/11 | 70157- | /04680/
COMMENTS | INSPECTION DATE | INSPECTOR EMP. # | INSPECTOR EMP. #

Bronx.

## EQUIPMENT NOT CHECKED FOR THE FOLLOWING REASON

| NO ACCESS | REFUSED | BLDG. VACANT | PEND. DEMO | CAN'T LOCATE | DNR | OTHER-SEE REVERSE |
|---|---|---|---|---|---|---|
| N | R | V | P | L | D | O |

## EQUIPMENT FOUND ON PREMISES

| NO METER | GAS METER | SOCKET-DMD | SOCKET NON-DMD | BOT FED DMD | BOT FED NON-DMD | CT METER |
|---|---|---|---|---|---|---|
| NON | GAS | SDM | SND | BFD | BFN | CTM |

| | LOCK-SEALS | METER COVER | TERM. CHAMBER | T.C.O. | CT-CABINET | SERV. SWITCH | SOCKET EQUIP. | 7 JAW EQUIP. | GAS-CAP | VALVE | PLUG |
|---|---|---|---|---|---|---|---|---|---|---|---|
| FOUND | | | | | | | | | | | |
| LEFT | | | | | | | | | | | |

| TYPE OF LOCK | TYPE OF SEAL | TYPE OF BUSINESS-RESIDENCE (SEE BELOW) |
|---|---|---|
| FOUND: BROKEN [B] MISSING [M] INTACT [I] | FOUND: BROKEN [B] MISSING [M] INTACT [I] | COMMERCIAL 7215 |
| ENTER BOTH TYPE FOUND AND TYPE LEFT | ENTER BOTH TYPE FOUND AND TYPE LEFT | |
| FOUND [O] LEFT [O] (SEE BELOW) | FOUND [O] LEFT [O] (SEE BELOW) | RESIDENTIAL |

## RESULT OF INSPECTION

| THEFT OF SERVICE | SUSPECT THEFT | DIVERSION OF SERVICE | IRR. METER CONDITION | NO THEFT |
|---|---|---|---|---|
| TOS | SUS | DOS K U | IMC | NOS |

## NOTE SPECIFIC CONDITION OBSERVED

| CONFIRMED THEFT (T) | | | | SUSPECTED | | DIVERSION OF SVC (D) | | IRREGULAR METER CONDITION (I) | | NO THEFT (N) | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| E X T E R N A L | Reversed Leads | 1 | Jaws Spread | 11 | Forged Seal | 1 | Adequate Wire | 1 | Damaged Meter | 1 | New Meter Set | 1 |
| | Jumper | 2 | Shunt Device | 12 | Tampered Seal | 2 | Cust-to-Cust Theft | 2 | Exchanged Meter | 2 | Company Bypass | 2 |
| | Potential Wire | 3 | Heel/Toe Switch | 13 | Scratches/Burns | 3 | Temp. Co. Line | 3 | Dial Eccentric | 3 | Cont. of Service | 3 |
| | Potential Clip | 4 | Meter Switch | 14 | Locking Device | 4 | Damaged Equip. | 4 | Meter Defective | 4 | Customer Wiring | 4 |
| | Inverted Meter | 5 | Gas Valve/Bypass | 15 | Other (see over) | 5 | Other | 5 | Other | 5 | No Improper Cond. | 5 |
| | Neutral | 6 | Other (see over) | 16 | Was Condition Corrected Yes 1 No 2 | | | | | | | |
| I N T E R N A L | Pot. Wire/Clip | 7 | Dial Hand | 17 | Was Rotation Test Completed | 1 2 | | If yes to any of these questions. | | | | |
| | Adjust. Screw | 8 | U.O. Reconnect | 18 | Was Amprobe Test Taken | 1 2 | | Information must be noted on back. | | | | |
| | Gears Tampered | 9 | Jewel | 19 | Was Load Calculated | 1 | | | | | | |
| | Disk Tampered | 10 | Other | 20 | | | | | | | | |

| SCALE FOR TYPE OF LOCK | | | | SCALE FOR TYPE OF SEAL | | | |
|---|---|---|---|---|---|---|---|
| Service Found On [ ] Off [ ] | Condition Entry | Condition Entry | | Condition Entry | Condition Entry | | |
| Service Left On [ ] Off [ ] | No Lock 0 | Lollipop 5 | | No Seal 0 | Plastic Padlock 4 | | |
| TOS Evidence Obtained Yes [ ] No [ ] | Barrel (Morse) 1 | Swivel 6 | | B.T. 1 | Paper 5 | | |
| TOS UNL Yes [ ] No [ ] | Steel Ring 2 | Steel Plate 7 | | Lead 2 | Other 6 | | |
| | Mattison 3 | Glass/Plastic Plate 8 | | Metal Padlock 3 | | | |
| | Power Safe 4 | Other 9 | | | | | |

| | SCALE FOR TYPE OF BUSINESS OR RESIDENCE | | | | | |
|---|---|---|---|---|---|---|
| DATE RECEIVED | 2629 Appliance Repair | 7216 Dry Cleaner | 7832 Movie Theatres | | 0025 Master Meters | |
| | 7532 Auto Body Shop | 7261 Funeral Parlor | 5511 New and/or Used Car | | 0026 Public Light & Power | |
| | 5461 Bakery | 5541 Gas Station | Dealership | | 0027 Other | |
| | 5813 Bar & Grill | 5451 Ice Cream Store | 7521 Parking Lots | | | |
| | 7231 Beauty Salon | 5944 Jewelry Store | 2759 Print Shops | | RESIDENTIAL | |
| | 7933 Bowling Alley | 7215 Laundromat | 7622 Radio & T.V. Repair | | 0030 Private Dwelling | |
| | 5441 Candy Store | 5921 Liquor Store | 7623 Refrigerator & A.C. Repair | | 0031 Two-Family House | |
| SOURCE | 7542 Car Wash | 5421 Meat/Fish Mkts | 5812 Restaurants/Caterers/Diners | | 0032 Multi Dwelling (to 6 families) | |
| | 5311 Department Store | 7011 Motel/Hotel | 5411 Supermarkets/Grocery | | 0033 Multi Dwelling (6 families & over) | |

GA 4117R 1/09


conEdison

# PROPERTY PROTECTION
# FIELD INSPECTION REPORT

DATE 12/30/11 - KWH RDG [ ] DMD FD [ ] DMD LFT [ ] GAS RDG 031,018 TIME ARR 11:15 TIME LEFT 2:00

DATE 10/3/11 - LA RDG 025468

DAYS 88 DIFFERENCE 1550 MULTIPLY BY 10 - KWH USED 15,500 + DAYS = PER DAY USE 176.13 X 30 = 5284

Got job over radio - Met B.E. & J.G. on site - A prospective Buyer of this
Business notified us that this cust. is undoubtedly tampering
with Gas mtr. Part supplied is a commercial laundromat located
in an extremely large warehouse. When we initially approached MGR
for access to Gas mtr, he stated that employee w/key to room will

Inspector Signature J. Eiby/M.Gerault/V. Dominguez   Supervisory Review _____

## Customer Interview Statement

| | Current Load Study |
|---|---|

Name of person interviewed: _____ Position/Title: _____

Name of person shown condition: _____ Position/Title: _____

Business Name: _____ Corporate Name: _____ Date of Occupancy: _____

Officers/Principals _____

| Current Load Study | | | |
|---|---|---|---|
| Number/Size of | Number | Size | |
| Lighting | | | |
| Freezers | | | |
| Motors | | | |
| Air Conditioners | | | |
| Refrigerators | | | |
| Televisions | | | |
| Other | | | |

Landlord Name: _____ Address: _____ Telephone: _____

return in 1 HR - Just out of curiosity we walked
over to MRM & observed owner of Business MR. Markus

Lease info: Effective Date _____ Lessee: hastily exiting. OUR subsequent

Liquor License #: _____ Issue Date: inspection Expiration Date: _____

Business License #: _____ Issue Date: revealed the following ⟶

Health Certificate #: _____ Issue Date: 888-7777

Business days/hours of operation: 7:00 to 7:00 Any changes to days/hours of operation during occupancy?
7:00 to 11:00 7 DAYS a wk - We determined thru Gas

If yes, explain: ⊗ via phone - Usage that Gas is being Used 16 HRS per DAY.

**NOTE ROTATION TEST, AMPROBE READING, AND LOAD AT CALL**

Rotation Test: A) Seconds per revolution with theft of service [ | | | ]
B) Seconds per revolution after correction [ | | | ]    Amprobe Reading: Left Phase [ | | | ]
(A – B)/A = Percent of unmetered service [ | | | ]        Center [ | | | ]
Load at                                                   Right Phase [ | | | ]
Call Calculation: Non CT Meters _____ CT Meters _____   Total Amps _____ x .120 = _____ KW
Mtr KH x 3.6 + seconds per rev = KW Load at call CT Radio Quotient x Mtr KH x 3.6 + seconds per rev = KW Load at call
_____ x 3.6 + _____ = _____ _____ x _____ x 3.6 + _____ = _____

## ACCOUNT STATUS

| Electric | Gas | Notes |
|---|---|---|
| ☐ Active ☐ Inactive | ☐ Active ☐ Inactive | |
| ☐ Pend. T/O ☐ T.O.N.P. _____ | ☐ Pend. T/O ☐ T.O.N.P. _____ | |
| Lar: KW ___ DMD ___ Date ___ | Lar: ___ Date ___ | |
| Lar: KW ___ DMD ___ Date ___ | Lar: ___ Date ___ | |
| Lar: KW ___ DMD ___ Date ___ | Lar: ___ Date ___ | |
| Screened by ___ Date ___ By ___ Date ___ By ___ Date ___ | | |

conEdison

CASE # _____

Revenue Protection
# Field Investigation Report

Received From: _____   Date: _____
                                                                          am
Deepartment: _____   Time: _____  pm

Address: _____

Name: _____

Meter #: _____   **GAS** ☐   Readings: _____
                               **ELEC** ☐

Location: _____   Part Supplied: _____

The 4 screws Bolting register head to MTR can Be removed By hand - These screws 100% of the time are tightened to torque & can Be removed with socket/ratchet only - After we took register head off we verified (and photographed) extensive scratchin on register Gears.

It was then that MR. Markus informed us that he switches dual fuel Boilers over to oil when price is advantageous - J.G. asked for oil Company's name. MR Markus thinks its "EMBAssy" But is not Sure - He states further he used oil 1 mo. ago But cannot provide any receipts for oil deliveries - Oil storage tank empty at time of call ⊛ We re-installed register head onto MTR and took a test dial Rotation: 1 complete revolution in 6 mins & 25 secs - We then installed 4

**SURV**

⊛ oil pipe emerging from oil Storage
Received by: _____
Room is dead - ended & capped -
( took photo.)

GA-4779 Field Investigation Report R4/02

**conEdison**

CASE # _____

Revenue Protection
# Field Investigation Report

Received From: _____     Date: _____

Deepartment: _____     Time: _____ am / pm

Address: _____

Name: _____

Meter #: _____   GAS ☐ ELEC ☐   Readings: _____

Location: _____   Part Supplied: _____

Silver Security caps over the 4 screws/Bolts -
We will Be returning Tuesday JAN 3 2012
to verify mtr RDG & continue our investigation.
Made suspect -

**SURV**

GA-4779 Field Investigation Report R4/02

Received by: _____

**EXHIBIT 2**

# PROPERTY PROTECTION
## FIELD INSPECTION REPORT

**conEdison**

CASE NUMBER

ADDRESS: *220 Coster St.*

FACT- *BS3021103700028*
PART SUPPLIED · ACCOUNT NUMBER

CUSTOMER NAME: *B&M Linen Corp-*  E/G *G*  SC  METER PREFIX *BS9499/10*  METER NUMBER  CONSTANT  SIZE-TYPE *60,000*

MUNI *L*

METER LOCATION: *1fl-*  ACCESS INSTRUCTIONS  TOWN *Bronx-*

COMMENTS  INSPECTION DATE *1/3/12*  INSPECTOR EMP. # *70159-*  INSPECTOR EMP. # *03581-*

## EQUIPMENT NOT CHECKED FOR THE FOLLOWING REASON

| NO ACCESS | REFUSED | BLDG. VACANT | PEND. DEMO | CAN'T LOCATE | DNR | OTHER-SEE REVERSE |
|---|---|---|---|---|---|---|
| N | R | V | P | L | D | O |

## EQUIPMENT FOUND ON PREMISES

| NO METER | GAS METER | SOCKET-DMD | SOCKET NON-DMD | BOT FED DMD | BOT FED NON-DMD | CT METER |
|---|---|---|---|---|---|---|
| NON | GAS | SDM | SND | BPD | BFN | CTM |

|  | LOCK-SEALS | METER COVER | TERM. CHAMBER | T.C.O. | CT.-CABINET | SERV. SWITCH | SOCKET EQUIP. | 7 JAW EQUIP. | GAS-CAP | VALVE | PLUG |
|---|---|---|---|---|---|---|---|---|---|---|---|
| FOUND |  |  |  |  |  |  |  |  |  |  |  |
| LEFT |  |  |  |  |  |  |  |  |  |  |  |

### TYPE OF LOCK
FOUND: BROKEN **B**  MISSING **M**  INTACT **I**
ENTER BOTH TYPE FOUND AND TYPE LEFT
FOUND *0*  LEFT *0*  (SEE BELOW)

### TYPE OF SEAL
FOUND: BROKEN **B**  MISSING **M**  INTACT **I**
ENTER BOTH TYPE FOUND AND TYPE LEFT
FOUND *0*  LEFT *0*  (SEE BELOW)

### TYPE OF BUSINESS-RESIDENCE (SEE BELOW)
COMMERCIAL *7215*
RESIDENTIAL *-*

## RESULT OF INSPECTION

| THEFT OF SERVICE | SUSPECT THEFT | DIVERSION OF SERVICE | IRR. METER CONDITION | NO THEFT |
|---|---|---|---|---|
| TOS | SUS | DOS  K  U | IMC | NOS |

## NOTE SPECIFIC CONDITION OBSERVED

| CONFIRMED THEFT (T) | | SUSPECTED | | DIVERSION OF SVC (D) | | IRREGULAR METER CONDITION (I) | | NO THEFT (N) | |
|---|---|---|---|---|---|---|---|---|---|
| Reversed Leads | 1 | Forged Seal | 1 | Adequate Wire | 1 | Damaged Meter | 1 | New Meter Set | 1 |
| Jumper | 2 | Tampered Seal | 2 | Cust-to-Cust Theft | 2 | Exchanged Meter | 2 | Company Bypass | 2 |
| Potential Wire | 3 | Scratches/Burns | 3 | Temp. Co. Line | 3 | Dial Eccentric | 3 | Cont. of Service | 3 |
| Potential Clip | 4 | Locking Device | 4 | Damaged Equip. | 4 | Meter Defective | 4 | Customer Wiring | 4 |
| Inverted Meter | 5 | Other (see over) | 5 | Other | 5 | Other | 5 | No Improper Cond. | 5 |
| Neutral | 6 | | | | | | | | |
| Pot. Wire/Clip | 7 | Jaws Spread | 11 | | | | | | |
| Adjust. Screw | | Shunt Device | 12 | Was Condition Corrected   Yes   No | | | | | |
| Gears Tampered | | Heel/Toe Switch | 13 | Was Rotation Test Completed | | If yes to any of these questions. | | | |
| Dial Tampered | | Meter Switch | 14 | Was Amprobe Test Taken | | Information must be noted on back. | | | |
| | | Gas Valve/Bypass | 15 | Was Load Calculated | | | | | |
| | | Other (see over) | 16 | | | | | | |
| | | Dial Hand | 17 | | | | | | |
| | | U.O. Reconnect | 18 | | | | | | |
| | | Jewel | 19 | | | | | | |
| | | Other | 20 | | | | | | |

Service Found   On   Off
Service Left   On   Off
TOS Evidence Obtained   Yes   No
TOS   UNL   Yes   No

### SCALE FOR TYPE OF LOCK
| Condition | Entry | Condition | Entry |
|---|---|---|---|
| No Lock | 0 | Lollipop | 5 |
| Barrel (Morse) | 1 | Swivel | 6 |
| Steel Ring | 2 | Steel Plate | 7 |
| Mattison | 3 | Glass/Plastic Plate | 8 |
| Power Safe | 4 | Other | 9 |

### SCALE FOR TYPE OF SEAL
| Condition | Entry | Condition | Entry |
|---|---|---|---|
| No Seal | 0 | Plastic Padlock | 4 |
| B.T. | 1 | Paper | 5 |
| Lead | 2 | Other | 6 |
| Metal Padlock | 3 | | |

DATE RECEIVED

SOURCE

### SCALE FOR TYPE OF BUSINESS OR RESIDENCE
| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 2629 | Appliance Repair | 7216 | Dry Cleaner | 7832 | Movie Theatres | 0025 | Master Meters |
| 7532 | Auto Body Shop | 7261 | Funeral Parlor | 5511 | New and/or Used Car | 0026 | Public Light & Power |
| 5461 | Bakery | 5541 | Gas Station | | Dealership | 0027 | Other |
| 5813 | Bar & Grill | 5451 | Ice Cream Store | 7521 | Parking Lots | | |
| 7231 | Beauty Salon | 5944 | Jewelry Store | 2759 | Print Shops | | RESIDENTIAL |
| 7933 | Bowling Alley | 7215 | Laundromat | 7622 | Radio & T.V. Repair | 0030 | Private Dwelling |
| 5441 | Candy Store | 5921 | Liquor Store | 7623 | Refrigerator & A.C. Repair | 0031 | Two-Family House |
| 7542 | Car Wash | 5421 | Meat/Fish Mkts | 5812 | Restaurants/Caterers/Diners | 0032 | Multi Dwelling (to 6 families) |
| 5311 | Department Store | 7011 | Motel/Hotel | 5411 | Supermarkets/Grocery | 0033 | Multi Dwelling (6 families & over) |

GA 4117R 1/09


conEdison

# PROPERTY PROTECTION
# FIELD INSPECTION REPORT

DATE 1/3/12 KWH RDG | | DMD FD | | DMD LFT | | GAS RDG 31894 TIME ARR 9°° TIME LEFT 45

DATE 12/30/11 LA RDG 31048

DAYS 4 DIFFERENCE 846 MULTIPLY BY 10 — KWH USED 8460 ÷ DAYS = PER DAY USE 2115 x30 = 63,450

We returned to site to continue investigation. We verified left rear silver security cap intact, yet loosened. There are visible scratch marks around perimeter of cap — Someone attempted to once Again remove register seal — We then performed a 30 DAY Projection. Projection comes out to 63,450 cuft of Gas per mo! Bob Eckstein

Inspector Signature J. Eito /K. Grove — Supervisory Review

## Customer Interview Statement

**Current Load Study**

| | Number/Size of | Number | Size |
|---|---|---|---|
| Lighting | | ___ | ___ |
| Freezers | | ___ | ___ |
| Motors | | ___ | ___ |
| Air Conditioners | | ___ | ___ |
| Refrigerators | | ___ | ___ |
| Televisions | | ___ | ___ |
| Other | | ___ | ___ |

Name of person interviewed: _____ Position/Title: _____

Name of person shown condition: _____ Position/Title: _____

Business Name: _____ Corporate Name: _____ Date of Occupancy: _____

Officers/Principals: _____

Landlord Name: phoned T. Vespers to Begin Billing process. We then Address: _____ Telephone: _____ timed & verified RDGS over a 2 HR time frame. — In each of the

Lease Info: Effective Date: _____ Leasee: 2 HRS, 150 cuft of GA was used.

Liquor License #: _____ Issue Date: 9³⁵ to 10³⁵ 3/9/12 Expiration Date: 10³⁵ to 11³⁵
— 31857     31927
31877    — 31912
15x10=150    15x10=15

Business License #: _____ Issue Date: _____

Health Certificate #: _____ Issue Date: _____

Business days/hours of operation: _____ Any changes to days/hours of operation during occupancy? ⟶

If yes, explain: _____

## NOTE ROTATION TEST, AMPROBE READING, AND LOAD AT CALL

Rotation Test: A) Seconds per revolution with theft of service | | | | |  Amprobe Reading: Left Phase | | |
B) Seconds per revolution after correction | | | |   Center | | |
(A – B)/A = Percent of unmetered service | | | |   Right Phase | | |

Load at _____   Total Amps _____ x .120 = _____ KW

Call Calculation: Non CT Meters_____ CT Meters _____
Mtr KH x 3.6 ÷ seconds per rev = KW Load at call  CT Radio Quotient x Mtr KH x 3.6 ÷ seconds per rev = KW Load at call
_____ x 3.6 ÷ _____ = _____   x _____ x 3.6 ÷ _____ = _____

## ACCOUNT STATUS

| | | Notes |
|---|---|---|
| Electric ☐ Active ☐ Inactive | Gas ☐ Active ☐ Inactive | |
| ☐ Pend. T/O ☐ T.O.N.P. _____ | ☐ Pend. T/O ☐ T.O.N.P. _____ | |
| Lar: KW _____ DMD _____ Date _____ | Lar: _____ Date _____ | |
| Lar: KW _____ DMD _____ Date _____ | Lar: _____ Date _____ | |
| Lar: KW _____ DMD _____ Date _____ | Lar: _____ Date _____ | |
| Screened by _____ Date _____ By _____ Date _____ By _____ Date _____ | | |

conEdison

CASE # _____

Revenue Protection
# Field Investigation Report

Date: __1/3/12-__

Received From: _____                    am
Deepartment: _____    Time: _____ pm

Address: 220 Coster St-

Name: Br M Linen Corp-

Meter #: 3594991          GAS ☑    Readings: _____
                          ELEC ☐

Location: Tbl-          Part Supplied: _____

GDS SMF "Russell" arrived- He Hooked up Laptop
to M-corrector- He determined that for a 2week
period in Both Nov. & Dec. 2011, there was ZERO
Gas consumption! This info goes Back 41 DAYS
We cannot verify for How long this pattern
existed- T. Vespers notified B. ECKstein that
Bill will not Be ready today- We will return tomorrow
to present Bill-
Aspen B.E. we took a RDG at 1:35 P.M:
    RDG: 031955

**SURV**

Received by: _____

GA-4779 Field Investigation Report R4/02

**EXHIBIT 3**

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NASSAU

------------------------------------------------------------X

B&M LINEN CORP. and 220 COSTER LLC,          :

             Plaintiffs,          :

    -against-          :

220 LAUNDRY LLC, ELIOT SPITZER,          :          Index No. 11-013989
MICHAEL STEINBERG and ADAM J. TELLER,          :

             Defendants,          :

    -against-          :

MIRON MARKUS and BORIS MARKUS,          :

         Additional Counterclaim          :          **JUDICIAL SUBPOENA**
         Defendants          :          **DUCES TECUM**

------------------------------------------------------------X

220 LAUNDRY LLC and ELIOT SPITZER,          :

        Third-party Plaintiffs,          :

    -against-          :

MIRON MARKUS and BORIS MARKUS,          :

        Third-party Defendants.          :

------------------------------------------------------------X

RECEIVED
JAN 2 4 2012
4:30 pm
LAW DEPARTMENT

DC o3 2 2o / 9

## The People of the State of New York

TO:   CONSOLIDATED EDISON COMPANY, a Con Edison, Inc. company
       4 Irving Street
       New York, New York
             ATTN: Mr. Jack Gaffney
                   Section Manager
                   Revenue Protection
                   718-246-7574

**WE COMMAND YOU** that all business and excuses
being laid aside, you deliver by 5:30 p.m. on January
25, 2012, to Stephen R. Sugrue, Esq. of Coti & Sugrue,

**attorneys for the above-named Defendants/Third-party Plaintiffs, at such place as the originals of such documents are maintained, complete and accurate copies of the following:**

1.   Every report of every investigation, inspection and testing or sampling procedure conducted by Con Edison at any time after December 1, 2011, relating to the commercial laundry facility operated by B&M Linen Corp. at 220 Coster Street, Bronx, New York ("the Facility"); and

2.   Every analysis by Con Edison of natural gas utilization at the Facility based on any investigation, inspection or testing or sampling procedure conducted by Con Edison at any time after December 1, 2011; and

3.   A copy of every communication by Con Edison to B&M Linen Corp., or any representative thereof, after December 15, 2011, relating to natural gas utilization or metering.

**EXCLUDED** FROM THE SCOPE OF THIS SUBPOENA ARE ALL DOCUMENTS PRODUCED BY CON EDISON ON JANUARY 5, 2012 IN RESPONSE TO A SUBPOENA DATED JANUARY 5, 2012

**now in your custody, and all other deeds, evidences and writings concerning the above.**

**Failure to comply with this subpoena is punishable as a contempt of Court and shall make you liable to the person on whose behalf this subpoena was issued for a**

**penalty not to exceed fifty dollars and all damages sustained by reason of your failure to comply.**

Dated:   January 23, 2012

Stephen R. Sugrue
COTI & SUGRUE
59 Grove Street Suite 1F
New Canaan, CT 06840
203-966-5817
Attorneys for Defendants/Third-party Plaintiffs

**From:** Schuchman, Nancy
**Sent:** Tuesday, January 24, 2012 11:34 AM
**To:** Gaffney, John
**Cc:** Vesper, Antoinette M.; Schuchman, Nancy
**Subject:** FW: B& M Linen


Jack,

Above is the billing statement which was prepared for the bill.  Below is an email with the readings from
RPU.  The account also has the readings from RPU 12/30 the reading was 031048 and 1/3/12 RPU
reading was 031912.




**From:** Schuchman, Nancy
**Sent:** Monday, January 09, 2012 1:38 PM
**To:** Davis, James
**Subject:** FW: 220 Coster St




**From:** Eckstein, Robert C
**Sent:** Monday, January 09, 2012 1:21 PM
**To:** Vesper, Antoinette M.; Schuchman, Nancy; Wolff, Joanna M.; Gaffney, John; Eckstein, Robert C
**Subject:** 220 Coster St



**The reading today at 1300 hrs was 033187.  This pretty much confirms the
billing and the theft of service determination. The last reading was on Jan 3rd
and that was 31912.**

**The difference is 1275 X 10  = 12750 / 6 days = 2125 ADU X 30 = 63,750 CCF
a month.  That is exactly what we estimated.**

Robert C Eckstein
Operating Supervisor
Revenue Protection
917-578-9858
718-904-4974



**conEdison**

# Customer Operations

**Data Sheet of Account :**

| | |
|---|---|
| Name: | B & M LINEN CORP |
| Address: | 220 COSTER  STRE FACT |
| Account Number: | 39-3021-1037-0002 |
| SC: | 920 |
| Service: | GAS |
| Tax: | F |
| Westch Muni: | 0 |
| % Residti Use: | 0 |
| Gas Therm Zone: | 3 |

| | |
|---|---|
| ATRA: | |
| Beginning AR Balance: | 0.00 |
| From/To Date: | 12/30/2005 - 12/30/2011 |
| Method of Calculation: | Subsequent Consumption |
| | Cons Date 01/03/2012  Cons 00021600  Dmd 00000.00 |

| Reading Date | T X | E Days | O SC | R SC | Original Consumption | Revised Consumption | Original Demand | Revised Demand | Original Bill | Revised Bill | Difference | LPC | Total Bill |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 12/30/11 | F | 25 | 920 | 0 | 5340 | 54000 | 0.00 | 0.00 | 2475.10 | 21734.61 | 19259.51 | 0.00 | 5219730.71 |
| 12/05/11 | F | 34 | 920 | 0 | 7050 | 73440 | 0.00 | 0.00 | 3270.81 | 31190.78 | 27919.97 | 76854.25 | 5200471.20 |
| 11/01/11 | F | 29 | 920 | 0 | 1590 | 62640 | 0.00 | 0.00 | 913.83 | 27794.92 | 26881.09 | 75305.87 | 5095696.98 |
| 10/03/11 | F | 32 | 920 | 0 | 6320 | 69120 | 0.00 | 0.00 | 3085.05 | 30946.02 | 27860.97 | 73795.71 | 4993510.02 |
| 09/01/11 | F | 29 | 920 | 0 | 5010 | 62640 | 0.00 | 0.00 | 2476.31 | 27822.53 | 25346.22 | 72293.40 | 4891853.34 |
| 08/03/11 | F | 29 | 920 | 0 | 8390 | 62640 | 0.00 | 0.00 | 3901.34 | 28015.99 | 24114.65 | 70850.45 | 4794213.72 |
| 07/05/11 | F | 32 | 920 | 0 | 7520 | 69120 | 0.00 | 0.00 | 3656.62 | 30233.74 | 26577.12 | 69447.02 | 4699248.62 |
| 06/03/11 | F | 30 | 920 | 0 | 5500 | 64800 | 0.00 | 0.00 | 2773.12 | 28230.30 | 25457.18 | 68027.95 | 4603224.47 |
| 05/04/11 | F | 29 | 920 | 0 | 4700 | 62640 | 0.00 | 0.00 | 2425.01 | 27370.58 | 24945.57 | 66646.39 | 4509739.35 |
| 04/05/11 | F | 61 | 920 | 0 | 8010 | 131760 | 0.00 | 0.00 | 4248.40 | 56833.76 | 52585.36 | 65292.82 | 4418147.38 |
| 02/03/11 | F | 30 | 920 | 0 | 2820 | 64800 | 0.00 | 0.00 | 1591.26 | 27728.64 | 26137.38 | 63550.78 | 4300269.20 |
| 01/04/11 | F | 32 | 920 | 0 | 6950 | 69120 | 0.00 | 0.00 | 3469.70 | 30545.75 | 27076.05 | 62225.34 | 4210581.05 |
| 12/03/10 | F | 32 | 920 | 0 | 6640 | 69120 | 0.00 | 0.00 | 3347.01 | 30675.75 | 27328.74 | 60905.61 | 4121279.86 |
| 11/01/10 | F | 31 | 920 | 0 | 1700 | 66960 | 0.00 | 0.00 | 1181.38 | 36701.53 | 35520.15 | 59601.65 | 4033045.31 |
| 10/01/10 | F | 30 | 920 | 0 | 13770 | 64800 | 0.00 | 0.00 | 6879.94 | 30169.35 | 23289.41 | 58195.91 | 3937923.50 |
| 09/01/10 | F | 29 | 920 | 0 | 10870 | 62640 | 0.00 | 0.00 | 6659.24 | 29235.83 | 22576.59 | 56991.70 | 3856438.18 |
| 08/03/10 | F | 32 | 920 | 0 | 5130 | 69120 | 0.00 | 0.00 | 2937.14 | 32398.77 | 29461.63 | 55815.51 | 3776869.89 |
| 07/02/10 | F | 29 | 920 | 0 | 6960 | 62640 | 0.00 | 0.00 | 3721.38 | 28857.42 | 25136.04 | 54555.55 | 3891592.45 |
| 06/03/10 | F | 30 | 920 | 0 | 7850 | 64800 | 0.00 | 0.00 | 4188.53 | 29640.56 | 25452.03 | 53377.85 | 3611900.86 |
| 05/04/10 | F | 28 | 920 | 0 | 6790 | 60480 | 0.00 | 0.00 | 3541.07 | 27191.99 | 23650.92 | 52212.87 | -3533070.88 |
| 04/06/10 | F | 29 | 920 | 0 | 8630 | 62640 | 0.00 | 0.00 | 4212.18 | 26804.52 | 22592.34 | 51091.73 | 3457207.19 |
| 03/08/10 | F | 32 | 920 | 0 | 9070 | 69120 | 0.00 | 0.00 | 4389.90 | 29206.17 | 24816.27 | 50002.80 | 3383523.12 |
| 02/04/10 | F | 30 | 920 | 0 | 5400 | 64800 | 0.00 | 0.00 | 2724.58 | 27209.84 | 24485.26 | 48897.10 | 3308704.05 |
| 01/05/10 | F | 32 | 920 | 0 | 6950 | 69120 | 0.00 | 0.00 | 3435.35 | 27659.06 | 24223.71 | 47812.64 | 3235321.68 |
| 12/04/09 | F | 32 | 920 | 0 | 6270 | 69120 | 0.00 | 0.00 | 4933.86 | 27288.98 | 22353.12 | 46748.06 | 3163285.34 |
| 11/02/09 | F | 31 | 920 | 0 | 9350 | 66960 | 0.00 | 0.00 | 3820.84 | 23258.32 | 19437.48 | 45726.86 | 3094184.16 |
| 10/02/09 | F | 30 | 920 | 0 | 5430 | 64800 | 0.00 | 0.00 | 3043.65 | 22792.10 | 19748.45 | 44763.84 | 3029019.82 |
| 09/02/09 | F | 29 | 920 | 0 | 18920 | 62640 | 0.00 | 0.00 | 7318.43 | 22063.00 | 14744.57 | 43810.46 | 2964507.53 |
| 08/04/09 | F | 29 | 920 | 0 | 4650 | 62640 | 0.00 | 0.00 | 1907.08 | 21349.37 | 19442.29 | 42945.11 | 2905952.50 |
| 07/06/09 | F | 32 | 920 | 0 | 7690 | 69120 | 0.00 | 0.00 | 2689.88 | 21080.19 | 18390.31 | 42023.13 | 2843565.10 |
| 06/04/09 | F | 30 | 920 | 0 | 11260 | 64800 | 0.00 | 0.00 | 3355.01 | 17579.27 | 14224.26 | 41130.32 | 2783151.86 |
| 05/05/09 | F | 29 | 920 | 0 | 7040 | 62640 | 0.00 | 0.00 | 2337.01 | 17670.89 | 15333.88 | 40312.27 | 2727797.08 |
| 04/06/09 | F | 31 | 920 | 0 | 8000 | 66960 | 0.00 | 0.00 | 2519.28 | 18267.32 | 15748.04 | 39489.92 | 2672150.93 |
| 03/06/09 | F | 30 | 920 | 0 | 7970 | 64800 | 0.00 | 0.00 | 2447.38 | 17328.95 | 14881.57 | 38673.59 | 2616912.97 |
| 02/04/09 | F | 26 | 920 | 0 | 3820 | 56160 | 0.00 | 0.00 | 1350.08 | 15552.26 | 14202.18 | 37882.14 | 2563357.81 |
| 01/09/09 | F | 35 | 920 | 0 | 11540 | 75600 | 0.00 | 0.00 | 3534.25 | 20806.53 | 17272.28 | 37112.42 | 2511273.50 |
| 12/05/08 | F | 20 | 920 | 0 | 18200 | 43200 | 0.00 | 0.00 | 5579.22 | 11958.72 | 6379.50 | 36308.70 | 2456888.80 |
| 11/15/08 | F | 22 | 920 | 0 | 18000 | 47520 | 0.00 | 0.00 | 5595.64 | 13290.30 | 7694.66 | 35677.84 | 2414200.60 |
| 10/24/08 | F | 22 | 920 | 0 | 5930 | 47520 | 0.00 | 0.00 | 1902.89 | 13395.96 | 11493.07 | 35036.87 | 2370828.10 |
| 10/02/08 | F | 22 | 920 | 0 | 5930 | 47520 | 0.00 | 0.00 | 1861.39 | 12458.80 | 10597.41 | 34349.23 | 2324298.16 |

| | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 09/10/08 | F | 8 | 920 | 0 | 2250 | 17280 | 0.00 | 0.00 | 696.87 | 4500.12 | 3803.25 | 33685.00 | 2279351.52 |
| 09/02/08 | F | 32 | 920 | 0 | 9010 | 69120 | 0.00 | 0.00 | 2858.00 | 18519.40 | 15661.40 | 33130.98 | 2241863.27 |
| 08/01/08 | F | 30 | 920 | 0 | 6200 | 64800 | 0.00 | 0.00 | 2009.10 | 16907.12 | 14898.02 | 32409.91 | 2193070.88 |
| 07/02/08 | F | 29 | 920 | 0 | 8100 | 62640 | 0.00 | 0.00 | 2518.38 | 16368.77 | 13850.39 | 31710.78 | 2145762.95 |
| 06/03/08 | F | 32 | 920 | 0 | 9500 | 69120 | 0.00 | 0.00 | 2803.36 | 17161.93 | 14358.57 | 31037.46 | 2100201.78 |
| 05/02/08 | F | 29 | 920 | 0 | 12830 | 62640 | 0.00 | 0.00 | 3442.92 | 14594.19 | 11151.27 | 30366.59 | 2054805.74 |
| 04/03/08 | F | 29 | 920 | 0 | 9700 | 62640 | 0.00 | 0.00 | 2625.63 | 14275.83 | 11650.20 | 29753.02 | 2013287.89 |
| 03/05/08 | F | 30 | 920 | 0 | 6440 | 64800 | 0.00 | 0.00 | 1793.56 | 14124.97 | 12331.41 | 29141.15 | 1971884.66 |
| 02/04/08 | F | 32 | 920 | 0 | 6440 | 69120 | 0.00 | 0.00 | 1793.17 | 14925.50 | 13132.33 | 28528.26 | 1930412.10 |
| 01/03/08 | F | 30 | 920 | 0 | 8110 | 64800 | 0.00 | 0.00 | 2149.40 | 14005.02 | 11855.62 | 27912.58 | 1888751.51 |
| 12/04/07 | F | 34 | 920 | 0 | 6400 | 73440 | 0.00 | 0.00 | 1845.32 | 16312.96 | 14467.64 | 27324.88 | 1848983.31 |
| 10/31/07 | F | 29 | 920 | 0 | 6120 | 62640 | 0.00 | 0.00 | 1985.69 | 16702.96 | 14717.27 | 26707.25 | 1807190.79 |
| 10/02/07 | F | 61 | 920 | 0 | 1719 | 131760 | 0.00 | 0.00 | 703.28 | 34677.88 | 33974.60 | 26095.07 | 1765766.27 |
| 08/02/07 | F | 30 | 920 | 0 | 326 | 64800 | 0.00 | 0.00 | 146.98 | 15694.36 | 15547.38 | 25207.34 | 1705696.60 |
| 07/03/07 | F | 29 | 920 | 0 | 620 | 62640 | 0.00 | 0.00 | 261.45 | 15838.25 | 15576.80 | 24605.05 | 1664941.88 |
| 06/04/07 | F | 32 | 920 | 0 | 950 | 69120 | 0.00 | 0.00 | 362.68 | 16729.24 | 16366.58 | 24011.23 | 1624780.03 |
| 05/03/07 | F | 33 | 920 | 0 | 1924 | 71280 | 0.00 | 0.00 | 693.06 | 17647.69 | 16954.63 | 23414.52 | 1584382.22 |
| 03/31/07 | F | 25 | 2 | 0 | 332 | 54000 | 0.00 | 0.00 | 588.49 | 85237.69 | 84649.20 | 22817.93 | 1544013.07 |
| 03/06/07 | F | 32 | 2 | 0 | 644 | 69120 | 0.00 | 0.00 | 1147.07 | 111811.01 | 110663.94 | 21229.74 | 1436545.94 |
| 02/02/07 | F | 30 | 2 | 0 | 604 | 84800 | 0.00 | 0.00 | 1000.52 | 96760.05 | 95759.53 | 19280.58 | 1304652.26 |
| 01/03/07 | F | 30 | 2 | 0 | 811 | 84800 | 0.00 | 0.00 | 1274.93 | 92387.25 | 91112.32 | 17580.48 | 1189612.18 |
| 12/04/06 | F | 34 | 2 | 0 | 640 | 73440 | 0.00 | 0.00 | 1006.27 | 103315.03 | 102308.76 | 15974.18 | 1080919.36 |
| 10/31/06 | F | 29 | 2 | 0 | 612 | 62640 | 0.00 | 0.00 | 800.60 | 71889.95 | 71089.35 | 14226.15 | 962636.42 |
| 10/02/06 | F | 32 | 2 | 0 | 902 | 69120 | 0.00 | 0.00 | 1255.58 | 86126.67 | 84871.09 | 12965.33 | 877320.92 |
| 08/31/06 | F | 29 | 2 | 0 | 373 | 62640 | 0.00 | 0.00 | 539.09 | 78145.54 | 77606.45 | 11519.48 | 779484.50 |
| 08/02/06 | F | 30 | 2 | 0 | 326 | 64800 | 0.00 | 0.00 | 474.87 | 80654.03 | 80179.16 | 10202.34 | 690358.57 |
| 07/03/06 | F | 31 | 2 | 0 | 780 | 66960 | 0.00 | 0.00 | 1214.72 | 94118.52 | 92903.80 | 8866.66 | 599977.07 |
| 06/02/06 | F | 30 | 2 | 0 | 641 | 64800 | 0.00 | 0.00 | 1019.91 | 92734.54 | 91714.63 | 7362.86 | 498206.61 |
| 05/03/06 | F | 28 | 2 | 0 | 970 | 60480 | 0.00 | 0.00 | 1550.63 | 88339.91 | 86789.28 | 5898.46 | 399129.32 |
| 04/05/06 | F | 29 | 2 | 0 | 386 | 62640 | 0.00 | 0.00 | 595.36 | 84443.95 | 83848.59 | 4528.69 | 306441.58 |
| 03/07/06 | F | 67 | 2 | 0 | 1823 | 144720 | 0.00 | 0.00 | 3012.34 | 217854.01 | 214841.67 | 3222.63 | 218064.30 |
| 12/30/05 | | | | | | | | | | | | | |
| | | | | | | | | | | | | | |
| TOTALS | | 2191 | | | 410103 | 4678560 | | | 177394.25 | 2661407.10 | 2503272.36 | 2716458.35 | 5219730.71 |

220 Costco SR

Vas Edition, whole Container, minor matters. See Pictures

1-14-12

34 years

12-30-2005 — 12-30-2011

value of 2,503,272 52

over $ 2,712,445 52

**EXHIBIT 4**

Site Name:
Site Id:
Site Location:

220 Costa st
0-416891
220 Costa st

| Date | Time | Incremental Cor<br>CFx1000 | Vac<br>CFx1000 | Incremental Use<br> | Interval Avg Pressu<br>PSIG | Interval Avg Temp<br>F | Log Trigger |
|---|---|---|---|---|---|---|---|
| 11/21/2011 | 09:00:00 | 0 | 0 | | 3.43 | 58.80 | Time |
| 11/21/2011 | 10:00:00 | 0 | 0 | | 3.33 | 58.97 | Time |
| 11/21/2011 | 11:00:00 | 0 | 0 | | 3.32 | 59.13 | Time |
| 11/21/2011 | 12:00:00 | 0 | 0 | | 3.40 | 59.63 | Time |
| 11/21/2011 | 13:00:00 | 0 | 0 | | 3.04 | 59.30 | Time |
| 11/21/2011 | 14:00:00 | 0 | 0 | | 3.18 | 59.13 | Time |
| 11/21/2011 | 15:00:00 | 0 | 0 | | 3.32 | 59.30 | Time |
| 11/21/2011 | 16:00:00 | 0 | 0 | | 3.27 | 59.79 | Time |
| 11/21/2011 | 17:00:00 | 0 | 0 | | 3.06 | 59.63 | Time |
| 11/21/2011 | 18:00:00 | 0 | 0 | | 3.33 | 58.80 | Time |
| 11/21/2011 | 19:00:00 | 0 | 0 | | 3.18 | 59.13 | Time |
| 11/21/2011 | 20:00:00 | 0 | 0 | | 3.40 | 63.49 | Time |
| 11/21/2011 | 21:00:00 | 0 | 0 | | 3.55 | 69.64 | Time |
| 11/21/2011 | 22:00:00 | 0 | 0 | | 3.54 | 71.91 | Time |
| 11/21/2011 | 23:00:00 | 0 | 0 | | 3.53 | 72.97 | Time |
| 11/22/2011 | 00:00:00 | 0 | 0 | | 3.53 | 73.51 | Time |
| 11/22/2011 | 01:00:00 | 0 | 0 | | 3.53 | 73.69 | Time |

| Date | Time | | | | | |
|---|---|---|---|---|---|---|
| 11/22/2011 | 02:00:00 | 0 | 0 | 3.53 | 73.87 | Time |
| 11/22/2011 | 03:00:00 | 0 | 0 | 3.53 | 73.69 | Time |
| 11/22/2011 | 04:00:00 | 0 | 0 | 3.12 | 60.13 | Time |
| 11/22/2011 | 05:00:00 | 0 | 0 | 3.31 | 59.30 | Time |
| 11/22/2011 | 06:00:00 | 0 | 0 | 3.06 | 58.47 | Time |
| 11/22/2011 | 07:00:00 | 0 | 0 | 3.30 | 58.47 | Time |
| 11/22/2011 | 08:00:00 | 0 | 0 | 3.29 | 57.98 | Time |
| 11/22/2011 | 09:00:00 | 0 | 0 | 3.37 | 57.81 | Time |
| 11/22/2011 | 10:00:00 | 0 | 0 | 3.40 | 58.14 | Time |
| 11/22/2011 | 11:00:00 | 0 | 0 | 3.14 | 57.98 | Time |
| 11/22/2011 | 12:00:00 | 0 | 0 | 3.09 | 58.30 | Time |
| 11/22/2011 | 13:00:00 | 0 | 0 | 3.07 | 58.14 | Time |
| 11/22/2011 | 14:00:00 | 0 | 0 | 3.15 | 56.99 | Time |
| 11/22/2011 | 15:00:00 | 0 | 0 | 3.10 | 57.81 | Time |
| 11/22/2011 | 16:00:00 | 0 | 0 | 3.40 | 58.47 | Time |
| 11/22/2011 | 17:00:00 | 0 | 0 | 3.14 | 58.14 | Time |
| 11/22/2011 | 18:00:00 | 0 | 0 | 3.35 | 61.79 | Time |
| 11/22/2011 | 19:00:00 | 0 | 0 | 3.33 | 64.33 | Time |
| 11/22/2011 | 20:00:00 | 0 | 0 | 3.59 | 67.55 | Time |
| 11/22/2011 | 21:00:00 | 0 | 0 | 3.55 | 69.29 | Time |
| 11/22/2011 | 22:00:00 | 0 | 0 | 3.55 | 69.98 | Time |
| 11/22/2011 | 23:00:00 | 0 | 0 | 3.55 | 70.33 | Time |
| 11/23/2011 | 00:00:00 | 0 | 0 | 3.55 | 70.33 | Time |
| 11/23/2011 | 01:00:00 | 0 | 0 | 3.55 | 70.15 | Time |

| Date | Time | | | | | |
|---|---|---|---|---|---|---|
| 11/23/2011 | 02:00:00 | 0 | 0 | 3.54 | 70.15 | Time |
| 11/23/2011 | 03:00:00 | 0 | 0 | 3.55 | 69.98 | Time |
| 11/23/2011 | 04:00:00 | 0 | 0 | 3.11 | 58.30 | Time |
| 11/23/2011 | 05:00:00 | 0 | 0 | 3.38 | 57.65 | Time |
| 11/23/2011 | 06:00:00 | 0 | 0 | 3.10 | 57.48 | Time |
| 11/23/2011 | 07:00:00 | 0 | 0 | 3.15 | 56.96 | Time |
| 11/23/2011 | 08:00:00 | 0 | 0 | 3.11 | 56.99 | Time |
| 11/23/2011 | 09:00:00 | 0 | 0 | 3.35 | 57.32 | Time |
| 11/23/2011 | 10:00:00 | 0 | 0 | 3.33 | 57.15 | Time |
| 11/23/2011 | 11:00:00 | 0 | 0 | 3.37 | 57.15 | Time |
| 11/23/2011 | 12:00:00 | 0 | 0 | 3.38 | 57.65 | Time |
| 11/23/2011 | 13:00:00 | 0 | 0 | 3.05 | 57.16 | Time |
| 11/23/2011 | 14:00:00 | 0 | 0 | 3.15 | 57.98 | Time |
| 11/23/2011 | 15:00:00 | 0 | 0 | 3.15 | 57.15 | Time |
| 11/23/2011 | 16:00:00 | 0 | 0 | 3.32 | 57.81 | Time |
| 11/23/2011 | 17:00:00 | 0 | 0 | 3.35 | 60.29 | Time |
| 11/23/2011 | 18:00:00 | 0 | 0 | 3.22 | 61.46 | Time |
| 11/23/2011 | 19:00:00 | 0 | 0 | 3.37 | 61.13 | Time |
| 11/23/2011 | 20:00:00 | 0 | 0 | 3.56 | 63.49 | Time |
| 11/23/2011 | 21:00:00 | 0 | 0 | 3.55 | 65.02 | Time |
| 11/23/2011 | 22:00:00 | 0 | 0 | 3.55 | 65.52 | Time |
| 11/23/2011 | 23:00:00 | 0 | 0 | 3.55 | 65.52 | Time |
| 11/24/2011 | 00:00:00 | 0 | 0 | 3.55 | 65.52 | Time |

| Date | Time | | | | | |
|------|------|---|---|---|-------|------|
| 11/24/2011 | 01:00:00 | 0 | 0 | 3.54 | 65.52 | Time |
| 11/24/2011 | 02:00:00 | 0 | 0 | 3.54 | 65.35 | Time |
| 11/24/2011 | 03:00:00 | 0 | 0 | 3.55 | 65.02 | Time |
| 11/24/2011 | 04:00:00 | 0 | 0 | 3.36 | 56.82 | Time |
| 11/24/2011 | 05:00:00 | 0 | 0 | 3.38 | 55.84 | Time |
| 11/24/2011 | 06:00:00 | 0 | 0 | 3.07 | 55.84 | Time |
| 11/24/2011 | 07:00:00 | 0 | 0 | 3.37 | 55.68 | Time |
| 11/24/2011 | 08:00:00 | 0 | 0 | 2.98 | 56.01 | Time |
| 11/24/2011 | 09:00:00 | 0 | 0 | 3.39 | 56.66 | Time |
| 11/24/2011 | 10:00:00 | 0 | 0 | 3.12 | 57.32 | Time |
| 11/24/2011 | 11:00:00 | 0 | 0 | 3.09 | 57.81 | Time |
| 11/24/2011 | 12:00:00 | 0 | 0 | 3.13 | 58.64 | Time |
| 11/24/2011 | 13:00:00 | 0 | 0 | 3.25 | 58.47 | Time |
| 11/24/2011 | 14:00:00 | 0 | 0 | 3.26 | 58.97 | Time |
| 11/24/2011 | 15:00:00 | 0 | 0 | 3.10 | 58.97 | Time |
| 11/24/2011 | 16:00:00 | 0 | 0 | 3.55 | 67.73 | Time |
| 11/24/2011 | 17:00:00 | 0 | 0 | 3.54 | 71.55 | Time |
| 11/24/2011 | 18:00:00 | 0 | 0 | 3.53 | 72.79 | Time |
| 11/24/2011 | 19:00:00 | 0 | 0 | 3.53 | 73.33 | Time |
| 11/24/2011 | 20:00:00 | 0 | 0 | 3.53 | 73.51 | Time |
| 11/24/2011 | 21:00:00 | 0 | 0 | 3.53 | 73.51 | Time |
| 11/24/2011 | 22:00:00 | 0 | 0 | 3.53 | 73.33 | Time |
| 11/24/2011 | 23:00:00 | 0 | 0 | 3.54 | 72.97 | Time |
| 11/25/2011 | 00:00:00 | 0 | 0 | 3.54 | 72.61 | Time |

| Date | Time | | | | | |
|---|---|---|---|---|---|---|
| 11/25/2011 | 01:00:00 | 0 | | 3.56 | 72.26 | Time |
| 11/25/2011 | 02:00:00 | 0 | | 3.56 | 71.73 | Time |
| 11/25/2011 | 03:00:00 | 0 | | 3.57 | 71.32 | Time |
| 11/25/2011 | 04:00:00 | 0 | | 3.21 | 58.17 | Time |
| 11/25/2011 | 05:00:00 | 0 | | 3.36 | 57.32 | Time |
| 11/25/2011 | 06:00:00 | 0 | | 3.05 | 56.50 | Time |
| 11/25/2011 | 07:00:00 | 0 | | 3.14 | 56.82 | Time |
| 11/25/2011 | 08:00:00 | 0 | | 3.13 | 57.65 | Time |
| 11/25/2011 | 09:00:00 | 0 | | 3.18 | 57.48 | Time |
| 11/25/2011 | 10:00:00 | 0 | | 3.31 | 58.80 | Time |
| 11/25/2011 | 11:00:00 | 0 | | 3.07 | 58.64 | Time |
| 11/25/2011 | 12:00:00 | 0 | | 3.36 | 59.63 | Time |
| 11/25/2011 | 13:00:00 | 0 | | 3.36 | 59.46 | Time |
| 11/25/2011 | 14:00:00 | 0 | | 3.12 | 59.46 | Time |
| 11/25/2011 | 15:00:00 | 0 | | 3.10 | 60.44 | Time |
| 11/25/2011 | 16:00:00 | 0 | | 3.29 | 60.87 | Time |
| 11/25/2011 | 17:00:00 | 0 | | 3.47 | 61.63 | Time |
| 11/25/2011 | 18:00:00 | 0 | 0 | 3.40 | 60.96 | Time |
| 11/25/2011 | 19:00:00 | 0 | 0 | 3.35 | 65.86 | Time |
| 11/25/2011 | 20:00:00 | 0 | 0 | 3.53 | 72.61 | Time |
| 11/25/2011 | 21:00:00 | 0 | 0 | 3.52 | 74.55 | Time |
| 11/25/2011 | 22:00:00 | 0 | 0 | 3.52 | 75.31 | Time |
| 11/25/2011 | 23:00:00 | 0 | 0 | 3.52 | 75.50 | Time |

| Date | Time | | | | | Time |
|---|---|---|---|---|---|---|
| 11/26/2011 | 00:00:00 | 0 | 0 | 3.52 | 75.35 | Time |
| 11/26/2011 | 01:00:00 | 0 | 0 | 3.52 | 75.31 | Time |
| 11/26/2011 | 02:00:00 | 0 | 0 | 3.52 | 74.95 | Time |
| 11/26/2011 | 03:00:00 | 0 | 0 | 3.52 | 74.59 | Time |
| 11/26/2011 | 04:00:00 | 0 | 0 | 3.25 | 58.47 | Time |
| 11/26/2011 | 05:00:00 | 0 | 0 | 3.09 | 57.65 | Time |
| 11/26/2011 | 06:00:00 | 0 | 0 | 3.28 | 55.19 | Time |
| 11/26/2011 | 07:00:00 | 0 | 0 | 3.19 | 57.65 | Time |
| 11/26/2011 | 08:00:00 | 0 | 0 | 3.08 | 57.65 | Time |
| 11/26/2011 | 09:00:00 | 0 | 0 | 3.11 | 57.98 | Time |
| 11/26/2011 | 10:00:00 | 0 | 0 | 3.16 | 59.81 | Time |
| 11/26/2011 | 11:00:00 | 0 | 0 | 3.08 | 59.46 | Time |
| 11/26/2011 | 12:00:00 | 0 | 0 | 3.17 | 59.79 | Time |
| 11/26/2011 | 13:00:00 | 0 | 0 | 3.07 | 59.30 | Time |
| 11/26/2011 | 14:00:00 | 0 | 0 | 3.06 | 59.46 | Time |
| 11/26/2011 | 15:00:00 | 0 | 0 | 3.11 | 60.46 | Time |
| 11/26/2011 | 16:00:00 | 0 | 0 | 3.10 | 60.96 | Time |
| 11/26/2011 | 17:00:00 | 0 | 0 | 3.25 | 60.79 | Time |
| 11/26/2011 | 18:00:00 | 0 | 0 | 3.32 | 61.96 | Time |
| 11/26/2011 | 19:00:00 | 0 | 0 | 3.33 | 68.25 | Time |
| 11/26/2011 | 20:00:00 | 0 | 0 | 3.30 | 67.38 | Time |
| 11/26/2011 | 21:00:00 | 0 | 0 | 3.55 | 73.69 | Time |
| 11/26/2011 | 22:00:00 | 0 | 0 | 3.54 | 75.50 | Time |
| 11/26/2011 | 23:00:00 | 0 | 0 | 3.53 | 76.40 | Time |

| Date | Time | | | | | |
|---|---|---|---|---|---|---|
| 11/27/2011 | 00:00:00 | 0 | 0 | 3.53 | 76.40 | Time |
| 11/27/2011 | 01:00:00 | 0 | 0 | 3.53 | 76.40 | Time |
| 11/27/2011 | 02:00:00 | 0 | 0 | 3.53 | 76.04 | Time |
| 11/27/2011 | 03:00:00 | 0 | 0 | 3.53 | 75.57 | Time |
| 11/27/2011 | 04:00:00 | 0 | 0 | 3.15 | 59.46 | Time |
| 11/27/2011 | 05:00:00 | 0 | 0 | 3.05 | 57.65 | Time |
| 11/27/2011 | 06:00:00 | 0 | 0 | 3.06 | 57.32 | Time |
| 11/27/2011 | 07:00:00 | 0 | 0 | 3.19 | 57.32 | Time |
| 11/27/2011 | 08:00:00 | 0 | 0 | 3.10 | 58.14 | Time |
| 11/27/2011 | 09:00:00 | 0 | 0 | 3.05 | 57.98 | Time |
| 11/27/2011 | 10:00:00 | 0 | 0 | 3.10 | 58.47 | Time |
| 11/27/2011 | 11:00:00 | 0 | 0 | 3.13 | 58.47 | Time |
| 11/27/2011 | 12:00:00 | 0 | 0 | 3.20 | 58.30 | Time |
| 11/27/2011 | 13:00:00 | 0 | 0 | 3.05 | 59.13 | Time |
| 11/27/2011 | 14:00:00 | 0 | 0 | 3.15 | 58.97 | Time |
| 11/27/2011 | 15:00:00 | 0 | 0 | 3.16 | 58.80 | Time |
| 11/27/2011 | 16:00:00 | 0 | 0 | 3.39 | 59.63 | Time |
| 11/27/2011 | 17:00:00 | 0 | 0 | 3.17 | 59.13 | Time |
| 11/27/2011 | 18:00:00 | 0 | 0 | 3.30 | 63.15 | Time |
| 11/27/2011 | 19:00:00 | 0 | 0 | 3.27 | 65.19 | Time |
| 11/27/2011 | 20:00:00 | 0 | 0 | 3.26 | 66.70 | Time |
| 11/27/2011 | 21:00:00 | 0 | 0 | 3.55 | 70.67 | Time |
| 11/27/2011 | 22:00:00 | 0 | 0 | 3.54 | 72.53 | Time |

| Date | Time | | | | | |
|---|---|---|---|---|---|---|
| 11/27/2011 | 23:00:00 | 0 | 0 | 3.54 | 72.79 | Time |
| 11/28/2011 | 00:00:00 | 0 | 0 | 3.54 | 72.79 | Time |
| 11/28/2011 | 01:00:00 | 0 | 0 | 3.53 | 72.43 | Time |
| 11/28/2011 | 02:00:00 | 0 | 0 | 3.53 | 72.26 | Time |
| 11/28/2011 | 03:00:00 | 0 | 0 | 3.58 | 71.91 | Time |
| 11/28/2011 | 04:00:00 | 0 | 0 | 3.32 | 60.13 | Time |
| 11/28/2011 | 05:00:00 | 0 | 0 | 3.33 | 57.81 | Time |
| 11/28/2011 | 06:00:00 | 0 | 0 | 3.12 | 57.48 | Time |
| 11/28/2011 | 07:00:00 | 0 | 0 | 3.15 | 57.32 | Time |
| 11/28/2011 | 08:00:00 | 0 | 0 | 3.29 | 57.48 | Time |
| 11/28/2011 | 09:00:00 | 0 | 0 | 3.26 | 56.99 | Time |
| 11/28/2011 | 10:00:00 | 0 | 0 | 3.34 | 59.30 | Time |
| 11/28/2011 | 11:00:00 | 0 | 0 | 3.36 | 58.14 | Time |
| 11/28/2011 | 12:00:00 | 0 | 0 | 3.14 | 58.30 | Time |
| 11/28/2011 | 13:00:00 | 0 | 0 | .3.08 | 58.94 | Time |
| 11/28/2011 | 14:00:00 | 0 | 0 | 3.35 | 58.28 | Time |
| 11/28/2011 | 15:00:00 | 0 | 0 | 3.11 | 58.80 | Time |
| 11/28/2011 | 16:00:00 | 0 | 0 | 3.16 | 58.97 | Time |
| 11/28/2011 | 17:00:00 | 0 | 0 | 3.42 | 58.64 | Time |
| 11/28/2011 | 18:00:00 | 0 | 0 | 3.37 | 59.13 | Time |
| 11/28/2011 | 19:00:00 | 0 | 0 | 3.07 | 59.79 | Time |
| 11/28/2011 | 20:00:00 | 0 | 0 | 3.31 | 63.31 | Time |
| 11/28/2011 | 21:00:00 | 0 | 0 | 3.40 | 66.20 | Time |
| 11/28/2011 | 22:00:00 | 0 | 0 | 3.62 | 69.12 | Time |

| Date | Time | | | | | |
|---|---|---|---|---|---|---|
| 11/28/2011 | 23:00:00 | 0 | 0 | 3.55 | 72.97 | Time |
| 11/29/2011 | 00:00:00 | 0 | 0 | 3.54 | 74.41 | Time |
| 11/29/2011 | 01:00:00 | 0 | 0 | 3.54 | 74.95 | Time |
| 11/29/2011 | 02:00:00 | 0 | 0 | 3.53 | 75.31 | Time |
| 11/29/2011 | 03:00:00 | 0 | 0 | 3.53 | 75.33 | Time |
| 11/29/2011 | 04:00:00 | 0 | 0 | 3.13 | 60.29 | Time |
| 11/29/2011 | 05:00:00 | 0 | 0 | 3.12 | 58.47 | Time |
| 11/29/2011 | 06:00:00 | 0 | 0 | 3.20 | 58.14 | Time |
| 11/29/2011 | 07:00:00 | 0 | 0 | 3.29 | 58.14 | Time |
| 11/29/2011 | 08:00:00 | 0 | 0 | 3.41 | 58.14 | Time |
| 11/29/2011 | 09:00:00 | 0 | 0 | 3.12 | 58.14 | Time |
| 11/29/2011 | 10:00:00 | 0 | 0 | 3.08 | 58.97 | Time |
| 11/29/2011 | 11:00:00 | 0 | 0 | 3.21 | 58.47 | Time |
| 11/29/2011 | 12:00:00 | 0 | 0 | 3.17 | 59.46 | Time |
| 11/29/2011 | 13:00:00 | 0 | 0 | 3.39 | 58.80 | Time |
| 11/29/2011 | 14:00:00 | 0 | 0 | 3.09 | 58.97 | Time |
| 11/29/2011 | 15:00:00 | 0 | 0 | 3.36 | 58.80 | Time |
| 11/29/2011 | 16:00:00 | 0 | 0 | 3.33 | 59.30 | Time |
| 11/29/2011 | 17:00:00 | 0 | 0 | 3.38 | 58.64 | Time |
| 11/29/2011 | 18:00:00 | 0 | 0 | 3.36 | 59.46 | Time |
| 11/29/2011 | 19:00:00 | 0 | 0 | 3.43 | 63.31 | Time |
| 11/29/2011 | 20:00:00 | 0 | 0 | 3.55 | 69.46 | Time |
| 11/29/2011 | 21:00:00 | 0 | 0 | 3.54 | 70.85 | Time |

| Date | Time | | | | | |
|---|---|---|---|---|---|---|
| 11/29/2011 | 22:00:00 | 0 | 0 | 3.54 | 71.20 | Time |
| 11/29/2011 | 23:00:00 | 0 | 0 | 3.54 | 70.85 | Time |
| 11/30/2011 | 00:00:00 | 0 | 0 | 3.54 | 70.33 | Time |
| 11/30/2011 | 01:00:00 | 0 | 0 | 3.55 | 69.64 | Time |
| 11/30/2011 | 02:00:00 | 0 | 0 | 3.56 | 68.94 | Time |
| 11/30/2011 | 03:00:00 | 0 | 0 | 3.57 | 68.42 | Time |
| 11/30/2011 | 04:00:00 | 0 | 0 | 3.36 | 57.48 | Time |
| 11/30/2011 | 05:00:00 | 0 | 0 | 3.08 | 57.14 | Time |
| 11/30/2011 | 06:00:00 | 0 | 0 | 3.38 | 56.99 | Time |
| 11/30/2011 | 07:00:00 | 0 | 0 | 3.16 | 56.82 | Time |
| 11/30/2011 | 08:00:00 | 0 | 0 | 3.10 | 57.32 | Time |
| 11/30/2011 | 09:00:00 | 0 | 0 | 3.41 | 57.65 | Time |
| 11/30/2011 | 10:00:00 | 0 | 0 | 3.30 | 57.98 | Time |
| 11/30/2011 | 11:00:00 | 0 | 0 | 3.14 | 57.48 | Time |
| 11/30/2011 | 12:00:00 | 0 | 0 | 3.30 | 57.81 | Time |
| 11/30/2011 | 13:00:00 | 0 | 0 | 3.40 | 57.48 | Time |
| 11/30/2011 | 14:00:00 | 0 | 0 | 3.14 | 57.32 | Time |
| 11/30/2011 | 15:00:00 | 0 | 0 | 3.37 | 57.81 | Time |
| 11/30/2011 | 16:00:00 | 0 | 0 | 3.27 | 60.96 | Time |
| 11/30/2011 | 17:00:00 | 0 | 0 | 3.52 | 63.82 | Time |
| 11/30/2011 | 18:00:00 | 0 | 0 | 3.27 | 62.64 | Time |
| 11/30/2011 | 19:00:00 | 0 | 0 | 3.34 | 63.15 | Time |
| 11/30/2011 | 20:00:00 | 0 | 0 | 3.54 | 67.38 | Time |
| 11/30/2011 | 21:00:00 | 0 | 0 | 3.54 | 68.60 | Time |

| Date | Time | | | | | |
|---|---|---|---|---|---|---|
| 11/30/2011 | 22:00:00 | 0 | 0 | 3.54 | 68.94 | Time |
| 11/30/2011 | 23:00:00 | 0 | 0 | 3.53 | 68.94 | Time |
| 12/1/2011 | 00:00:00 | 0 | 0 | 3.54 | 68.77 | Time |
| 12/1/2011 | 01:00:00 | 0 | 0 | 3.54 | 68.42 | Time |
| 12/1/2011 | 02:00:00 | 0 | 0 | 3.54 | 67.90 | Time |
| 12/1/2011 | 03:00:00 | 0 | 0 | 3.55 | 67.21 | Time |
| 12/1/2011 | 04:00:00 | 0 | 0 | 3.11 | 56.91 | Time |
| 12/1/2011 | 05:00:00 | 0 | 0 | 3.11 | 55.68 | Time |
| 12/1/2011 | 06:00:00 | 0 | 0 | 3.42 | 55.52 | Time |
| 12/1/2011 | 07:00:00 | 0 | 0 | 3.08 | 56.17 | Time |
| 12/1/2011 | 08:00:00 | 0 | 0 | 3.13 | 56.50 | Time |
| 12/1/2011 | 09:00:00 | 0 | 0 | 3.16 | 57.32 | Time |
| 12/1/2011 | 10:00:00 | 0 | 0 | 3.12 | 58.30 | Time |
| 12/1/2011 | 11:00:00 | 0 | 0 | 3.32 | 58.14 | Time |
| 12/1/2011 | 12:00:00 | 0 | 0 | 3.08 | 58.14 | Time |
| 12/1/2011 | 13:00:00 | 0 | 0 | 3.08 | 58.80 | Time |
| 12/1/2011 | 14:00:00 | 0 | 0 | 3.07 | 58.80 | Time |
| 12/1/2011 | 15:00:00 | 0 | 0 | 3.31 | 59.13 | Time |
| 12/1/2011 | 16:00:00 | 0 | 0 | 3.15 | 59.46 | Time |
| 12/1/2011 | 17:00:00 | 0 | 0 | 3.10 | 59.79 | Time |
| 12/1/2011 | 18:00:00 | 0 | 0 | 3.09 | 59.13 | Time |
| 12/1/2011 | 19:00:00 | 0 | 0 | 3.30 | 61.96 | Time |
| 12/1/2011 | 20:00:00 | 0 | 0 | 3.55 | 68.94 | Time |

| Date | Time | | | | | |
|---|---|---|---|---|---|---|
| 12/1/2011 | 21:00:00 | 0 | 0 | 3.94 | 71.55 | Time |
| 12/1/2011 | 22:00:00 | 0 | 0 | 3.54 | 72.79 | Time |
| 12/1/2011 | 23:00:00 | 0 | 0 | 3.53 | 73.15 | Time |
| 12/2/2011 | 00:00:00 | 0 | 0 | 3.53 | 73.15 | Time |
| 12/2/2011 | 01:00:00 | 0 | 0 | 3.53 | 72.97 | Time |
| 12/2/2011 | 02:00:00 | 0 | 0 | 3.53 | 72.61 | Time |
| 12/2/2011 | 03:00:00 | 0 | 0 | 3.54 | 72.08 | Time |
| 12/2/2011 | 04:00:00 | 0 | 0 | 3.11 | 57.65 | Time |
| 12/2/2011 | 05:00:00 | 0 | 0 | 3.08 | 56.82 | Time |
| 12/2/2011 | 06:00:00 | 0 | 0 | 3.13 | 56.50 | Time |
| 12/2/2011 | 07:00:00 | 0 | 0 | 3.13 | 57.14 | Time |
| 12/2/2011 | 08:00:00 | 0 | 0 | 3.36 | 57.45 | Time |
| 12/2/2011 | 09:00:00 | 0 | 0 | 3.09 | 57.32 | Time |
| 12/2/2011 | 10:00:00 | 0 | 0 | 3.09 | 57.65 | Time |
| 12/2/2011 | 11:00:00 | 0 | 0 | 3.35 | 58.14 | Time |
| 12/2/2011 | 12:00:00 | 0 | 0 | 3.31 | 58.80 | Time |
| 12/2/2011 | 13:00:00 | 0 | 0 | 3.04 | 57.81 | Time |
| 12/2/2011 | 14:00:00 | 0 | 0 | 3.06 | 57.50 | Time |
| 12/2/2011 | 15:00:00 | 0 | 0 | 3.16 | 57.65 | Time |
| 12/2/2011 | 16:00:00 | 0 | 0 | 3.67 | 60.96 | Time |
| 12/2/2011 | 17:00:00 | 0 | 0 | 3.31 | 58.64 | Time |
| 12/2/2011 | 18:00:00 | 0 | 0 | 3.13 | 58.14 | Time |
| 12/2/2011 | 19:00:00 | 0 | 0 | 3.39 | 60.13 | Time |
| 12/2/2011 | 20:00:00 | 0 | 0 | 3.25 | 58.97 | Time |

| Date | Time | | | | | |
|---|---|---|---|---|---|---|
| 12/2/2011 | 21:00:00 | 0 | 0 | 3.30 | 60.14 | Time |
| 12/2/2011 | 22:00:00 | 0 | 0 | 3.54 | 66.53 | Time |
| 12/2/2011 | 23:00:00 | 0 | 0 | 3.53 | 69.29 | Time |
| 12/3/2011 | 00:00:00 | 0 | 0 | 3.53 | 70.15 | Time |
| 12/3/2011 | 01:00:00 | 0 | 0 | 3.53 | 70.50 | Time |
| 12/3/2011 | 02:00:00 | 0 | 0 | 3.53 | 70.49 | Time |
| 12/3/2011 | 03:00:00 | 0 | 0 | 3.53 | 70.15 | Time |
| 12/3/2011 | 04:00:00 | 0 | 0 | 3.23 | 57.48 | Time |
| 12/3/2011 | 05:00:00 | 0 | 0 | 3.19 | 56.82 | Time |
| 12/3/2011 | 06:00:00 | 0 | 0 | 3.15 | 55.36 | Time |
| 12/3/2011 | 07:00:00 | 0 | 0 | 3.08 | 55.84 | Time |
| 12/3/2011 | 08:00:00 | 0 | 0 | 3.44 | 56.33 | Time |
| 12/3/2011 | 09:00:00 | 0 | 0 | 3.15 | 56.66 | Time |
| 12/3/2011 | 10:00:00 | 0 | 0 | 3.39 | 57.32 | Time |
| 12/3/2011 | 11:00:00 | 0 | 0 | 3.11 | 57.48 | Time |
| 12/3/2011 | 12:00:00 | 0 | 0 | 3.10 | 57.65 | Time |
| 12/3/2011 | 13:00:00 | 0 | 0 | 3.12 | 57.98 | Time |
| 12/3/2011 | 14:00:00 | 0 | 0 | 3.17 | 57.98 | Time |
| 12/3/2011 | 15:00:00 | 0 | 0 | 3.10 | 57.98 | Time |
| 12/25/2011 | 16:00:00 | 0 | 0 | 3.38 | 57.65 | Time |
| 12/3/2011 | 17:00:00 | 0 | 0 | 3.13 | 57.48 | Time |
| 12/3/2011 | 18:00:00 | 0 | 0 | 3.38 | 60.13 | Time |
| 12/3/2011 | 19:00:00 | 0 | 0 | 3.30 | 64.00 | Time |

| Date | Time | | | | | |
|---|---|---|---|---|---|---|
| 12/3/2011 | 20:00:00 | 0 | 0 | 3.40 | 62.81 | Time |
| 12/3/2011 | 21:00:00 | 0 | 0 | 3.55 | 68.94 | Time |
| 12/3/2011 | 22:00:00 | 0 | 0 | 3.54 | 69.98 | Time |
| 12/3/2011 | 23:00:00 | 0 | 0 | 3.54 | 70.67 | Time |
| 12/4/2011 | 00:00:00 | 0 | 0 | 3.53 | 70.85 | Time |
| 12/4/2011 | 01:00:00 | 0 | 0 | 3.53 | 70.67 | Time |
| 12/4/2011 | 02:00:00 | 0 | 0 | 3.53 | 70.46 | Time |
| 12/4/2011 | 03:00:00 | 0 | 0 | 3.54 | 70.15 | Time |
| 12/4/2011 | 04:00:00 | 0 | 0 | 2.90 | 55.68 | Time |
| 12/4/2011 | 05:00:00 | 0 | 0 | 3.23 | 54.87 | Time |
| 12/4/2011 | 06:00:00 | 0 | 0 | 3.10 | 54.55 | Time |
| 12/4/2011 | 07:00:00 | 0 | 0 | 3.42 | 54.55 | Time |
| 12/4/2011 | 08:00:00 | 0 | 0 | 3.04 | 54.98 | Time |
| 12/4/2011 | 09:00:00 | 0 | 0 | 3.39 | 55.19 | Time |
| 12/4/2011 | 10:00:00 | 0 | 0 | 3.22 | 55.70 | Time |
| 12/4/2011 | 11:00:00 | 0 | 0 | 3.41 | 55.36 | Time |
| 12/4/2011 | 12:00:00 | 0 | 0 | 3.31 | 56.17 | Time |
| 12/4/2011 | 13:00:00 | 0 | 0 | 3.11 | 55.84 | Time |
| 12/4/2011 | 14:00:00 | 0 | 0 | 3.08 | 55.36 | Time |
| 12/4/2011 | 15:00:00 | 0 | 0 | 3.05 | 55.84 | Time |
| 12/4/2011 | 16:00:00 | 0 | 0 | 3.06 | 56.16 | Time |
| 12/4/2011 | 17:00:00 | 0 | 0 | 3.26 | 56.50 | Time |
| 12/4/2011 | 18:00:00 | 0 | 0 | 3.13 | 57.81 | Time |
| 12/4/2011 | 19:00:00 | 2 | 1 | 3.55 | 60.96 | Time |

| Date | Time | | | | | |
|---|---|---|---|---|---|---|
| 12/4/2011 | 20:00:00 | 0 | 0 | 3.54 | 68.60 | Time |
| 12/4/2011 | 21:00:00 | 0 | 0 | 3.53 | 69.81 | Time |
| 12/4/2011 | 22:00:00 | 0 | 0 | 3.53 | 70.50 | Time |
| 12/4/2011 | 23:00:00 | 0 | 0 | 3.53 | 71.02 | Time |
| 12/5/2011 | 00:00:00 | 0 | 0 | 3.53 | 71.20 | Time |
| 12/5/2011 | 01:00:00 | 0 | 0 | 3.53 | 71.20 | Time |
| 12/5/2011 | 02:00:00 | 0 | 0 | 3.53 | 71.20 | Time |
| 12/5/2011 | 03:00:00 | 0 | 0 | 3.53 | 71.02 | Time |
| 12/5/2011 | 04:00:00 | 14 | 12 | 3.02 | 58.65 | Time |
| 12/5/2011 | 05:00:00 | 12 | 10 | 3.15 | 56.27 | Time |
| 12/5/2011 | 06:00:00 | 14 | 11 | 3.13 | 55.71 | Time |
| 12/5/2011 | 07:00:00 | 14 | 12 | 3.14 | 55.34 | Time |
| 12/5/2011 | 08:00:00 | 15 | 12 | 3.13 | 55.36 | Time |
| 12/5/2011 | 09:00:00 | 15 | 12 | 3.19 | 55.22 | Time |
| 12/5/2011 | 10:00:00 | 15 | 12 | 3.20 | 55.28 | Time |
| 12/5/2011 | 11:00:00 | 12 | 10 | 3.22 | 55.71 | Time |
| 12/5/2011 | 12:00:00 | 15 | 12 | 3.21 | 55.86 | Time |
| 12/5/2011 | 13:00:00 | 13 | 11 | 3.18 | 55.86 | Time |
| 12/5/2011 | 14:00:00 | 15 | 12 | 3.15 | 55.88 | Time |
| 12/5/2011 | 15:00:00 | 13 | 11 | 3.14 | 55.89 | Time |
| 12/5/2011 | 16:00:00 | 14 | 11 | 3.16 | 55.98 | Time |
| 12/5/2011 | 17:00:00 | 12 | 10 | 3.16 | 55.89 | Time |
| 12/5/2011 | 18:00:00 | 15 | 12 | 3.11 | 55.63 | Time |

| Date | Time | | | | | |
|---|---|---|---|---|---|---|
| 12/5/2011 | 19:00:00 | 10 | 8 | 3.19 | 56.43 | Time |
| 12/5/2011 | 20:00:00 | 7 | 6 | 3.26 | 57.98 | Time |
| 12/5/2011 | 21:00:00 | 5 | 4 | 3.32 | 59.59 | Time |
| 12/5/2011 | 22:00:00 | 1 | 1 | 3.30 | 61.13 | Time |
| 12/5/2011 | 23:00:00 | 0 | 1 | 3.53 | 69.81 | Time |
| 12/6/2011 | 00:00:00 | 0 | 0 | 3.53 | 70.85 | Time |
| 12/6/2011 | 01:00:00 | 0 | 0 | 3.52 | 71.20 | Time |
| 12/6/2011 | 02:00:00 | 0 | 0 | 3.53 | 71.38 | Time |
| 12/6/2011 | 03:00:00 | 0 | 0 | 3.53 | 71.55 | Time |
| 12/6/2011 | 04:00:00 | 13 | 11 | 3.08 | 60.50 | Time |
| 12/6/2011 | 05:00:00 | 14 | 11 | 3.15 | 56.74 | Time |
| 12/6/2011 | 06:00:00 | 13 | 11 | 3.13 | 56.02 | Time |
| 12/6/2011 | 07:00:00 | 15 | 12 | 3.13 | 55.86 | Time |
| 12/6/2011 | 08:00:00 | 13 | 11 | 3.15 | 55.93 | Time |
| 12/6/2011 | 09:00:00 | 15 | 12 | 3.13 | 56.02 | Time |
| 12/6/2011 | 10:00:00 | 12 | 10 | 3.18 | 56.33 | Time |
| 12/6/2011 | 11:00:00 | 14 | 11 | 3.16 | 56.30 | Time |
| 12/6/2011 | 12:00:00 | 12 | 10 | 3.17 | 56.44 | Time |
| 12/6/2011 | 13:00:00 | 13 | 11 | 3.18 | 56.49 | Time |
| 12/6/2011 | 14:00:00 | 15 | 12 | 3.17 | 56.17 | Time |
| 12/6/2011 | 15:00:00 | 14 | 11 | 3.14 | 56.23 | Time |
| 12/6/2011 | 16:00:00 | 13 | 11 | 3.17 | 56.17 | Time |
| 12/6/2011 | 17:00:00 | 12 | 10 | 3.19 | 56.66 | Time |
| 12/6/2011 | 18:00:00 | 13 | 10 | 3.29 | 56.85 | Time |

| Date | Time | | | | | |
|---|---|---|---|---|---|---|
| 12/6/2011 | 19:00:00 | 9 | 8 | 3.22 | 57.24 | Time |
| 12/6/2011 | 20:00:00 | 6 | 5 | 3.16 | 58.24 | Time |
| 12/6/2011 | 21:00:00 | 2 | 1 | 3.09 | 61.96 | Time |
| 12/6/2011 | 22:00:00 | 0 | 0 | 3.53 | 69.98 | Time |
| 12/6/2011 | 23:00:00 | 0 | 0 | 3.52 | 71.02 | Time |
| 12/7/2011 | 00:00:00 | 0 | 0 | 3.52 | 71.73 | Time |
| 12/7/2011 | 01:00:00 | 0 | 0 | 3.52 | 72.43 | Time |
| 12/7/2011 | 02:00:00 | 0 | 0 | 3.53 | 72.79 | Time |
| 12/7/2011 | 03:00:00 | 0 | 0 | 3.51 | 72.97 | Time |
| 12/7/2011 | 04:00:00 | 0 | 0 | 3.36 | 57.15 | Time |
| 12/7/2011 | 05:00:00 | 0 | 0 | 3.09 | 57.48 | Time |
| 12/7/2011 | 06:00:00 | 0 | 0 | 3.17 | 56.33 | Time |
| 12/7/2011 | 07:00:00 | 0 | 0 | 3.35 | 56.50 | Time |
| 12/7/2011 | 08:00:00 | 0 | 0 | 3.20 | 56.01 | Time |
| 12/7/2011 | 09:00:00 | 0 | 0 | 3.36 | 56.01 | Time |
| 12/7/2011 | 10:00:00 | 0 | 0 | 3.08 | 56.66 | Time |
| 12/7/2011 | 11:00:00 | 0 | 0 | 3.13 | 56.50 | Time |
| 12/7/2011 | 12:00:00 | 0 | 0 | 3.17 | 56.50 | Time |
| 12/7/2011 | 13:00:00 | 0 | 0 | 3.16 | 56.33 | Time |
| 12/7/2011 | 14:00:00 | 0 | 0 | 3.11 | 56.17 | Time |
| 12/7/2011 | 15:00:00 | 0 | 0 | 3.45 | 56.66 | Time |
| 12/7/2011 | 16:00:00 | 0 | 0 | 3.41 | 57.17 | Time |
| 12/7/2011 | 17:00:00 | 0 | 0 | 3.13 | 56.90 | Time |

| Date | Time | | | | | |
|---|---|---|---|---|---|---|
| 12/7/2011 | 18:00:00 | 0 | 0 | 3.40 | 56.82 | Time |
| 12/7/2011 | 19:00:00 | 0 | 0 | 3.33 | 58.97 | Time |
| 12/7/2011 | 20:00:00 | 0 | 0 | 3.56 | 64.51 | Time |
| 12/7/2011 | 21:00:00 | 0 | 0 | 3.55 | 66.87 | Time |
| 12/7/2011 | 22:00:00 | 0 | 0 | 3.54 | 67.90 | Time |
| 12/7/2011 | 23:00:00 | 0 | 0 | 3.54 | 68.58 | Time |
| 12/8/2011 | 00:00:00 | 0 | 0 | 3.54 | 68.60 | Time |
| 12/8/2011 | 01:00:00 | 0 | 0 | 3.54 | 68.42 | Time |
| 12/8/2011 | 02:00:00 | 0 | 0 | 3.54 | 68.25 | Time |
| 12/8/2011 | 03:00:00 | 0 | 0 | 3.55 | 67.73 | Time |
| 12/8/2011 | 04:00:00 | 0 | 0 | 3.22 | 56.82 | Time |
| 12/8/2011 | 05:00:00 | 0 | 0 | 3.07 | 55.02 | Time |
| 12/8/2011 | 06:00:00 | 0 | 0 | 3.10 | 55.19 | Time |
| 12/8/2011 | 07:00:00 | 0 | 0 | 3.39 | 55.19 | Time |
| 12/8/2011 | 08:00:00 | 0 | 0 | 3.31 | 55.19 | Time |
| 12/8/2011 | 09:00:00 | 0 | 0 | 3.29 | 55.68 | Time |
| 12/8/2011 | 10:00:00 | 0 | 0 | 3.14 | 57.15 | Time |
| 12/8/2011 | 11:00:00 | 0 | 0 | 3.07 | 56.99 | Time |
| 12/8/2011 | 12:00:00 | 0 | 0 | 3.06 | 57.15 | Time |
| 12/8/2011 | 13:00:00 | 0 | 0 | 3.07 | 56.99 | Time |
| 12/8/2011 | 14:00:00 | 0 | 0 | 3.09 | 56.82 | Time |
| 12/8/2011 | 15:00:00 | 0 | 0 | 3.05 | 57.32 | Time |
| 12/8/2011 | 16:00:00 | 0 | 0 | 3.35 | 57.98 | Time |
| 12/8/2011 | 17:00:00 | 0 | 0 | 3.32 | 56.66 | Time |

| Date | Time | | | | | |
|---|---|---|---|---|---|---|
| 12/8/2011 | 18:00:00 | 0 | | 3.06 | 56.50 | Time |
| 12/8/2011 | 19:00:00 | 0 | | 3.03 | 56.82 | Time |
| 12/8/2011 | 20:00:00 | 0 | | 3.51 | 59.79 | Time |
| 12/8/2011 | 21:00:00 | 0 | | 3.56 | 66.75 | Time |
| 12/8/2011 | 22:00:00 | 0 | | 3.54 | 69.29 | Time |
| 12/8/2011 | 23:00:00 | 0 | | 3.54 | 70.15 | Time |
| 12/9/2011 | 00:00:00 | 0 | | 3.54 | 69.98 | Time |
| 12/9/2011 | 01:00:00 | 0 | | 3.53 | 69.81 | Time |
| 12/9/2011 | 02:00:00 | 0 | | 3.54 | 69.81 | Time |
| 12/9/2011 | 03:00:00 | 0 | | 3.55 | 69.12 | Time |
| 12/9/2011 | 04:00:00 | 0 | | 3.34 | 56.33 | Time |
| 12/9/2011 | 05:00:00 | 0 | | 3.35 | 54.87 | Time |
| 12/9/2011 | 06:00:00 | 0 | | 3.09 | 54.06 | Time |
| 12/9/2011 | 07:00:00 | 0 | | 3.17 | 54.38 | Time |
| 12/9/2011 | 08:00:00 | 0 | | 3.36 | 54.55 | Time |
| 12/9/2011 | 09:00:00 | 0 | | 3.35 | 54.55 | Time |
| 12/9/2011 | 10:00:00 | 0 | | 3.08 | 55.84 | Time |
| 12/9/2011 | 11:00:00 | 0 | | 3.16 | 55.36 | Time |
| 12/9/2011 | 12:00:00 | 0 | 0 | 3.08 | 55.52 | Time |
| 12/9/2011 | 13:00:00 | 0 | 0 | 3.34 | 55.36 | Time |
| 12/9/2011 | 14:00:00 | 0 | 0 | 3.03 | 55.84 | Time |
| 12/9/2011 | 15:00:00 | 0 | 0 | 3.15 | 55.52 | Time |
| 12/9/2011 | 16:00:00 | 0 | 0 | 3.05 | 55.84 | Time |

| | | | | | |
|---|---|---|---|---|---|
| 12/9/2011 | 17:00:00 | 0 | 0 | 3.33 | 55.52 | Time |
| 12/9/2011 | 18:00:00 | 0 | 0 | 3.33 | 57.32 | Time |
| 12/9/2011 | 19:00:00 | 0 | 0 | 3.59 | 60.96 | Time |
| 12/9/2011 | 20:00:00 | 0 | 0 | 3.53 | 66.87 | Time |
| 12/9/2011 | 21:00:00 | 0 | 0 | 3.53 | 69.12 | Time |
| 12/9/2011 | 22:00:00 | 0 | 0 | 3.52 | 70.15 | Time |
| 12/9/2011 | 23:00:00 | 0 | 0 | 3.52 | 70.85 | Time |
| 12/10/2011 | 00:00:00 | 0 | 0 | 3.52 | 71.05 | Time |
| 12/10/2011 | 01:00:00 | 0 | 0 | 3.52 | 71.20 | Time |
| 12/10/2011 | 02:00:00 | 0 | 0 | 3.52 | 71.17 | Time |
| 12/10/2011 | 03:00:00 | 0 | 0 | 3.53 | 70.85 | Time |
| 12/10/2011 | 04:00:00 | 0 | 0 | 3.34 | 56.82 | Time |
| 12/10/2011 | 05:00:00 | 0 | 0 | 3.23 | 55.05 | Time |
| 12/10/2011 | 06:00:00 | 0 | 0 | 3.15 | 54.55 | Time |
| 12/10/2011 | 07:00:00 | 0 | 0 | 3.02 | 54.71 | Time |
| 12/10/2011 | 08:00:00 | 0 | 0 | 3.08 | 54.71 | Time |
| 12/10/2011 | 09:00:00 | 0 | 0 | 3.14 | 55.03 | Time |
| 12/10/2011 | 10:00:00 | 0 | 0 | 3.37 | 55.52 | Time |
| 12/10/2011 | 11:00:00 | 0 | 0 | 3.33 | 55.46 | Time |
| 12/10/2011 | 12:00:00 | 0 | 0 | 3.38 | 55.68 | Time |
| 12/10/2011 | 13:00:00 | 0 | 0 | 3.06 | 55.36 | Time |
| 12/10/2011 | 14:00:00 | 0 | 0 | 3.05 | 55.68 | Time |
| 12/10/2011 | 15:00:00 | 0 | 0 | 3.37 | 55.19 | Time |
| 12/10/2011 | 16:00:00 | 0 | 0 | 3.13 | 55.84 | Time |

| Date | Time | | | | | |
|---|---|---|---|---|---|---|
| 12/10/2011 | 17:00:00 | 0 | | 3.39 | 55.84 | Time |
| 12/10/2011 | 18:00:00 | 0 | | 3.05 | 55.52 | Time |
| 12/10/2011 | 19:00:00 | 0 | | 3.36 | 59.96 | Time |
| 12/10/2011 | 20:00:00 | 0 | | 3.33 | 61.79 | Time |
| 12/10/2011 | 21:00:00 | 0 | | 3.56 | 66.70 | Time |
| 12/10/2011 | 22:00:00 | 0 | | 3.54 | 67.90 | Time |
| 12/10/2011 | 23:00:00 | 0 | | 3.54 | 68.25 | Time |
| 12/11/2011 | 00:00:00 | 0 | | 3.54 | 68.08 | Time |
| 12/11/2011 | 01:00:00 | 0 | | 3.53 | 67.73 | Time |
| 12/11/2011 | 02:00:00 | 0 | | 3.55 | 67.04 | Time |
| 12/11/2011 | 03:00:00 | 0 | | 3.56 | 66.53 | Time |
| 12/11/2011 | 04:00:00 | 0 | | 3.27 | 53.08 | Time |
| 12/11/2011 | 05:00:00 | 0 | | 3.11 | 52.75 | Time |
| 12/11/2011 | 06:00:00 | 0 | | 3.38 | 52.59 | Time |
| 12/11/2011 | 07:00:00 | 0 | | 3.03 | 52.91 | Time |
| 12/11/2011 | 08:00:00 | 0 | | 3.34 | 53.24 | Time |
| 12/11/2011 | 09:00:00 | 0 | | 3.07 | 53.89 | Time |
| 12/11/2011 | 10:00:00 | 0 | | 3.36 | 54.22 | Time |
| 12/11/2011 | 11:00:00 | 0 | | 3.09 | 54.87 | Time |
| 12/11/2011 | 12:00:00 | 0 | | 3.33 | 54.71 | Time |
| 12/11/2011 | 13:00:00 | 0 | | 3.19 | 54.71 | Time |
| 12/11/2011 | 14:00:00 | 0 | | 3.13 | 54.87 | Time |
| 12/11/2011 | 15:00:00 | 0 | | 3.17 | 56.01 | Time |

| Date | Time | | | | | |
|---|---|---|---|---|---|---|
| 12/11/2011 | 16:00:00 | 0 | 0 | 3.15 | 55.36 | Time |
| 12/11/2011 | 17:00:00 | 0 | 0 | 3.39 | 55.68 | Time |
| 12/11/2011 | 18:00:00 | 0 | 0 | 3.30 | 55.19 | Time |
| 12/11/2011 | 19:00:00 | 0 | 0 | 3.38 | 57.32 | Time |
| 12/11/2011 | 20:00:00 | 0 | 0 | 3.39 | 59.79 | Time |
| 12/11/2011 | 21:00:00 | 0 | 0 | 3.54 | 65.35 | Time |
| 12/11/2011 | 22:00:00 | 0 | 0 | 3.54 | 66.87 | Time |
| 12/11/2011 | 23:00:00 | 0 | 0 | 3.54 | 67.55 | Time |
| 12/12/2011 | 00:00:00 | 0 | 0 | 3.54 | 67.90 | Time |
| 12/12/2011 | 01:00:00 | 0 | 0 | 3.53 | 67.73 | Time |
| 12/12/2011 | 02:00:00 | 0 | 0 | 3.53 | 67.55 | Time |
| 12/12/2011 | 03:00:00 | 0 | 0 | 3.54 | 67.21 | Time |
| 12/12/2011 | 04:00:00 | 0 | 0 | 3.11 | 54.22 | Time |
| 12/12/2011 | 05:00:00 | 0 | 0 | 3.12 | 52.75 | Time |
| 12/12/2011 | 06:00:00 | 0 | 0 | 3.09 | 52.59 | Time |
| 12/12/2011 | 07:00:00 | 0 | 0 | 3.12 | 52.26 | Time |
| 12/12/2011 | 08:00:00 | 0 | 0 | 3.10 | 52.42 | Time |
| 12/12/2011 | 09:00:00 | 0 | 0 | 3.15 | 52.59 | Time |
| 12/12/2011 | 10:00:00 | 0 | 0 | 3.37 | 52.59 | Time |
| 12/12/2011 | 11:00:00 | 0 | 0 | 3.14 | 52.75 | Time |
| 12/12/2011 | 12:00:00 | 0 | 0 | 3.06 | 53.24 | Time |
| 12/12/2011 | 13:00:00 | 0 | 0 | 3.11 | 53.08 | Time |
| 12/12/2011 | 14:00:00 | 0 | 0 | 3.06 | 52.91 | Time |
| 12/12/2011 | 15:00:00 | 0 | 0 | 3.22 | 53.24 | Time |

| Date | Time | | | | | |
|---|---|---|---|---|---|---|
| 12/12/2011 | 16:00:00 | 0 | 0 | 3.36 | 53.08 | Time |
| 12/12/2011 | 17:00:00 | 0 | 0 | 3.07 | 52.91 | Time |
| 12/12/2011 | 18:00:00 | 0 | 0 | 3.07 | 52.91 | Time |
| 12/12/2011 | 19:00:00 | 0 | 0 | 3.39 | 52.91 | Time |
| 12/12/2011 | 20:00:00 | 0 | 0 | 3.09 | 54.22 | Time |
| 12/12/2011 | 21:00:00 | 0 | 0 | 3.08 | 59.79 | Time |
| 12/12/2011 | 22:00:00 | 0 | 0 | 3.55 | 64.00 | Time |
| 12/12/2011 | 23:00:00 | 0 | 0 | 3.54 | 65.52 | Time |
| 12/12/2011 | 00:00:00 | 0 | 0 | 3.53 | 66.20 | Time |
| 12/13/2011 | 01:00:00 | 0 | 0 | 3.53 | 66.53 | Time |
| 12/13/2011 | 02:00:00 | 0 | 0 | 3.53 | 66.53 | Time |
| 12/13/2011 | 03:00:00 | 0 | 0 | 3.52 | 66.20 | Time |
| 12/13/2011 | 04:00:00 | 0 | 0 | 3.53 | 56.33 | Time |
| 12/13/2011 | 05:00:00 | 0 | 0 | 3.27 | 51.61 | Time |
| 12/13/2011 | 06:00:00 | 0 | 0 | 3.04 | 51.61 | Time |
| 12/13/2011 | 07:00:00 | 0 | 0 | 3.28 | 51.44 | Time |
| 12/13/2011 | 08:00:00 | 0 | 0 | 3.04 | 51.61 | Time |
| 12/13/2011 | 09:00:00 | 0 | 0 | 3.36 | 51.77 | Time |
| 12/13/2011 | 10:00:00 | 0 | 0 | 3.35 | 53.24 | Time |
| 12/13/2011 | 11:00:00 | 0 | 0 | 3.33 | 53.73 | Time |
| 12/13/2011 | 12:00:00 | 0 | 0 | 3.07 | 53.73 | Time |
| 12/13/2011 | 13:00:00 | 0 | 0 | 3.01 | 53.25 | Time |
| 12/13/2011 | 14:00:00 | 0 | 0 | 3.29 | 54.22 | Time |
| | | | | 3.03 | 54.55 | Time |

| Date | Time | | | | | |
|---|---|---|---|---|---|---|
| 12/13/2011 | 15:00:00 | 0 | 0 | 3.14 | 54.22 | Time |
| 12/13/2011 | 16:00:00 | 0 | 0 | 3.06 | 54.71 | Time |
| 12/13/2011 | 17:00:00 | 0 | 0 | 3.33 | 53.89 | Time |
| 12/13/2011 | 18:00:00 | 0 | 0 | 3.40 | 54.06 | Time |
| 12/13/2011 | 19:00:00 | 0 | 0 | 3.07 | 54.38 | Time |
| 12/13/2011 | 20:00:00 | 0 | 0 | 3.14 | 55.19 | Time |
| 12/13/2011 | 21:00:00 | 0 | 0 | 3.33 | 59.30 | Time |
| 12/13/2011 | 22:00:00 | 0 | 0 | 3.55 | 66.53 | Time |
| 12/13/2011 | 23:00:00 | 0 | 0 | 3.54 | 68.60 | Time |
| 12/14/2011 | 00:00:00 | 0 | 0 | 3.54 | 69.46 | Time |
| 12/14/2011 | 01:00:00 | 0 | 0 | 3.53 | 69.64 | Time |
| 12/14/2011 | 02:00:00 | 0 | 0 | 3.53 | 69.64 | Time |
| 12/14/2011 | 03:00:00 | 0 | 0 | 3.54 | 69.46 | Time |
| 12/14/2011 | 04:00:00 | 0 | 0 | 3.17 | 54.71 | Time |
| 12/14/2011 | 05:00:00 | 0 | 0 | 3.15 | 51.28 | Time |
| 12/14/2011 | 06:00:00 | 0 | 0 | 3.12 | 51.61 | Time |
| 12/14/2011 | 07:00:00 | 0 | 0 | 3.11 | 51.61 | Time |
| 12/14/2011 | 08:00:00 | 0 | 0 | 3.07 | 52.42 | Time |
| 12/14/2011 | 09:00:00 | 0 | 0 | 3.24 | 52.59 | Time |
| 12/14/2011 | 10:00:00 | 0 | 0 | 3.34 | 54.06 | Time |
| 12/14/2011 | 11:00:00 | 0 | 0 | 3.07 | 53.24 | Time |
| 12/14/2011 | 12:00:00 | 0 | 0 | 3.35 | 53.89 | Time |
| 12/14/2011 | 13:00:00 | 0 | 0 | 3.22 | 53.89 | Time |
| 12/14/2011 | 14:00:00 | 0 | 0 | 3.06 | 53.40 | Time |

| Date | Time | | | | | |
|---|---|---|---|---|---|---|
| 12/14/2011 | 15:00:00 | 0 | 0 | 3.10 | 54.06 | Time |
| 12/14/2011 | 16:00:00 | 0 | 0 | 3.06 | 54.22 | Time |
| 12/14/2011 | 17:00:00 | 0 | 0 | 3.20 | 53.57 | Time |
| 12/14/2011 | 18:00:00 | 0 | 0 | 3.43 | 55.52 | Time |
| 12/14/2011 | 19:00:00 | 0 | 0 | 3.23 | 59.30 | Time |
| 12/14/2011 | 20:00:00 | 0 | 0 | 3.32 | 60.13 | Time |
| 12/14/2011 | 21:00:00 | 0 | 0 | 3.56 | 64.51 | Time |
| 12/14/2011 | 22:00:00 | 0 | 0 | 3.54 | 66.91 | Time |
| 12/14/2011 | 23:00:00 | 0 | 0 | 3.54 | 67.73 | Time |
| 12/15/2011 | 00:00:00 | 0 | 0 | 3.54 | 67.90 | Time |
| 12/15/2011 | 01:00:00 | 0 | 0 | 3.54 | 67.73 | Time |
| 12/15/2011 | 02:00:00 | 0 | 0 | 3.54 | 67.38 | Time |
| 12/15/2011 | 03:00:00 | 0 | 0 | 3.55 | 67.04 | Time |
| 12/15/2011 | 04:00:00 | 0 | 0 | 3.14 | 52.42 | Time |
| 12/15/2011 | 05:00:00 | 0 | 0 | 3.05 | 51.61 | Time |
| 12/15/2011 | 06:00:00 | 0 | 0 | 3.33 | 51.44 | Time |
| 12/15/2011 | 07:00:00 | 0 | 0 | 3.09 | 51.44 | Time |
| 12/15/2011 | 08:00:00 | 0 | 0 | 3.20 | 51.44 | Time |
| 12/15/2011 | 09:00:00 | 0 | 0 | 3.13 | 51.44 | Time |
| 12/15/2011 | 10:00:00 | 0 | 0 | 3.36 | 52.59 | Time |
| 12/15/2011 | 11:00:00 | 0 | 0 | 3.06 | 52.26 | Time |
| 12/15/2011 | 12:00:00 | 0 | 0 | 3.23 | 52.59 | Time |
| 12/15/2011 | 13:00:00 | 0 | 0 | 3.24 | 52.42 | Time |

| Date | Time | | | | | |
|---|---|---|---|---|---|---|
| 12/15/2011 | 14:00:00 | 0 | 0 | 3.25 | 52.57 | Time |
| 12/15/2011 | 15:00:00 | 0 | 0 | 3.18 | 53.40 | Time |
| 12/15/2011 | 16:00:00 | 0 | 0 | 3.07 | 54.06 | Time |
| 12/15/2011 | 17:00:00 | 0 | 0 | 3.33 | 53.24 | Time |
| 12/15/2011 | 18:00:00 | 0 | 0 | 3.45 | 55.84 | Time |
| 12/15/2011 | 19:00:00 | 0 | 0 | 3.35 | 59.46 | Time |
| 12/15/2011 | 20:00:00 | 0 | 0 | 3.50 | 61.13 | Time |
| 12/15/2011 | 21:00:00 | 0 | 0 | 3.57 | 67.04 | Time |
| 12/15/2011 | 22:00:00 | 0 | 0 | 3.56 | 68.94 | Time |
| 12/15/2011 | 23:00:00 | 0 | 0 | 3.55 | 69.81 | Time |
| 12/15/2011 | 00:00:00 | 0 | 0 | 3.55 | 70.15 | Time |
| 12/16/2011 | 0:00:00 | 0 | 0 | 3.54 | 70.50 | Time |
| 12/16/2011 | 02:00:00 | 0 | 0 | 3.55 | 70.67 | Time |
| 12/16/2011 | 03:00:00 | 0 | 0 | 3.55 | 70.70 | Time |
| 12/16/2011 | 04:00:00 | 0 | 0 | 3.30 | 53.40 | Time |
| 12/16/2011 | 05:00:00 | 0 | 0 | 3.12 | 53.08 | Time |
| 12/16/2011 | 06:00:00 | 0 | 0 | 3.19 | 52.59 | Time |
| 12/16/2011 | 07:00:00 | 0 | 0 | 3.14 | 52.59 | Time |
| 12/16/2011 | 08:00:00 | 0 | 0 | 3.29 | 53.40 | Time |
| 12/16/2011 | 09:00:00 | 0 | 0 | 3.05 | 53.08 | Time |
| 12/16/2011 | 10:00:00 | 0 | 0 | 3.31 | 53.73 | Time |
| 12/16/2011 | 11:00:00 | 0 | 0 | 3.11 | 53.76 | Time |
| 12/16/2011 | 12:00:00 | 0 | 0 | 3.19 | 54.22 | Time |
| 12/16/2011 | 13:00:00 | 0 | 0 | 3.13 | 54.38 | Time |

| | | | | | | |
|---|---|---|---|---|---|---|
| 12/16/2011 | 14:00:00 | 0 | 0 | 3.08 | 54.06 | Time |
| 12/16/2011 | 15:00:00 | 0 | 0 | 3.28 | 53.24 | Time |
| 12/16/2011 | 16:00:00 | 0 | 0 | 3.27 | 54.55 | Time |
| 12/16/2011 | 17:00:00 | 0 | 0 | 3.13 | 55.03 | Time |
| 12/16/2011 | 18:00:00 | 0 | 0 | 3.22 | 55.03 | Time |
| 12/16/2011 | 19:00:00 | 0 | 0 | 3.09 | 56.17 | Time |
| 12/16/2011 | 20:00:00 | 0 | 0 | 3.52 | 57.48 | Time |
| 12/16/2011 | 21:00:00 | 0 | 0 | 3.52 | 61.29 | Time |
| 12/16/2011 | 22:00:00 | 0 | 0 | 3.56 | 67.04 | Time |
| 12/16/2011 | 23:00:00 | 0 | 0 | 3.55 | 68.60 | Time |
| 12/17/2011 | 00:00:00 | 0 | 0 | 3.55 | 69.12 | Time |
| 12/17/2011 | 01:00:00 | 0 | 0 | 3.54 | 69.29 | Time |
| 12/17/2011 | 02:00:00 | 0 | 0 | 3.54 | 69.29 | Time |
| 12/17/2011 | 03:00:00 | 0 | 0 | 3.54 | 68.94 | Time |
| 12/17/2011 | 04:00:00 | 0 | 0 | 3.54 | 67.21 | Time |
| 12/17/2011 | 05:00:00 | 0 | 0 | 3.05 | 52.26 | Time |
| 12/17/2011 | 06:00:00 | 0 | 0 | 2.91 | 51.93 | Time |
| 12/17/2011 | 07:00:00 | 0 | 0 | 3.35 | 52.26 | Time |
| 12/17/2011 | 08:00:00 | 0 | 0 | 3.14 | 52.75 | Time |
| 12/17/2011 | 09:00:00 | 0 | 0 | 3.37 | 52.42 | Time |
| 12/17/2011 | 10:00:00 | 0 | 0 | 3.06 | 53.08 | Time |
| 12/17/2011 | 11:00:00 | 0 | 0 | 3.35 | 52.59 | Time |
| 12/17/2011 | 12:00:00 | 0 | 0 | 3.42 | 52.75 | Time |

| Date | Time | | | | | |
|---|---|---|---|---|---|---|
| 12/17/2011 | 13:00:00 | 0 | 0 | 3.53 | 53.08 | Time |
| 12/17/2011 | 14:00:00 | 0 | 0 | 3.01 | 53.08 | Time |
| 12/17/2011 | 15:00:00 | 0 | 0 | 3.11 | 52.91 | Time |
| 12/17/2011 | 16:00:00 | 0 | 0 | 3.41 | 53.57 | Time |
| 12/17/2011 | 17:00:00 | 0 | 0 | 3.42 | 52.75 | Time |
| 12/17/2011 | 18:00:00 | 0 | 0 | 3.35 | 52.84 | Time |
| 12/17/2011 | 19:00:00 | 0 | 0 | 3.10 | 53.89 | Time |
| 12/17/2011 | 20:00:00 | 0 | 0 | 3.35 | 57.32 | Time |
| 12/17/2011 | 21:00:00 | 0 | 0 | 3.58 | 62.13 | Time |
| 12/17/2011 | 22:00:00 | 0 | 0 | 3.56 | 65.02 | Time |
| 12/17/2011 | 23:00:00 | 0 | 0 | 3.55 | 65.86 | Time |
| 12/18/2011 | 00:00:00 | 0 | 0 | 3.55 | 66.20 | Time |
| 12/18/2011 | 01:00:00 | 0 | 0 | 3.56 | 66.03 | Time |
| 12/18/2011 | 02:00:00 | 0 | 0 | 3.56 | 65.69 | Time |
| 12/18/2011 | 03:00:00 | 0 | 0 | 3.57 | 65.02 | Time |
| 12/18/2011 | 04:00:00 | 0 | 0 | 3.45 | 52.10 | Time |
| 12/18/2011 | 05:00:00 | 0 | 0 | 3.12 | 50.31 | Time |
| 12/18/2011 | 06:00:00 | 0 | 0 | 3.11 | 50.15 | Time |
| 12/18/2011 | 07:00:00 | 0 | 0 | 3.32 | 50.31 | Time |
| 12/18/2011 | 08:00:00 | 0 | 0 | 3.13 | 50.79 | Time |
| 12/18/2011 | 09:00:00 | 0 | 0 | 3.36 | 51.44 | Time |
| 12/18/2011 | 10:00:00 | 0 | 0 | 3.16 | 52.10 | Time |
| 12/18/2011 | 11:00:00 | 0 | 0 | 3.39 | 51.77 | Time |
| 12/18/2011 | 12:00:00 | 0 | 0 | 3.13 | 52.10 | Time |

| Date | Time | | | | | |
|---|---|---|---|---|---|---|
| 12/18/2011 | 13:00:00 | 0 | 0 | 3.39 | 53.08 | Time |
| 12/18/2011 | 14:00:00 | 0 | 0 | 3.13 | 52.75 | Time |
| 12/18/2011 | 15:00:00 | 0 | 0 | 3.07 | 52.42 | Time |
| 12/18/2011 | 16:00:00 | 0 | 0 | 3.07 | 53.08 | Time |
| 12/18/2011 | 17:00:00 | 0 | 0 | 3.25 | 52.10 | Time |
| 12/18/2011 | 18:00:00 | 0 | 0 | 3.46 | 52.26 | Time |
| 12/18/2011 | 19:00:00 | 0 | 0 | 3.40 | 54.22 | Time |
| 12/18/2011 | 20:00:00 | 0 | 0 | 3.59 | 61.96 | Time |
| 12/18/2011 | 21:00:00 | 0 | 0 | 3.57 | 65.19 | Time |
| 12/18/2011 | 22:00:00 | 0 | 0 | 3.56 | 66.36 | Time |
| 12/18/2011 | 23:00:00 | 0 | 0 | 3.56 | 66.03 | Time |
| 12/19/2011 | 00:00:00 | 0 | 0 | 3.57 | 65.44 | Time |
| 12/19/2011 | 01:00:00 | 0 | 0 | 3.57 | 65.02 | Time |
| 12/19/2011 | 02:00:00 | 0 | 0 | 3.58 | 64.17 | Time |
| 12/19/2011 | 03:00:00 | 0 | 0 | 3.59 | 62.98 | Time |
| 12/19/2011 | 04:00:00 | 0 | 0 | 3.17 | 53.89 | Time |
| 12/19/2011 | 05:00:00 | 0 | 0 | 3.11 | 49.67 | Time |
| 12/19/2011 | 06:00:00 | 0 | 0 | 3.17 | 49.67 | Time |
| 12/19/2011 | 07:00:00 | 0 | 0 | 3.06 | 49.50 | Time |
| 12/19/2011 | 08:00:00 | 0 | 0 | 3.28 | 49.67 | Time |
| 12/19/2011 | 09:00:00 | 0 | 0 | 3.06 | 50.47 | Time |
| 12/19/2011 | 10:00:00 | 0 | 0 | 3.31 | 50.47 | Time |
| 12/19/2011 | 11:00:00 | 0 | 0 | 3.39 | 50.76 | Time |

| Date | Time | | | | | |
|---|---|---|---|---|---|---|
| 12/19/2011 | 12:00:00 | 0 | 0 | 3.08 | 50.95 | Time |
| 12/19/2011 | 13:00:00 | 0 | 0 | 3.15 | 51.12 | Time |
| 12/19/2011 | 14:00:00 | 0 | 0 | 3.26 | 51.28 | Time |
| 12/19/2011 | 15:00:00 | 0 | 0 | 3.12 | 50.63 | Time |
| 12/19/2011 | 16:00:00 | 0 | 0 | 3.16 | 51.12 | Time |
| 12/19/2011 | 17:00:00 | 0 | 0 | 3.33 | 50.79 | Time |
| 12/19/2011 | 18:00:00 | 0 | 0 | 3.06 | 50.95 | Time |
| 12/19/2011 | 19:00:00 | 0 | 0 | 3.03 | 51.12 | Time |
| 12/19/2011 | 20:00:00 | 0 | 0 | 3.03 | 53.24 | Time |
| 12/19/2011 | 21:00:00 | 0 | 0 | 3.60 | 59.96 | Time |
| 12/19/2011 | 22:00:00 | 0 | 0 | 3.58 | 63.87 | Time |
| 12/19/2011 | 23:00:00 | 0 | 0 | 3.57 | 65.69 | Time |
| 12/20/2011 | 00:00:00 | 0 | 0 | 3.56 | 66.70 | Time |
| 12/20/2011 | 01:00:00 | 0 | 0 | 3.56 | 67.38 | Time |
| 12/20/2011 | 02:00:00 | 0 | 0 | 3.56 | 67.73 | Time |
| 12/20/2011 | 03:00:00 | 0 | 0 | 3.56 | 67.90 | Time |
| 12/20/2011 | 04:00:00 | 0 | 0 | 2.99 | 51.93 | Time |
| 12/20/2011 | 05:00:00 | 0 | 0 | 3.07 | 50.47 | Time |
| 12/20/2011 | 06:00:00 | 0 | 0 | 3.09 | 49.83 | Time |
| 12/20/2011 | 07:00:00 | 0 | 0 | 3.11 | 49.83 | Time |
| 12/20/2011 | 08:00:00 | 0 | 0 | 3.27 | 49.99 | Time |
| 12/20/2011 | 09:00:00 | 0 | 0 | 3.40 | 49.83 | Time |
| 12/20/2011 | 10:00:00 | 0 | 0 | 3.19 | 50.63 | Time |
| 12/20/2011 | 11:00:00 | 0 | 0 | 3.12 | 49.83 | Time |

| Date | Time | | | | | |
|---|---|---|---|---|---|---|
| 12/20/2011 | 12:00:00 | 0 | 0 | 3.19 | 50.31 | Time |
| 12/20/2011 | 13:00:00 | 0 | 0 | 3.14 | 50.15 | Time |
| 12/20/2011 | 14:00:00 | 0 | 0 | 3.24 | 51.44 | Time |
| 12/20/2011 | 15:00:00 | 0 | 0 | 3.44 | 50.47 | Time |
| 12/20/2011 | 16:00:00 | 0 | 0 | 3.30 | 50.47 | Time |
| 12/20/2011 | 17:00:00 | 0. | 0 | 3.22 | 50.15 | Time |
| 12/20/2011 | 18:00:00 | 0 | 0 | 3.20 | 50.15 | Time |
| 12/20/2011 | 19:00:00 | 0 | 0 | 3.16 | 54.38 | Time |
| 12/20/2011 | 20:00:00 | 0 | 0 | 3.46 | 56.82 | Time |
| 12/20/2011 | 21:00:00 | 0 | 0 | 3.58 | 61.96 | Time |
| 12/20/2011 | 22:00:00 | 0 | 0 | 3.57 | 63.65 | Time |
| 12/20/2011 | 23:00:00 | 0 | 0 | 3.57 | 64.51 | Time |
| 12/21/2011 | 00:00:00 | 0 | 0 | 3.56 | 65.02 | Time |
| 12/21/2011 | 01:00:00 | 0 | 0 | 3.56 | 65.35 | Time |
| 12/21/2011 | 02:00:00 | 0 | 0 | 3.56 | 65.52 | Time |
| 12/21/2011 | 03:00:00 | 0 | 0 | 3.56 | 65.52 | Time |
| 12/21/2011 | 04:00:00 | 0 | 0 | 3.10 | 51.12 | Time |
| 12/21/2011 | 05:00:00 | 0 | 0 | 3.04 | 49.83 | Time |
| 12/21/2011 | 06:00:00 | 18 | 15 | 2.40 | 49.47 | Time |
| 12/21/2011 | 07:00:00 | 15 | 13 | 2.50 | 49.72 | Time |
| 12/21/2011 | 08:00:00 | 14 | 12 | 2.42 | 50.09 | Time |
| 12/21/2011 | 09:00:00 | 15 | 12 | 2.54 | 50.15 | Time |
| 12/21/2011 | 10:00:00 | 10 | 9 | 2.48 | 50.85 | Time |

| Date | Time | | | | | Time |
|---|---|---|---|---|---|---|
| 12/21/2011 | 11:00:00 | 12 | 10 | 2.42 | 51.02 | Time |
| 12/21/2011 | 12:00:00 | 14 | 12 | 2.45 | 50.54 | Time |
| 12/21/2011 | 13:00:00 | 9 | 7 | 2.40 | 50.35 | Time |
| 12/21/2011 | 14:00:00 | 0 | 0 | 2.36 | 50.79 | Time |
| 12/21/2011 | 15:00:00 | 0 | 0 | 2.45 | 51.49 | Time |
| 12/21/2011 | 16:00:00 | 0 | 0 | 2.61 | 52.10 | Time |
| 12/21/2011 | 17:00:00 | 0 | 0 | 2.64 | 53.80 | Time |
| 12/21/2011 | 18:00:00 | 0 | 0 | 2.87 | 57.81 | Time |
| 12/21/2011 | 19:00:00 | 0 | 0 | 2.53 | 58.30 | Time |
| 12/21/2011 | 20:00:00 | 0 | 0 | 2.87 | 62.98 | Time |
| 12/21/2011 | 21:00:00 | 0 | 0 | 2.85 | 65.86 | Time |
| 12/21/2011 | 22:00:00 | 0 | 0 | 2.83 | 67.04 | Time |
| 12/21/2011 | 23:00:00 | 0 | 0 | 2.84 | 67.55 | Time |
| 12/22/2011 | 00:00:00 | 0 | 0 | 2.82 | 67.90 | Time |
| 12/22/2011 | 01:00:00 | 0 | 0 | 2.83 | 68.08 | Time |
| 12/22/2011 | 02:00:00 | 0 | 0 | 2.83 | 68.08 | Time |
| 12/22/2011 | 03:00:00 | 0 | 0 | 2.82 | 67.90 | Time |
| 12/22/2011 | 04:00:00 | 0 | 0 | 2.37 | 52.10 | Time |
| 12/22/2011 | 05:00:00 | 0 | 0 | 2.45 | 50.79 | Time |
| 12/22/2011 | 06:00:00 | 0 | 0 | 2.70 | 50.63 | Time |
| 12/22/2011 | 07:00:00 | 0 | 0 | 2.23 | 50.95 | Time |
| 12/22/2011 | 08:00:00 | 0 | 0 | 2.40 | 51.12 | Time |
| 12/22/2011 | 09:00:00 | 0 | 0 | 2.25 | 52.10 | Time |
| 12/22/2011 | 10:00:00 | 0 | 0 | 2.27 | 52.91 | Time |

| Date | Time | | | | | |
|---|---|---|---|---|---|---|
| 12/23/2011 | 09:00:00 | 0 | 0 | 2.49 | 52.59 | Time |
| 12/23/2011 | 08:00:00 | 0 | 0 | 2.39 | 52.59 | Time |
| 12/23/2011 | 07:00:00 | 0 | 0 | 2.68 | 52.26 | Time |
| 12/23/2011 | 06:00:00 | 0 | 0 | 2.21 | 52.75 | Time |
| 12/23/2011 | 05:00:00 | 0 | 0 | 2.32 | 52.50 | Time |
| 12/23/2011 | 04:00:00 | 0 | 0 | 2.31 | 52.26 | Time |
| 12/23/2011 | 03:00:00 | 0 | 0 | 2.85 | 72.61 | Time |
| 12/23/2011 | 02:00:00 | 0 | 0 | 2.84 | 72.97 | Time |
| 12/23/2011 | 01:00:00 | 0 | 0 | 2.81 | 73.51 | Time |
| 12/23/2011 | 00:00:00 | 0 | 0 | 2.82 | 73.60 | Time |
| 12/22/2011 | 23:00:00 | 0 | 0 | 2.85 | 73.51 | Time |
| 12/22/2011 | 22:00:00 | 0 | 0 | 2.82 | 73.15 | Time |
| 12/22/2011 | 21:00:00 | 0 | 0 | 2.83 | 72.59 | Time |
| 12/22/2011 | 20:00:00 | 0 | 0 | 2.83 | 71.38 | Time |
| 12/22/2011 | 19:00:00 | 0 | 0 | 2.84 | 68.94 | Time |
| 12/22/2011 | 18:00:00 | 0 | 0 | 2.91 | 62.47 | Time |
| 12/22/2011 | 17:00:00 | 0 | 0 | 2.50 | 54.38 | Time |
| 12/22/2011 | 16:00:00 | 0 | 0 | 2.37 | 54.22 | Time |
| 12/22/2011 | 15:00:00 | 0 | 0 | 2.41 | 52.26 | Time |
| 12/22/2011 | 14:00:00 | 0 | 0 | 2.30 | 52.75 | Time |
| 12/22/2011 | 13:00:00 | 0 | 0 | 2.43 | 52.75 | Time |
| 12/22/2011 | 12:00:00 | 0 | 0 | 2.86 | 52.59 | Time |
| 12/22/2011 | 11:00:00 | 0 | 0 | 2.56 | 52.42 | Time |

| Date | Time | | | | | |
|---|---|---|---|---|---|---|
| 12/23/2011 | 10:00:00 | 0 | 0 | 2.55 | 53.57 | Time |
| 12/23/2011 | 11:00:00 | 0 | 0 | 2.73 | 52.91 | Time |
| 12/23/2011 | 12:00:00 | 0 | 0 | 2.38 | 52.91 | Time |
| 12/23/2011 | 13:00:00 | 0 | 0 | 2.72 | 52.75 | Time |
| 12/23/2011 | 14:00:00 | 0 | 0 | 2.54 | 52.91 | Time |
| 12/23/2011 | 15:00:00 | 0 | 0 | 2.47 | 52.59 | Time |
| 12/23/2011 | 16:00:00 | 0 | 0 | 2.29 | 53.89 | Time |
| 12/23/2011 | 17:00:00 | 0 | 0 | 2.36 | 53.24 | Time |
| 12/23/2011 | 18:00:00 | 0 | 0 | 2.72 | 59.13 | Time |
| 12/23/2011 | 19:00:00 | 0 | 0 | 2.85 | 66.36 | Time |
| 12/23/2011 | 20:00:00 | 0 | 0 | 2.83 | 68.60 | Time |
| 12/23/2011 | 21:00:00 | 0 | 0 | 2.83 | 69.46 | Time |
| 12/23/2011 | 22:00:00 | 0 | 0 | 2.82 | 69.64 | Time |
| 12/23/2011 | 23:00:00 | 0 | 0 | 2.83 | 69.46 | Time |
| 12/24/2011 | 00:00:00 | 0 | 0 | 2.83 | 69.29 | Time |
| 12/24/2011 | 01:00:00 | 0 | 0 | 2.83 | 68.77 | Time |
| 12/24/2011 | 02:00:00 | 0 | 0 | 2.85 | 68.25 | Time |
| 12/24/2011 | 03:00:00 | 0 | 0 | 2.85 | 67.55 | Time |
| 12/24/2011 | 04:00:00 | 0 | 0 | 2.29 | 52.26 | Time |
| 12/24/2011 | 05:00:00 | 0 | 0 | 2.63 | 50.95 | Time |
| 12/24/2011 | 06:00:00 | 0 | 0 | 2.17 | 51.44 | Time |
| 12/24/2011 | 07:00:00 | 0 | 0 | 2.67 | 51.61 | Time |
| 12/24/2011 | 08:00:00 | 0 | 0 | 2.31 | 51.28 | Time |
| 12/24/2011 | 09:00:00 | 0 | 0 | 2.49 | 51.79 | Time |

| Date | Time | | | | | Time |
|---|---|---|---|---|---|---|
| 12/24/2011 | 10:00:00 | 0 | 0 | 2.47 | 53.73 | Time |
| 12/24/2011 | 11:00:00 | 0 | 0 | 2.35 | 53.24 | Time |
| 12/24/2011 | 12:00:00 | 0 | 0 | 2.65 | 53.57 | Time |
| 12/24/2011 | 13:00:00 | 0 | 0 | 2.23 | 53.73 | Time |
| 12/24/2011 | 14:00:00 | 0 | 0 | 2.69 | 54.38 | Time |
| 12/24/2011 | 15:00:00 | 0 | 0 | 2.26 | 53.89 | Time |
| 12/24/2011 | 16:00:00 | 0 | 0 | 2.60 | 58.80 | Time |
| 12/24/2011 | 17:00:00 | 0 | 0 | 2.54 | 61.29 | Time |
| 12/24/2011 | 18:00:00 | 0 | 0 | 2.76 | 64.68 | Time |
| 12/24/2011 | 19:00:00 | 0 | 0 | 2.85 | 68.94 | Time |
| 12/24/2011 | 20:00:00 | 0 | 0 | 2.84 | 69.98 | Time |
| 12/24/2011 | 21:00:00 | 0 | 0 | 2.84 | 70.15 | Time |
| 12/24/2011 | 22:00:00 | 0 | 0 | 2.84 | 69.81 | Time |
| 12/24/2011 | 23:00:00 | 0 | 0 | 2.85 | 69.29 | Time |
| 12/25/2011 | 00:00:00 | 0 | 0 | 2.86 | 68.60 | Time |
| 12/25/2011 | 01:00:00 | 0 | 0 | 2.87 | 67.90 | Time |
| 12/25/2011 | 02:00:00 | 0 | 0 | 2.88 | 67.21 | Time |
| 12/25/2011 | 03:00:00 | 0 | 0 | 2.89 | 66.59 | Time |
| 12/25/2011 | 04:00:00 | 0 | 0 | 2.58 | 51.28 | Time |
| 12/25/2011 | 05:00:00 | 0 | 0 | 2.25 | 50.47 | Time |
| 12/25/2011 | 06:00:00 | 0 | 0 | 2.23 | 49.83 | Time |
| 12/25/2011 | 07:00:00 | 0 | 0 | 2.65 | 49.83 | Time |
| 12/25/2011 | 08:00:00 | 0 | 0 | 2.33 | 49.67 | Time |